ORIGINAL BY FAX

STANLEY · IOLA, LLP
MATTHEW J. ZEVIN, SBN: 170736
525 B Street, Suite 760
San Diego, CA 92101
Telephone:   (619) 235-5306
Facsimile:   (825) 377-8419
e-mail: mzevin@aol.com

E-filing

Filed
MAR 27 2012
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

Attorneys for Plaintiffs, Christopher E. Banas; CB Tech Ventures, LLC; Paul Castella, FLP; Kelly Castella, FLP; Ian Clements; Alexander Parker Wood; Silbiano V. Gonzales; Luis F. Angel, M.D.; Scientific Health Development, Ltd.; John E. Campion; Fred B. Dinger III; Charles Martin Wender; Steven R. Bailey, M.D.; SCOUT Healthcare Fund, LP; Frank Bagatta; James F. Traa; Alan H. Dean; Philip J. Romano; Samson Investments, LP; Stuart Fitts; Roy L. White; Joe Piercy; Dan Sims; Joe M. Miller; Hugo Londero, M.D.; and Whitney E. Solcher
[Additional Counsel Listed on Signature Page]

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE

| | |
|---|---|
| CHRISTOPHER E. BANAS; CB TECH VENTURES, LLC; PAUL CASTELLA, FLP; KELLY CASTELLA, FLP; IAN CLEMENTS; ALEXANDER PARKER WOOD; SILBIANO V. GONZALES; LUIS F. ANGEL, M.D.; SCIENTIFIC HEALTH DEVELOPMENT, LTD.; JOHN E. CAMPION; FRED B. DINGER III; CHARLES MARTIN WENDER; STEVEN R. BAILEY, MD; SCOUT HEALTHCARE FUND, LP; FRANK BAGATTA; JAMES F. TRAA; ALAN H. DEAN; PHILIP J. ROMANO; SAMSON INVESTMENTS, LP; STUART FITTS; ROY L. WHITE; JOE PIERCY; DAN SIMS; JOE M. MILLER; HUGO LONDERO, MD; and WHITNEY E. SOLCHER<br><br>Plaintiffs,<br><br>v<br><br>VOLCANO CORPORATION, a Delaware corporation; and DOES 1-10,<br><br>Defendants. | CV12-01535 HRL<br><br>COMPLAINT FOR BREACH OF WRITTEN CONTRACT, BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, AND BREACH OF FIDUCIARY DUTIES<br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT FOR BREACH OF WRITTEN CONTRACT

Plaintiffs, Christopher E. Banas; CB Tech Ventures, LLC; Paul Castella, FLP; Kelly Castella, FLP; Ian Clements; Alexander Parker Wood; Silbiano V. Gonzales; Luis F. Angel, M.D.; Scientific Health Development, Ltd.; John E. Campion; Fred B. Dinger III; Charles Martin Wender; Steven R. Bailey, M.D.; Scout Healthcare Fund, LP; Frank Bagatta; James F. Traa; Alan H. Dean; Philip J. Romano; Samson Investments, LP; Stuart Fitts; Roy L. White; Joe Piercy; Dan Sims; Joe M. Miller; Hugo Londero, M.D.; Whitney E. Solcher, ("Plaintiffs") by and through their attorneys, bring this action against Defendant Volcano Corporation, a Delaware corporation, ("Volcano" or "Defendant"), and allege as follows based upon personal knowledge and the investigation of their counsel:

## INTRODUCTION

1. This case arises out of the Defendant's failure to live up to its obligations in a merger agreement.

2. Defendant Volcano acquired CardioSpectra, Inc. ("CardioSpectra") by merger in December 2007. Before the merger, CardioSpectra developed innovative medical imaging technology called an Optical Coherence Tomography System ("OCT System"), which produces high-resolution images of portions of coronary arteries. Because of its potential to achieve significant market penetration in the medical imaging marketplace, CardioSpectra's OCT System attracted the interest of Volcano, a major seller of intravascular ultrasound technology.

3. The merger agreement ("Agreement") provided that the shareholders of CardioSpectra would receive a significant amount of additional compensation for the merger through deferred payments, in what the Agreement refers to as "milestone" provisions. The Agreement provided that four such payments would be made upon the achievement of each milestone.

