**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FORMER SHAREHOLDERS OF CARDIOSPECTRA, INC.,<br><br>Plaintiffs,<br><br>vs.<br><br>VOLCANO CORPORATION and DOES 1 - 10,<br><br>Defendant(s). | Case No.: 12-CV-01535 YGR<br><br>ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND |

Plaintiffs, former shareholders of CardioSpectra, Inc. ("CardioSpectra"), bring this action for breach of contract against Defendant Volcano Corporation ("Volcano") for failing to meet its contractual obligation to meet certain "milestones" following a merger. Plaintiffs allege three claims: (1) Breach of Written Contract; (2) Breach of the Implied Covenant of Good Faith and Fair Dealing; and (3) Breach of Fiduciary Duty.

Volcano has filed a Motion to Dismiss the Complaint for failure to state a claim upon which relief can be granted on the grounds that it has no duties or obligations relating to the subject matter of this lawsuit. The Court held oral argument on July 31, 2012.

Having carefully considered the papers submitted, the argument of counsel, and the pleadings in this action, and for the reasons set forth below, the Court hereby **GRANTS** the Motion to Dismiss **WITH LEAVE TO AMEND**.

**I.     BACKGROUND**

Defendant Volcano develops and manufactures specialized medical devices that are designed to facilitate endovascular procedures, enhance the diagnosis of vascular and structural heart disease, and guide optimal therapies, particularly in the area of cardiovascular care. On December 7, 2007,

Volcano and CardioSpectra entered into an Agreement and Plan of Merger ("Agreement") through which Volcano acquired CardioSpectra. *See* FAC ¶¶ 2-3; Aftahi Decl. ¶ 2, Ex. A, Agreement at 1. Prior to merger with Volcano, CardioSpectra was in the business of developing Optical Coherence Tomography ("OCT") technology. FAC ¶¶ 9, 15.

The Agreement required Volcano to pay $25.2 million for the acquisition of CardioSpectra and required Volcano to pay additional compensation upon achievement of specified "Milestones." FAC ¶¶ 3, 21. In order to protect CardioSpectra's shareholders' interests, the Agreement imposed obligations on Volcano "to act in good faith and to use commercially reasonable efforts to cause each of the Milestones to be achieved on or before" the specified date for each. *Id.* ¶ 5. The FAC summarizes the Milestone payments as follows:

*Milestone 1*:   payment of $11 million upon approval by U.S., Japanese, or European regulators of a first-generation OCT System on or before December 31, 2009.

*Milestone 2*:   payment of $10 million upon approval by U.S. regulators of a "productized" OCT System on or before December 31, 2010.

*Milestone 3*:   payment of $10 million upon cumulative cash sales of OCT Products (including consoles (OCT laser light sources, processors, application software, data storage devices, printers and other related components), patient interface modules and pull-back devices (also referred to as a PIM) and OCT catheters or wands used to conduct visualization) totaling $10 million within 3 years of U.S. regulatory approval of a "productized" OCT System or otherwise on or before December 31, 2013.

*Milestone 4*:   payment of $7 million upon cumulative cash sales of OCT Products (including consoles (OCT laser light sources, processors, application software, data storage devices, printers and other related components), patient interface modules and pull-back devices (also referred to as a PIM) and OCT catheters or wands used to conduct visualization) totaling $25 million within 4 years of U.S. regulatory approval of a "productized" OCT System or otherwise on or before December 31, 2014.

*Id.* ¶ 21.

Volcano achieved the first Milestone ("Milestone 1") and paid $11 million to Plaintiffs. *Id.* ¶ 25. The second Milestone ("Milestone 2") was to be triggered by the achievement of certain regulatory approvals for a defined OCT System, whereas the third and fourth Milestones (respectively, "Milestone 3" and "Milestone 4") was to be triggered upon the achievement of certain sales volumes for the specified OCT Products. *Id.* ¶ 21; Agreement § 2.5(a)(ii)-(iv). If and when Milestones 2-4 were achieved, Volcano could be obligated to pay up to $27 million in additional Milestone Merger Consideration payments. *Id.* ¶¶ 8, 21; Agreement § 2.5(a).

