STANLEY LAW GROUP
MATTHEW J. ZEVIN, SBN: 170736
225 Broadway, Suite 1350
San Diego, CA 92101
Telephone: (619) 235-5306
Facsimile: (815) 377-8419
e-mail: mzevin@aol.com

Attorneys for Plaintiffs, Former Shareholders of CardioSpectra, Inc.
[Additional Counsel Listed on Signature Page]

**IN THE UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION**

| | |
|---|---|
| FORMER SHAREHOLDERS OF CARDIOSPECTRA, INC.<br><br>Plaintiffs,<br><br>v.<br><br>VOLCANO CORPORATION, a Delaware corporation; and DOES 1-10,<br><br>Defendant. | CASE NO. CV12-01535WHO<br><br>**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>DATE: March 19, 2014<br>TIME: 2:00 p.m.<br>JUDGE: Honorable William H. Orrick<br>CTRM: 2 |

## I. INTRODUCTION

As briefing on the cross-motions for summary judgment on Milestones 3 and 4 makes clear, the Court should find that the four "Axsun OCT products" are "OCT Products" under the Agreement, and that Volcano's sales of them triggered Milestones 3 and 4.[1] The Court should therefore grant Plaintiffs' Motion.

## II. "OCT PRODUCTS" CAN ONLY BE REASONABLY INTERPRETED TO INCLUDE THE AXSUN OCT LASER COMPONENTS

In the Agreement,

> "'**OCT Product**' means consoles (including OCT laser light sources[,] processors, application software, data storage devices, printers and other related components), patient interface modules and pull-back devices (also referred to as a PIM) and OCT catheters or wands used to conduct visualization, and any product or service covered by the scope of any Valid Claim contained in any Licensed Patent."[2]

As Plaintiffs have shown, the Agreement's explicit rule of construction mandates that "the words 'include' and 'including,' and variations thereof, shall not be deemed to be terms of limitation, but rather shall be deemed to be followed by the words 'without limitation.'"[3] Accordingly, the term "including" is followed by "without limitation,"[4] meaning that Axsun's laser components – which Axsun describes as "Axsun OCT products"[5] – are "OCT Products."

Volcano, however, chooses to ignore the contractual language and instead interprets this definition to exclude the Axsun laser components because it characterizes the first parenthetical as "an illustrative list of components that one would expect to find in a console at the time of the

---

[1] Throughout this Reply, Plaintiffs use the same abbreviations and shorthand terms as in their Motion for Partial Summary Judgment [Doc. 64] ("Plaintiffs' Motion") and Plaintiffs' Opposition to Defendants Motion for Summary Judgment [Doc 73] ("Plaintiffs' Opposition").

[2] Merger Agreement ("Agreement") at A-13 (attached as Ex. A to Huennekens Declaration [Doc. 66-2] filed in support of Defendant's Motion for Summary Judgment [Doc. 65], "Defendant's Motion"). As the parties have stipulated, there is supposed to be a comma between the words "sources" and "processors." Plaintiffs' Opposition at 2 n.6.

[3] Agreement §13.17(c) (p75).

[4] *Id.*

[5] Declaration of Scott Kitner [Doc. 64-15] filed in support of Plaintiffs' Motion at Ex. 12 [Doc. 64-20] (Huennekens Dep. Ex. 420 at Volcano 4703) and Ex. 14 [Doc. 64-22] (Axsun Website Screenshots); Declaration of Martin Woodward [Doc 64-1] filed in support of Plaintiffs' Motion at Ex. 5 [filed under seal] (Huennekens Dep. 22:2-23:21).

merger." Volcano's Opposition [Doc. 71] at 13. That argument impermissibly relies on ignoring the terms of this heavily-negotiated contract. Volcano likewise improperly wishes away the words "and other related components" that also make "OCT Products" a catch-all definition.

Tacitly acknowledging the problems with this approach, Volcano also tries to reduce Plaintiffs' interpretation to an absurdity by arguing it makes the definition of "OCT Product" overly broad. Volcano's Opposition at 11-13. Volcano worries that Plaintiffs' interpretation could include "any component of any part of any OCT system," such that it "impermissibly broadens the definition of 'OCT Product' beyond any reasonable or meaningful limit. . . ." *Id.* at 11, 12.

This argument is irrelevant, as there is evidence only of Volcano's sales of the four Axsun OCT products – which Volcano does not dispute are "OCT laser light sources." Crucially, this evidence shows that OCT console components can be, and are, sold independently from consoles – exactly as the Agreement reflects in its definition of "OCT Product."