4. The CardioSpectra shareholders were willing to accept a lower initial payment in exchange for the additional deferred milestone payments because it was expected that these additional payments would amount to tens of millions of dollars, and the milestones were based on technological and regulatory activities that Volcano represented were part of its core expertise as a leader in the imaging equipment industry. CardioSpectra had also invested substantial

1

COMPLAINT FOR BREACH OF WRITTEN CONTRACT

resources in developing the OCT System, and the CardioSpectra shareholders were eager to ensure that the OCT System continued to be a success.

5. The achievement of the milestones and the resulting additional deferred payments were dependent upon the regulatory approval of the OCT System and commercial sales of products related to Optical Coherence Tomography ("OCT Products"), which were in turn completely dependent on Volcano's efforts and therefore out of the CardioSpectra shareholders' control. In order to protect the shareholders' interests, the Agreement imposed obligations on Volcano "to act in good faith and to use commercially reasonable efforts to cause each of the Milestones to be achieved on or before" the specified date for each. Volcano's obligation to use such efforts began immediately after the merger agreement was signed in December 2007, and continued thereafter. During the first two years, the parties anticipated that Volcano would secure regulatory approval of a first-generation OCT System. After this initial period, the parties anticipated that Volcano would secure regulatory approval of a "productized" OCT System. "Productizing" the OCT System entailed the addition of image processing features directly analogous to those already included in Volcano's existing imaging systems in which Volcano represented it was the industry leader. Subsequent milestones were achievable based upon the cumulative commercial sales of OCT Products.

6. As described in more detail below, Volcano failed to meet its obligations to act in good faith or to use commercially reasonable efforts, and it breached the Agreement. Volcano did not effectively integrate the OCT System it acquired into the merged company. Among other things, Volcano deliberately failed to adequately engage in the process necessary to obtain the required regulatory approval, and failed to retain the resources and employees necessary to properly develop a "productized" OCT System. Because Volcano did not meet these obligations, the second milestone for regulatory approval was not achieved. In addition, following the passage of the second milestone deadline, Volcano has intentionally made virtually no effort to secure the needed regulatory approval, nor to develop the "productized" OCT System, and has effectively abandoned the project.

COMPLAINT FOR BREACH OF WRITTEN CONTRACT

7. Despite its intentional failure to develop the "productized" OCT System, Volcano, upon information and belief, has nevertheless sold millions of dollars worth of OCT Products, largely stemming from Volcano's acquisition of a manufacturer of medical imaging components ostensibly to help with the development of the "productized" OCT System. These OCT Products may include consoles (including OCT laser light sources, processors, application software, data storage devices, printers and other related components), patient interface modules and pull-back devices (also referred to as a PIM) and OCT catheters or wands used to conduct visualization. On information and belief, Volcano has already sold in excess of $25 million of OCT Products, thus achieving the third and fourth milestones and obligating Volcano to make the milestone payments to the CardioSpectra shareholders required under the Agreement. Volcano, however, has failed and refused to make these payments.

8. Because Volcano failed to meet its obligations, the CardioSpectra shareholders have not received $27 million in additional consideration from the milestone payments pursuant to the Agreement.

## THE PARTIES

9. Plaintiffs are former shareholders of CardioSpectra, Inc., a Texas Corporation headquartered in San Antonio, Texas that was acquired by Defendant Volcano Corporation. They are referred to collectively throughout this Complaint as "Plaintiffs."

    a. Plaintiff Christopher E. Banas is an individual who is a resident of Colorado.

    b. Plaintiff CB Tech Ventures, LLC is a limited liability company whose principal place of business is in Colorado.

    c. Plaintiff Paul Castella, FLP is a family limited partnership which is registered in Texas.

    d. Plaintiff Kelly Castella, FLP is a family limited partnership which is registered in Texas.

    e. Plaintiff Ian Clements is an individual who is a resident of Texas.

f. Plaintiff Alexander Parker Wood is an individual who is a resident of Texas.

g. Plaintiff Silbiano V. Gonzales is an individual who is a resident of Texas.

h. Plaintiff Luis F. Angel, MD is an individual who is a resident of Texas.

i. Plaintiff Scientific Health Development, Ltd. is a limited partnership whose principal place of business is in Texas.

j. Plaintiff John E. Campion is an individual who is a resident of Texas.

k. Plaintiff Fred B. Dinger III is an individual who is a resident of Texas.

l. Plaintiff Charles Martin Wender is an individual who is a resident of Texas.

m. Plaintiff Steven R. Bailey, MD is an individual who is a resident of Texas.