Although Milestone 2 – regulatory approval for the "Generation 1a OCT System" – has not been achieved, Plaintiffs allege that they are entitled to the Milestone 2 payment of $10 million because Volcano allegedly failed to meet its contractual standard of performance under Section 2.5(c) of the Agreement.  FAC ¶¶ 6, 30.  Plaintiffs allege that Volcano has achieved sales goals required to trigger Milestones 3 and 4 and that Plaintiffs are therefore entitled to payments of $10 million under Section 2.5(b)(iii) – Milestone 3 – and $7 million under Section 2.5(b)(iv) – Milestone 4.  *Id.* ¶¶ 7, 31.

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint.  *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003).  All allegations of material fact are taken as true.  *Johnson v. Lucent Techs., Inc.,* 653 F.3d 1000, 1010 (9th Cir. 2011).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

## III. DISCUSSION

### A. COUNT I: BREACH OF WRITTEN CONTRACT

Under Delaware law,[1] to state a cause of action for breach of contract a plaintiff must allege three elements:  "first, the existence of the contract, whether express or implied; second, the breach of an obligation imposed by that contract; and third, the resultant damage to the plaintiff."  *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003).

Plaintiffs do not allege they were signatories to the Agreement[2] and Plaintiffs, who are former shareholders of CardioSpectra, do not sue in their capacity as former shareholders or allege that they were shareholders at the requisite time.

---

[1] The parties agree that, under the Agreement, Delaware law governs.  The choice-of-law provision in the Agreement provides that it "shall be construed in accordance with, and governed in all respects by, the internal laws of the State of Delaware . . . ."  Agreement §§ 13.9(a), 13.16.

[2] Only Volcano, Corazon Acquisition, Inc., CardioSpectra, and Christopher E. Banas and Paul Castella, in their capacities as Shareholders' Representatives, were parties to the Agreement.  Neither Banas nor Castella sue in their capacity as Shareholders' Representatives.  Banas sues as an individual and "Paul Castella, FLP" ("family limited partnership") is named as a Plaintiff.

3

Based on the foregoing, the Court **GRANTS** the Motion to Dismiss Count I for breach of written contract **WITH LEAVE TO AMEND** to correct the deficiencies identified by Volcano.

### B. COUNT II: BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Under Delaware law, every contract has an implied covenant of good faith and fair dealing. *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 441-42 (Del. 2005). The implied covenant requires contracting parties "to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the bargain." *Id.* at 442. The implied covenant is an interpretive device used by courts to analyze unanticipated developments or to fill gaps in the contract's provisions as a way to ensure that the parties' reasonable expectations are fulfilled by implying terms into the agreement to best approximate what the parties would have bargained had they thought to negotiate the matter. *See Nemec v. Shrader*, 991 A.2d 1120, 1126-28 (Del. 2010); *Dunlap*, *supra*, 878 A.2d at 441. Thus, "where the subject at issue is expressly covered by the contract, or where the contract is intentionally silent as to that subject, the implied duty to perform in good faith does not come into play." *Dave Greytak Enterprises, Inc. v. Mazda Motors of Am., Inc.*, 622 A.2d 14, 23 (Del. Ch.) *aff'd sub nom.*, 609 A.2d 668 (Del. 1992).[3]

To state a cause of action under Delaware law for breach of the implied covenant of good faith and fair dealing, a plaintiff must identify a specific obligation implied in the contract and allege how a breach of that obligation denied the plaintiff the fruits of the bargain. *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 888 (Del. Ch. 2009).

Plaintiffs have not identified an implied obligation that Volcano breached, but instead identify an obligation expressly covered by the contract. Plaintiffs allege that "Volcano breached the implied covenant of good faith and fair dealing by failing to act in good faith and to use commercially reasonable efforts to obtain regulatory approval of the OCT System," which is the

---

[3] Delaware law is "more contractarian than that of many other states," meaning that the legislature and its courts allow the parties to define the limits of their obligations, and thus, "parties' contractual choices are respected." *GRT, Inc. v. Marathon GTF Technology, Ltd.*, 2011 WL 2682898, at *12 (Del. Ch. July 11, 2011); *see also Nemec*, *supra*, 991 A.2d at 1126 ("We must . . . not rewrite the contract to appease a party who later wishes to rewrite a contract he now believes to have been a bad deal. Parties have a right to enter into good and bad contracts, the law enforces both.").