As the following exchange from the deposition of Plaintiff Paul Castella demonstrates, Volcano's argument is just a straw man, and there is nothing unreasonable in Plaintiffs' interpreting "OCT Product" as the catch-all definition memorialized in the Agreement as the parties' mutual understanding:

> THE WITNESS: Why isn't "wheel" specified in "console"? I don't know. I don't know that they're [sic], we foresaw PIMs being sold in other than as complete units, but we did foresee the console being potentially sold in bits.
>
> BY MR. LAMBERT:
>
> Q. And what was the basis for foreseeing that? Did you, did you share that expectation with Volcano?
>
> A. Yes.
>
> Q. When?
>
> A. During discussions. I mean, I've already told you that we felt and I believe articulated that we wanted a catch-all; that is, kind of, We're getting you into the OCT business, so whatever sales derive down the road, to the extent that we can identify them, great; we want it broad because you never know what you might end up selling. Also, because OCT is a platform technology. And there were many other product potentials outside of just this use that we're describing.
>
> Q. So looking back at the "Drive Box (Exploded Veiw) [sic]," you're saying under that theory, that the OCT products definition also pulled in hollow shafts, roller bearings, motor housing medial, a Delrin ring, whatever that is; all those things could be contemplated as OCT products that would be sold separately by Volcano that would trigger OCT product sales for purposes of the milestones.

> A. Yes, I think you're trivializing it, but in principle what you're saying is correct. The cases we were most focused on were a little more substantial than bearings in a PIM. So, you know, other means of selling OCT products. Other uses, other configurations.[6]

Last, Volcano urges the Court to find that various other portions of the Agreement conflict with Plaintiffs' interpretation of "OCT Product." Volcano's Opposition at 13-16. This argument goes nowhere. The definition of "OCT Product" speaks directly to the issue: if, for example, the parties meant to require FDA approval for each and every "OCT Product" (as Volcano now suggests), the definition would say so explicitly. It doesn't. Nor is there any tension between Plaintiffs' interpretation of "OCT Product" and any remaining provisions of the Agreement Volcano cites, as illustrated perfectly by Volcano's actual declaration of a "Commercial Failure" while lamenting its purported inability to do so if Axsun's laser components are "OCT Products."[7]

In the end, there is only one reasonable interpretation of "OCT Product," and it supports a finding that the four Axsun OCT products fall within that definition. Volcano entirely fails to offer a contrary interpretation that is reasonable or permissible, so the Court should grant Plaintiffs' Motion on this issue. And if the Court nevertheless finds the definition ambiguous, the record is clear that the only admissible extrinsic evidence[8] supports Plaintiffs' construction and, thus, summary judgment in Plaintiffs' favor.

[6] Deposition of Paul Castella, 199:1-200:8 (Exhibit CC to the Declaration of Amanda A. Main [Doc. 72-21 at pp. 37-38] in Support of Volcano's Opposition [Doc. 71]. In its Opposition (at 12), Volcano misleadingly cites this very testimony for the proposition that "Plaintiffs acknowledge that their interpretation leads to an absurd result, because the Sales Milestones could be triggered by Volcano's sale of the most 'trivial[]' components, like 'roller bearings' in a PIM."

[7] *See* Plaintiffs' Opposition at 6-7.

[8] The Court should reject the arguments attacking Plaintiffs' extrinsic evidence (Volcano's Opposition at 18-20) as meritless. Mr. Banas's declaration testimony is uncontroverted, and Volcano never substantiates any objection to its admissibility. The Axsun presentation and website show on their face that it markets and sells its laser components as OCT "products," and are manifestly evidence of trade usage of that term. *See, e.g., Radio Corp. of Am. v. Philadelphia Storage Battery Co.*, 6 A.2d 329, 334 (Del. 1939) ("[T]he grantor of the license, engaged as it was in a trade or business involving a particular science and art, may be supposed to have employed terms and expressions especially adapted to, and as understood in, the trade. . . ."). Last, as Plaintiffs' Motion makes clear, Plaintiffs do not offer the draft UCI merger agreement as extrinsic evidence for the construction of "OCT Product" in the Agreement.

## III. THE AGREEMENT INDISPUTABLY COUNTS AXSUN'S SALES OF "OCT PRODUCTS" AS TRIGGERS OF MILESTONES 3 AND 4 – AND AXSUN SOLD ENOUGH TO TRIGGER THEM

As Plaintiffs discuss in their Motion, under the specifically-defined terms of the Agreement, Volcano is indisputably the "Parent," Axsun is an "Affiliate," and sales of "OCT Products" by "Parent or its Affiliates" – by Volcano or Axsun – are qualifying triggers for the earnout payments in Milestones 3 and 4.