n. Plaintiff SCOUT Healthcare Fund, LP is a limited partnership whose principal place of business is in Alabama.

o. Plaintiff Frank Bagatta is an individual who is a resident of New York.

p. Plaintiff James F. Traa is an individual who is a resident of Texas.

q. Plaintiff Alan H. Dean is an individual who is a resident of Alabama.

r. Plaintiff Philip J. Romano is an individual who is a resident of Texas.

s. Plaintiff Samson Investments, LP is a limited partnership whose principal place of business is in Texas.

t. Plaintiff Stuart Fitts is an individual who is a resident of Texas.

u. Plaintiff Roy L. White is an individual who is a resident of Texas.

v. Plaintiff Joe Piercy is an individual who is a resident of Texas.

w. Plaintiff Dan Sims is an individual who is a resident of Colorado.

x. Plaintiff Joe M. Miller is an individual who is a resident of Texas.

y. Plaintiff Hugo Londero, MD is an individual who is a resident of Argentina.

z. Plaintiff Whitney E. Solcher is an individual who is a resident of Texas.

4

COMPLAINT FOR BREACH OF WRITTEN CONTRACT

10. Defendant Volcano Corporation is a Delaware corporation whose principal place of business is in San Diego, California, and which actively sells products throughout California and the United States.

11. Plaintiffs do not know the true names and capacities of Defendants sued herein as Does 1 through 10, and will amend this Complaint to set forth the true names and capacities of said defendants, along with the appropriate charging allegations when the same have been ascertained.

## JURISDICTION AND VENUE

12. Jurisdiction and venue are proper in this judicial district because the parties irrevocably consented in the Agreement "to the jurisdiction of each state and federal court located in Santa Clara County, California" in connection with any matter based upon or arising out of the Agreement or matters contemplated in that agreement, and waived any right to object to such jurisdiction and venue.

13. Jurisdiction is also proper based on the parties' diversity of citizenship under 28 U.S.C. § 1332(a), because the matter in controversy is between citizens of different U.S. states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

14. In addition, venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) because the Defendant's principal place of business is located in this district and a substantial part of the events or omissions giving rise to the claims asserted occurred in this district.

## ADDITIONAL FACTS

15. CardioSpectra was founded in San Antonio, Texas in 2005 as a medical device company based on technology originally conceptualized in research centers at the University of Texas. Using this technology, CardioSpectra began developing its Optical Coherence Tomography System ("OCT System"). In essence, the OCT System can quickly create very high-resolution, sufficiently detailed images of portions of coronary arteries. Physicians can use these images to, among other things, identify diseased regions of coronary arteries, thereby allowing for the proper placement of stents and/or performance of other treatments to combat heart disease.

5

COMPLAINT FOR BREACH OF WRITTEN CONTRACT

16. Almost immediately, the potential of CardioSpectra's OCT System began attracting interest from individual and institutional investors. In May of 2006, CardioSpectra received a $1.35 million grant from the Texas Emerging Technology Fund, established by the State of Texas for investment in high-technology companies.

17. In March of 2007, CardioSpectra presented its OCT System at a meeting of the American Academy of Cardiology in New Orleans, Louisiana. On information and belief, representatives of the two biggest sellers of medical imaging technology – Volcano and Boston Scientific Corporation – attended the meeting and saw the presentation of CardioSpectra's OCT System. Thereafter, both of these competing companies expressed interest in acquiring and developing CardioSpectra's OCT System for commercial purposes.

18. Volcano, in particular, aggressively pursued the acquisition of CardioSpectra's OCT System. In 2007, Volcano was already a provider of intravascular ultrasound ("IVUS") imaging products – but IVUS had a relatively low market penetration rate due to image resolution limitations inherent in the use of ultrasound, and CardioSpectra's light-based OCT System could produce superior images than IVUS in artery regions, making the acquisition of CardioSpectra's OCT System a logical and attractive business prospect for Volcano.

19. Through the remainder of 2007, Volcano conducted an in-depth due diligence process in connection with a potential acquisition of CardioSpectra's OCT System. Volcano was able to "test-drive" CardioSpectra's OCT System by performing extensive testing of the product in animal laboratories. Volcano had the benefit of the research of outside experts who participated in an in-vivo animal study in July of 2007, and who offered Volcano their opinion on the viability of CardioSpectra's OCT System. As well, as part of Volcano's due diligence, Volcano representatives were present at the University of Texas Health Sciences Center in San Antonio in August of 2007, where an in-vivo animal study using a swine coronary artery was conducted to demonstrate CardioSpectra's OCT System to Volcano. Throughout this process, Volcano became intimately familiar with the precise capabilities of CardioSpectra's OCT System as it existed, and specifically determined the additional steps that would be needed to obtain regulatory approval for, and development of, a "productized" version of the OCT System.