4

second Milestone to be achieved.  However, the Agreement expressly established that Volcano had "to act in good faith and to use commercially reasonable efforts to cause each of the Milestones to be achieved on or before" the specified date for each.  FAC ¶ 5.  Since the good faith obligation is expressly covered by the Agreement, a count which implies that term into the Agreement is duplicative.

Based on the foregoing analysis, the Court **GRANTS** the Motion to Dismiss Count II for breach of the implied covenant of good faith and fair dealing **WITH LEAVE TO AMEND**.  Plaintiffs must identify the specific covenant allegedly breached in such a manner that the Court can confirm that such an obligation is not specified in the Agreement itself.

### C.  COUNT III:  BREACH OF FIDUCIARY DUTY

Under Delaware law, a fiduciary relationship exists "where one person reposes *special* trust in another or where a special duty exists on the part of one person to protect the interests of another." *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 901 A.2d 106, 113 (Del. 2006) (emphasis added and quotation marks omitted).  Careful "attention must be paid to the word 'special' lest the statement be thought to describe too broadly [the court's] concerns with relationships where an element of trust, as commonly understood, is present." *McMahon v. New Castle Associates*, 532 A.2d 601, 604 (Del. Ch. 1987).  "A fiduciary is typically one who is entrusted with the power to manage and control the property of another." *Rich Realty, Inc. v. Potter Anderson & Corroon LLP*, CIV.A.09C-12-273MMJ, 2011 WL 743400, at *3 (Del. Super. Feb. 21, 2011) (quoting *Wilmington Leasing, Inc. v. Parrish Leasing Co., L.P.*, CIV. A. 15202, 1996 WL 752364, at *14 n.19 (Del. Ch. Dec. 23, 1996)).[4] While Plaintiffs allege that they placed special trust in Volcano, nothing in the FAC justifies imposing on Volcano the "exacting standards of fiduciary duties." *Wal-Mart Stores*, *supra*, 901 A.2d at 114 ("it is vitally important that the exacting standards of fiduciary duties not be extended to quotidian commercial relationships").  Additionally, although Plaintiffs allege that they were entirely dependent upon Volcano to develop and sell the OCT technology; such dependence does not elevate

---

[4] Fiduciary relationships recognized by Delaware law include attorney and client, general partners, administrators or executors, guardians, and principals and their agents.  *See Bird's Const. v. Milton Equestrian Ctr.*, 1980-S, 2001 WL 1528956, at *4 (Del. Ch. Nov. 16, 2001) (citing *McMahon*, *supra*, 532 A.2d at 605).  Here, the parties' relationship does not fall within any of the limited categories of relationships to which Delaware courts have previously extended fiduciary duties.

an ordinary commercial relationship—based upon an arms-length merger Agreement—into a fiduciary relationship. *Id.*

Further, "where a dispute arises from obligations that are expressly addressed by contract, that dispute will be treated as a breach of contract claim. In that specific context, any fiduciary claims arising out of the same facts that underlie the contract obligations would be foreclosed as superfluous." *Nemec*, *supra*, 991 A.2d at 1129. Here, the obligation Plaintiffs identify is contractual not fiduciary. Plaintiffs' fiduciary duty claim "merely dresses [their] breach of contract claim in fiduciary duties' clothing." *See Fisk Ventures, LLC v. Segal*, CIV.A. 3017-CC, 2008 WL 1961156, at *11 (Del. Ch. May 7, 2008) *aff'd*, 984 A.2d 124 (Del. 2009). Under these circumstances, even assuming a fiduciary relationship existed, the FAC fails to allege such a fiduciary duty that was breached.

Based on the foregoing, the Court **GRANTS** the motion to dismiss Count III for breach of fiduciary duty **WITH LEAVE TO AMEND**.

**IV.   CONCLUSION**

For the reasons set forth above, the Motion to Dismiss is **GRANTED WITH LEAVE TO AMEND**.

Plaintiff shall have until **August 20, 2012** to file a second amended complaint.

This Order Terminates Docket Number 13.

**IT IS SO ORDERED**.

Date: August 6, 2012

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**