Volcano argues the "scheme" of the Agreement "reflects the parties' understanding that the Milestones are tied to CardioSpectra's assets" such that sales by Axsun shouldn't count. Volcano's Opposition at 16-18. But Volcano completely ignores the Agreement's particularized definitions that plainly state Axsun's sales count! Volcano's argument thus lacks credibility. The Agreement's definitions – particularly in this context –are immutable. On the question of whether Axsun's sales count, they *are* the scheme.[9]

That leaves only the question of whether Axsun sold enough of its OCT Products to trigger these Milestones. And the undisputed (and only) summary judgment evidence is that gross revenues from these sales cleared the $25 million threshold before the Milestone deadlines – to which Volcano says, in essence, only "sure, but Plaintiffs can't prove there aren't deductions like rebates that would lower this amount below the threshold." Volcano's Opposition at 24-25.

As Plaintiffs have already shown the Court,[10] Volcano's argument does not amount to a genuine dispute that it cleared the threshold and triggered its Milestone payment obligations. The summary judgment evidence fully supports Plaintiffs' position; absent any evidence to the contrary, much less a genuine dispute, the Court should find in Plaintiffs' favor.

---

[9] *See, e.g.*, *John Hancock Life Ins. Co. v. Abbott Labs.*, 478 F.3d 1, 7-8 (1st Cir. 2006) (the meaning of a defined contractual term chosen by the parties governs the parties' dealings under the contract); *see also Radio Corp. of Am.*, 6 A.2d at 334-37.

[10] *See* Plaintiffs' Opposition at 9-10 & n.32.

## IV. CONCLUSION

The jury will need to determine whether Volcano breached the Agreement by failing to act in good faith and use commercially reasonable efforts to achieve Milestone 2. But there isn't anything for it to decide as to Milestones 3 and 4. The plain language of the Agreement and the summary judgment evidence establish beyond dispute that Volcano got the benefit of millions of dollars of OCT Product sales without paying Plaintiffs what it owes them. The Court should resolve this portion of the case forthwith by granting Plaintiffs' Motion and ordering Volcano to pay Plaintiffs the $17 million it agreed to pay when it took over Plaintiffs' OCT business.

DATED: February 25, 2014

STANLEY LAW GROUP
MATTHEW J. ZEVIN

*/s/ Matthew J. Zevin*
MATTHEW J. ZEVIN

225 Broadway, Suite 1350
San Diego, CA 92101
Telephone: (619) 235-5306
Facsimile: (815) 377-8419
e-mail: mzevin@aol.com

STANLEY LAW GROUP
MARC R. STANLEY, Texas SBN: 19046500
(*admitted pro hac vice*)
MARTIN WOODWARD, Texas SBN: 00797693
(*admitted pro hac vice*)
SCOTT A. KITNER, Texas SBN: 24065563
(*admitted pro hac vice*)
3100 Monticello Avenue, Suite 770
Dallas, TX 75205
Telephone: (214) 443-4300
Facsimile: (214) 443-0358
e-mail: marcstanley@mac.com
mwoodward@stanleylawgroup.com
skitner@stanleylawgroup.com

Attorneys for Plaintiffs, Former Shareholders of CardioSpectra, Inc.

**PROOF OF SERVICE**

*Ritchie v. Sempra Energy*

CASE NO: 10CV1513-CAB(KSC)

I, the undersigned, declare under penalty of perjury that I am over the age of eighteen years and not a party to this action. I am employed in the County of San Diego, State of California. My business address is: 225 Broadway, Suite 1350, San Diego, CA 92101.

That on February 25, 2014, I served the following document(s) entitled: **REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** on ALL INTERESTED PARTIES in this action.

☒ **BY CM/ECF Electronic Service:** I caused such document to be served via the Court's (NEF) electronic filing system on all registered parties.

☐ **BY MAIL PER ATTACHED SERVICE LIST**: By placing a true copy thereof in a sealed envelope addressed as listed on the attached service list, and placing it for collection and mailing following ordinary business practices. I am readily familiar with the firm's practice of collection and processing correspondence, pleadings, and other matters for mailing with the United States Postal Service. The correspondence, pleadings and other matters are deposited with the United States Postal Service with postage thereon fully prepaid in San Diego, California, on the same day in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ **BY OVERNIGHT COURIER**: I caused the above-referenced document(s) to be contained in an overnight envelope and to be deposited in a **Federal Express/Overnite Express** box located at 225 Broadway, San Diego, California, for delivery to the above address(es).

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on February 25, 2014, at San Diego, California.

*/s/ Matthew J. Zevin*

MATTHEW J. ZEVIN