COMPLAINT FOR BREACH OF WRITTEN CONTRACT

20. Accordingly, during the latter part of 2007, Volcano and CardioSpectra vigorously negotiated the terms of a merger agreement. By December of 2007, the parties reached agreement on the terms of a deal in which Volcano would acquire CardioSpectra as a wholly-owned subsidiary, memorialized in the Agreement.

21. Under the Agreement, Volcano paid $25.2 million in cash to acquire CardioSpectra. The shareholders of CardioSpectra agreed to this purchase price only because Volcano also promised to pay them a total of an additional $38 million in deferred compensation upon the achievement of four "milestones" over the next seven years, based on regulatory approval of the OCT System and sales of OCT Products. As set forth in the Agreement (section 2.5), the milestone payments were to be paid essentially as follows:

*Milestone 1*: payment of $11 million upon approval by U.S., Japanese, or European regulators of a first-generation OCT System on or before December 31, 2009.

*Milestone 2*: payment of $10 million upon approval by U.S. regulators of a "productized" OCT System on or before December 31, 2010.

*Milestone 3*: payment of $10 million upon cumulative cash sales of OCT Products (including consoles (OCT laser light sources, processors, application software, data storage devices, printers and other related components), patient interface modules and pull-back devices (also referred to as a PIM) and OCT catheters or wands used to conduct visualization) totaling $10 million within 3 years of U.S. regulatory approval of a "productized" OCT System or otherwise on or before December 31, 2013.

*Milestone 4*: payment of $7 million upon cumulative cash sales of OCT Products (including consoles (OCT laser light sources, processors, application software, data storage devices, printers and other related components), patient interface modules and pull-back devices (also referred to as a PIM) and OCT catheters or wands used to conduct visualization) totaling $25 million within 4 years of U.S. regulatory approval of a "productized" OCT System or otherwise on or before December 31, 2014.

22. As one news report poignantly stated shortly after the deal closed, "The value Volcano has placed on CardioSpectra's technology – more than $60 million if the regulatory milestones are met in a timely manner – speaks to the market potential it sees for OCT in cardiology. Once approved, OCT will be the only real competitor to IVUS, which is often seen as a necessary evil because of its poor image quality. IVUS, which currently has only 14% market penetration, was still reported to be a $400 million market in 2007. OCT, which produces vastly

7

COMPLAINT FOR BREACH OF WRITTEN CONTRACT

superior images to IVUS, has the potential to dramatically alter this landscape."[1]

23. In addition to Volcano's market-based incentives to promptly develop CardioSpectra's OCT System into a "productized" version, secure regulatory approval, and market the OCT Products, the Agreement specifically provides that Volcano must "act in good faith and use commercially reasonable efforts" to cause all of the milestones to be timely reached. Agreement, section 2.5(b).

24. Following the merger, Volcano was required to pursue regulatory approval of a first-generation OCT System, as well as to develop a "productized" version of an OCT System that would obtain U.S. regulatory approval. Through the process of obtaining approval for a non-"productized," first-generation OCT System under the typically more expeditious European approval process ("CE Mark"), Volcano expected to obtain valuable data to be used in connection with efficiently securing approval of a "productized" version under the more time-consuming U.S. regulatory process (FDA 510(k) pre-market notification). Volcano recognized prior to the acquisition that the non-"productized," first-generation OCT System would not be suitable for a broad commercial release, as it lacked dimensional software and other features Volcano envisioned for full commercialization, but that developing it was critical to evaluating its performance in the hands of key clinical users and ultimately achieving regulatory approval for, and subsequent sales of, a "productized" OCT System.

25. Volcano started the process for regulatory approval, and reached the first milestone by obtaining the CE Mark approval from European regulators for a non-"productized," first-generation OCT System in December of 2009.

26. However, in the years following the Agreement, and notwithstanding its obtaining the CE Mark approval, Volcano began curtailing the resources it was devoting to the development, regulatory approval, and commercialization of CardioSpectra's OCT System. In December of 2008, Volcano acquired a Massachusetts-based company called Axsun Technologies, Inc. ("Axsun"), a manufacturer of medical imaging components, ostensibly to help

---

[1] http://www.biopticsworld.com/articles/print/volume-1/issue-1/departments/news-views/volcano-sets-sights-on-oct-market-with-cardiospectra.html (last visited December 1, 2011).

COMPLAINT FOR BREACH OF WRITTEN CONTRACT

with the commercialization plan for CardioSpectra's OCT System by fully integrating Axsun components and resources into the development of a "productized" OCT System. This, however, did not occur.

27. Shortly after Volcano's acquisition of Axsun, Volcano was sued by a competitor, Lightlab Imaging, for tortious interference with business relations based on Volcano's acquisition of Axsun. Volcano effectively stopped the integration of Axsun components and resources into its commercialization plan for the "productized" OCT System immediately thereafter. This was particularly damaging to the prospects of the contemplated regulatory approval and development of a "productized" OCT System, as Volcano had already moved key employees to and consolidated other resources in Massachusetts in anticipation of using the Axsun acquisition to promptly bring the "productized" OCT System to market.

28. Moreover, instead of maintaining the resources and employees necessary to proceed with timely development and U.S. regulatory approval of a "productized" OCT System pursuant to the Agreement, Volcano effectively began abandoning the commercialization plan. Notwithstanding its consolidation of employees and resources in Massachusetts for the specific purpose of developing and marketing the "productized" OCT System, Volcano began diverting employees and resources away from the project.

29. Additionally, Volcano deliberately failed to pursue the remainder of its regulatory strategy for securing U.S. regulatory approval of a "productized" version of CardioSpectra's OCT System in a reasonable manner. On information and belief, Volcano submitted a sloppy and inadequate application for approval of this OCT System to the U.S. Food and Drug Administration, knowing that it would not be approved. Predictably, the application was rejected.

30. As a direct result of Volcano's deliberate and knowing acts and omissions, U.S. regulatory approval of a "productized" OCT System was not obtained by December 31, 2010, and the second milestone payment of $10 million was not made to Plaintiffs. Volcano failed to act in good faith or to use commercially reasonable efforts to cause this milestone to be reached timely, and its failure was intentional.

COMPLAINT FOR BREACH OF WRITTEN CONTRACT

31. Moreover, despite its intentional failure to develop the "productized" OCT System, Volcano, upon information and belief, has nevertheless sold millions of dollars worth of OCT Products. Following Volcano's acquisition of Axsun, Volcano reported sales through 2011 in excess of $43 million attributed to "Other Medical" revenues. On information and belief, these sales are primarily attributable to OCT laser light sources, associated development and support services, and/or other products that all fall within the definition of OCT Products under the Agreement. On information and belief, Volcano's cumulative sales of OCT Products exceed $25 million, and thus obligate Volcano to make the third and fourth milestone payments to the CardioSpectra shareholders required under the Agreement. Volcano, however, has failed and refused to make these payments, in breach of the Agreement.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION
### (Breach of Written Contract)

32. Plaintiffs reallege and incorporate by reference paragraphs 1 through 30 above.

33. Volcano entered into the Agreement with Plaintiffs on or about December 18, 2007.

34. Pursuant to the Agreement, Volcano was required to use "commercially reasonable efforts" to cause each of the milestones to be achieved on or before the applicable dates of each.

35. Volcano breached the Agreement by failing to use commercially reasonable efforts to cause the second milestone to be achieved, as described in more detail above.

36. Volcano breached the Agreement by attaining sales of OCT Products that caused the third and fourth milestones to be achieved and failing to make the required milestone payments, as described in more detail above. Alternatively, Volcano is in anticipatory breach of the Agreement, and is preventing the achievement of the third and fourth milestones, thus depriving Plaintiffs of the milestone payments.

37. Plaintiffs have fulfilled all of their obligations under the Agreement and are not in breach of any of their covenants under the Agreement.

38. Volcano's breaches of the Agreement have caused Plaintiffs to lose millions of dollars in milestone payments, and Plaintiffs have been damaged in an amount to be proven at trial.

## SECOND CAUSE OF ACTION
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

39. Plaintiffs reallege and incorporate by reference paragraphs 1 through 37 above.

40. Every contract includes an implied covenant of good faith and fair dealing, which requires a party in a contractual relationship to refrain from action that has the effect of preventing the other party from receiving the fruits of its bargain.

41. The implied covenant of good faith and fair dealing is particularly important when one party is in a position to control the implementation of the Agreement, as Volcano was here. Plaintiffs ceded control over the manufacturing, development, and marketing of the OCT System to Volcano, and were entirely dependent upon Volcano to receive the additional milestone payments.

42. Volcano breached the implied covenant of good faith and fair dealing by failing to act in good faith and to use commercially reasonable efforts to obtain regulatory approval of the OCT System, and by engaging in the conduct described in more detail above. Volcano's deliberate actions were not those of a party that was genuinely trying to carry out its part of the bargain, as evidenced, for example, by its submission of an application for regulatory approval that it knew would be rejected.

43. Volcano's deliberate actions have deprived Plaintiffs of the fruit of the bargain they reasonably expected to receive, and have caused Plaintiffs to lose millions of dollars in milestone payments, and Plaintiffs have been damaged in an amount to be proven at trial.

## THIRD CAUSE OF ACTION
### (Breach of Fiduciary Duty)

44. Plaintiffs reallege and incorporate by reference paragraphs 1 through 42 above.

45. Volcano owed a fiduciary duty to Plaintiffs. As described in more detail above, Plaintiffs placed special trust and confidence in Volcano. A significant amount of the

consideration for the merger was accounted for by the milestone provisions set forth in the Agreement – indeed, it was anticipated that the payments made under the milestone provisions could be higher than the initial payment that was received. Plaintiffs ceded control over the manufacturing, development and marketing of the OCT System to Volcano, and were entirely dependent on Volcano to secure regulatory approval and generate sales that would benefit the Plaintiffs under the milestone provisions.

46. This fiduciary duty gave rise to a duty on the part of Volcano to act with the utmost good faith towards Plaintiffs in developing, marketing, promoting and selling the OCT System.

47. Volcano breached its fiduciary duties to Plaintiffs by failing to exercise due care in their efforts to manufacture, develop and market the OCT System, and by engaging in the conduct described above. Volcano further breached its fiduciary duty by failing to act in good faith, and failing to fulfill its duty of loyalty to Plaintiffs, instead favoring other products over the OCT System.

48. As a result of these breaches of fiduciary duty, Plaintiffs have lost millions of dollars in milestone payments, and Plaintiffs have been damaged in an amount to be proven at trial.

49. Further, Volcano acted with oppression, fraud and malice. Among other things, Volcano deliberately chose not to adequately develop and market the OCT System, and Volcano's actions have shown that it had no intention of living up to its obligations under the Agreement with Plaintiffs. Plaintiffs are accordingly entitled to exemplary damages.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for the following relief:

A. For monetary damages in an amount to be proven at trial;

B. For exemplary damages;

C. For costs and attorneys fees;

D. For such other and further relief as the Court may deem appropriate.

12

## JURY DEMAND

Plaintiffs hereby demand a trial by jury for all claims so triable.

DATED: March 27, 2012

STANLEY • IOLA, LLP
MATTHEW J. ZEVIN

_____
MATTHEW J. ZEVIN

525 B Street, Suite 760
San Diego, CA 92101
Telephone:  (619) 235-5306
Facsimile:  (825) 377-8419
e-mail:  mzevin@aol.com

STANLEY•IOLA, LLP
MARC R. STANLEY, Texas SBN: 19046500
MARTIN WOODWARD, Texas SBN: 00797693
SCOTT A. KITNER, Texas SBN: 24065563
3100 Monticello Avenue, Suite 750
Dallas, TX 75205
Telephone:  (214) 443-4300
Facsimile:  (214) 443-0358
e-mail: marcstanley@mac.com
          mwoodward@stanleyiola.com

Attorneys for Plaintiffs, Christopher E. Banas; CB Tech Ventures, LLC; Paul Castella, FLP; Kelly Castella, FLP; Ian Clements; Alexander Parker Wood; Silbiano V. Gonzales; Luis F. Angel, M.D.; Scientific Health Development, Ltd.; John E. Campion; Fred B. Dinger III; Charles Martin Wender; Steven R. Bailey, M.D.; SCOUT Healthcare Fund, LP; Frank Bagatta; James F. Traa; Alan H. Dean; Philip J. Romano; Samson Investments, LP; Stuart Fitts; Roy L. White; Joe Piercy; Dan Sims; Joe M. Miller; Hugo Londero, M.D.; and Whitney E. Solcher