COOLEY LLP
MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
MARK F. LAMBERT (197410) (mlambert@cooley.com)
AMANDA A. MAIN (260814) (amain@cooley.com)
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2155
Telephone: (650) 843-5000
Facsimile: (650) 849-7400

Attorneys for Defendant
VOLCANO CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| FORMER SHAREHOLDERS OF CARDIOSPECTRA, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>VOLCANO CORPORATION, a Delaware corporation; and DOES 1-10,<br><br>Defendants. | Case No. CV12-01535 (WHO)<br><br>**DECLARATION OF MARK F. LAMBERT IN SUPPORT OF DEFENDANT VOLCANO CORPORATION'S MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>Date: May 28, 2014<br>Time: 2:00 p.m.<br>Dept: Courtroom 2, 17th Floor<br>Judge: Honorable William H. Orrick |

I, Mark F. Lambert, declare:

1. I am an attorney admitted to practice law in all of the courts in the State of California and a partner at Cooley LLP ("Cooley"), counsel for Defendant Volcano Corporation ("Volcano"). Except as otherwise noted, I have personal knowledge of the facts herein and if called to testify, could and would testify competently thereto.

2. I am member of Cooley's Litigation practice group and serve as the Head of Litigation for Cooley's Palo Alto office. I graduated from University of California Hastings College of the Law in May of 1998, and have since then practiced law in the San Francisco Bay Area. I joined Cooley as a partner on August 31, 2009. Prior to Cooley, I was a partner at White & Case LLP in its Palo Alto office, where I served in the Intellectual Property Litigation group. I was

promoted to partner at White & Case effective January 1, 2007. I joined White & Case from Orrick, Herrington & Sutcliffe LLP in March of 2005, where I had practiced as an associate in that firm's Intellectual Property Litigation group in its Menlo Park office since 1999. Prior to that, I served as a litigation associate at Cooper, White & Cooper LLP in San Francisco. In my 15 years of practice I have gained extensive experience litigating cases addressing a wide range of business and intellectual property disputes and involving a variety of industries and technologies. My standard billing rate was $670/hour for 2012, $710/hour for 2013, and $770/hour for 2014. A summary of my practice profile is attached hereto as **EXHIBIT C**.

3. I have shared responsibility in this matter with another Cooley partner, Michael Rhodes. Mr. Rhodes graduated with honors from Loyola Law School in 1984. He is admitted to practice law in all state and federal courts in the State of California. Mr. Rhodes has nearly 30 years of experience as a trial lawyer. Mr. Rhodes represents clients from a wide range of industries in cases involving complex business disputes, intellectual property litigation, class action privacy disputes, shareholder disputes, and high stakes contract disputes. From 2011-2013, he has been named to the list of the Top 100 Lawyers in California by *The Daily Journal*. *Law360* named him an MVP in the "Privacy & Consumer Protection" category for three consecutive years, a feat achieved by only two other attorneys in the United States. In 2010, Mr. Rhodes was one of 16 lawyers named by The Recorder as an attorney of the year for high-profile achievements in court. In 2013, *Chambers USA* selected Mr. Rhodes for its exclusive rankings in the areas of intellectual property and business litigation law. He was named a "Leading Trial Lawyer" by *Legal 500* in its 2013 edition, recognizing him in both commercial and patent litigation disciplines. In 2013, Mr. Rhodes was named an IP Star for his patent and trademark litigation work by *Managing Intellectual Property* magazine, and he was included on the Intellectual Asset Management (IAM) Patent 1000 list as among the best IP and licensing attorneys in the world. Mr. Rhodes is resident in Cooley's San Francisco office, and has in the past been resident in the firm's San Diego office. Mr. Rhodes' standard billing rate was $975/hour for 2012, $1,035/hour for 2013, and $1095/hour for 2014. A summary of Mr. Rhodes' practice profile is attached hereto as **EXHIBIT D**.

4. In this matter, I have had day-to-day supervisory responsibility. Cooley's core litigation team for this case consisted primarily of the following timekeepers:

a) **Amanda Main**: Ms. Main is a sixth-year associate in Cooley's litigation department. Ms. Main graduated *Magna Cum Laude* from Pepperdine University School of Law in 2008. Before joining Cooley in September 2012, Ms. Main served as a law clerk for the Honorable Charles P. Kocoras in the United States District Court for the Northern District of Illinois and as a litigation associate for White & Case LLP in its Los Angeles office. While at White & Case, Ms. Main worked on business disputes, consumer class action lawsuits, white collar criminal investigations, arbitration proceedings, and bankruptcy proceedings. Ms. Main was the senior most associate on this litigation team for most of the case duration. Under my direct supervision, her responsibilities included: meeting and conferring with opposing counsel; supervising junior associates and contract attorneys; taking and defending depositions, including the preparation of witnesses; arguing discovery hearings; primary motion and drafting responsibility; expert witness matters; and trial strategy preparation. Cooley billed Ms. Main's time to Volcano at its standard rates of $500/hour in 2012, $585/hour in 2013, and $685/hour in 2014.

b) **Tijana Brien**: Ms. Brien is a second-year associate in Cooley's litigation department. She graduated from Santa Clara University School of Law *Summa Cum Laude* in May 2012. Under the supervision of Ms. Main and myself, Ms. Brien's contributions to the team included: quality control document review after completion of primary review by contract attorneys; legal research; deposition planning and preparation; drafting of briefs (discovery, summary judgment, sanctions); and trial preparation prior to the Court's issuance of its summary judgment order and entry of judgment. Cooley billed Ms. Brien's time to Volcano at its standard rates of $355/hour in 2013 and $445/hour in 2014.

c) **Jeff Lombard**: Mr. Lombard is a second-year associate in Cooley's litigation department. He graduated from Santa Clara University School of Law in May 2012, also *Summa Cum Laude.* Mr. Lombard also worked under my supervision and the supervision of Ms. Main. Similar to Ms. Brien, Mr. Lombard's work included quality control document review after

completion of primary review by contract attorneys; legal research; deposition planning and preparation; drafting of briefs (discovery, summary judgment, sanctions), and trial preparation prior to the Court's issuance of its summary judgment order and entry of judgment. Cooley billed Mr. Lombard's time to Volcano at its standard rates of $355/hour in 2013 and $445/hour in 2014.

d) **Sarah Binning:** Ms. Binning is a second-year associate in Cooley's litigation department. She graduated from U.C. Davis, King School of Law in May 2012. Ms. Binning worked under the supervision of Ms. Main. Her work on the case included quality control document review after completion of primary review by contract attorneys, legal research and analysis, and the preparation of a substantial privilege log in this action. Privilege was a significant discovery issue due to Cooley's representation of Volcano in the acquisition of CardioSpectra, and the long period of time between the execution of the Merger Agreement and the filing of the original complaint. Cooley billed Ms. Binning's time to Volcano at its standard rates of $355/hour in 2013 and $445/hour in 2014.

e) **Bethany Lobo:** Ms. Lobo is a fifth-year associate in Cooley's litigation department. Ms. Lobo graduated *Cum Laude* from Harvard Law School in 2006. Before joining Cooley in December 2013, Ms. Lobo served as a law clerk to the Honorable Consuelo Callahan of the U.S. Court of Appeals for the Ninth Circuit and the Honorable James Ware (Ret.) of the U.S. District Court for the Northern District of California. Ms. Lobo also worked as a litigation associate for Morrison & Foerster in its San Francisco office and was involved in intellectual property, contract, securities, and land use disputes in trial and appellate proceedings. After that, Ms. Lobo worked for the State of California, where her practice focused on habeas corpus proceedings before the California Supreme Court and the California federal courts. Under the supervision of Ms. Main and myself, Ms. Lobo's actions included: legal research and analysis and trial preparation prior to the Court's issuance of its summary judgment order and entry of judgment. Cooley billed Ms. Lobo's time to Volcano at its standard rates of $530/hour in 2013 and $620/hour in 2014.

f) **Ritesh Srivastava:** Mr. Srivastava is a former associate in Cooley's litigation

department. Mr. Srivastava graduated from Pepperdine University School of Law in 2006. Prior to joining Cooley in March 2012, Mr. Srivastava was an appellate attorney and trial defense attorney for the United State Navy Judge Advocate General's Corp (JAG). Under my direct supervision, his responsibilities included: assisting with the collection of potentially relevant documents; overseeing the work performed by contract attorneys and junior associates; supervising junior lawyers on the team; drafting the motion to dismiss briefing; written discovery requests and responses; and meeting and conferring with opposing counsel. Cooley billed Mr. Srivastava's time to Volcano at its standard rates of $550/hour in 2012 and $645/hour in 2013.

g) **Arnold Blair:** Mr. Blair is an e-discovery staff attorney and manager in Cooley's E-Discovery and Document Retention department and a member of Cooley's litigation department. Mr. Blair's contributions to the case included working with Volcano to collect documents, identifying Volcano's counsel for privilege review purposes, drafting the document review protocol, and supervising the document reviews and productions. Cooley billed Mr. Blair's time to Volcano at its standard rates of $325/hour in 2013.

h) **Rich Nieva and Guillermo Alvarez:** Mr. Nieva is a senior paralegal and Mr. Alvarez is a paralegal specialist. Their billing rate for work completed in 2012 was $245/hour and $275/hour, respectively, for work completed in 2013 was $ 260/hour and $ 290/hour, respectively, and for work completed in 2014 was $ 275/hour and $ 315/hour, respectively. Mr. Nieva was the primary paralegal on the case and Mr. Alvarez assisted when needed.

In addition to the core team of attorneys and paralegals, six other Cooley timekeepers billed time on this case; however, Volcano is not seeking reimbursement for those fees, totaling $80,077.

5. Cooley has served as Volcano's corporate counsel since 2007. During this time, Cooley has assisted Volcano with numerous mergers and acquisitions, including its acquisition of CardioSpectra. This long history between Volcano and Cooley allowed Cooley to serve Volcano with greater efficiency and cost effectiveness due to Cooley's understanding of Volcano's business and the transaction in dispute.

**<u>Plaintiffs' Complaint and the Discovery Plan</u>**

6. Christopher E. Banas and approximately two dozen additional named parties filed the original complaint in this lawsuit on March 27, 2012, asserting claims for breach of contract, breach of the covenant of good faith fair dealing, and breach of fiduciary duty.

7. Volcano moved to dismiss the breach of contract claim on the ground that the named plaintiffs, other than Mr. Banas, were not themselves parties to the "Agreement and Plan of Merger among Volcano Corporation, a Delaware Corporation; Corazon Acquisition, Inc., a Texas Corporation; CardioSpectra, Inc., a Texas Corporation; Christopher E. Banas as Shareholder's Representative; and Paul Castella, as Shareholders' Representative, Dated as of December 7, 2007" (the "Merger Agreement"),[1] and that Mr. Banas did not plead that he was suing in his capacity as a Shareholders' Representative. *See* Dkt. No. 13. Volcano also moved to dismiss the claims for breach of the implied covenant of good faith and fair dealing and breach of fiduciary duty on the ground that plaintiffs had failed to state claims upon which relief could be granted. *Id.* While Volcano's motion to dismiss was pending, the parties stipulated to allow plaintiffs to file an amended complaint adding three additional parties as plaintiffs and changing the style of the case to "Former Shareholders of CardioSpectra, Inc. v. Volcano Corporation and Does 1-10. *See* Dkt. No. 17. The Court granted Volcano's motion and dismissed the complaint in its entirety with leave to amend. *See* Dkt. No. 31.

8. Plaintiffs Christopher E. Banas and Paul Castella, in their capacities as Shareholder Representatives under the Merger Agreement, ("Plaintiffs") filed a Second Amended Complaint for Breach of Written Contract on August 20, 2012. *See* Dkt. 33. The Court conducted the first Case Management Conference on October 15, 2012. *See* Dkt. 38. The Court ordered the parties to meet and confer and to submit a joint comprehensive discovery plan by November 19, 2012 and to appear for another Case Management Conference /Trial Setting on December 3, 2012. The parties complied, and the Court issued its Scheduling and Pretrial Order on December 5, 2012.

---

[1] A true and correct copy of cited portions of the Merger Agreement is attached hereto as **EXHIBIT E**.

*See* Dkt. No. 43. The Scheduling and Pretrial Order set an aggressive fact discovery cutoff date of September 13, 2013, and an expert discovery period from September 18 through November 15, 2013. *Id.*

**<u>Discovery: Document Production</u>**

9. Plaintiffs served their first request for production of documents on December 7, 2012, seeking documents spanning more than a five-year period, from approximately August 2007 through December 2012 (i.e., the date Volcano and CardioSpectra engaged in acquisition discussions through the date of Plaintiffs' document requests). To begin collecting potentially relevant documents, Cooley enlisted the assistance of Arnold Blair, one of its E-Discovery Staff Attorneys. Mr. Blair identified vendors that could collect and store Volcano's data and coordinated the collection of emails and documents in Volcano's electronic archives and from employee laptops. Cooley retained The Oliver Group and TransPerfect Legal Solutions ("TransPerfect") for these matters.

10. On December 13, 2012, Cooley engaged The Oliver Group to collect emails and electronic documents potentially responsive to Plaintiffs' document requests, image employee laptops, conduct forensic analysis, and store a hard drive Plaintiff Banas had retained in his possession after terminating his employment and consultancy with Volcano. Based on our experience, The Oliver Group's pricing was lower than other vendors providing the same kinds of services, and Cooley knew them to be a reputable and reliable e-discovery vendor. The Oliver Group also avoided incurring travel costs by remotely collecting and imaging most of the data. In Table 1, I have summarized for each invoice the amounts billed and work performed by The Oliver Group.

**Table 1: Summary of Costs Paid to The Oliver Group**

| Invoice Date | Work Performed | Amount |
|---|---|---|
| 2/6/2013 | Collection of Emails and Imaging of Laptops | $10,376.00 |
| 3/20/2013 | Imaging of Laptops | $739.00 |
| 4/10/2013 | Imaging of Laptops | $2,439.00 |

| Invoice Date | Work Performed | Amount |
|---|---|---|
| 6/30/2013 | Storage Costs for Hard Drive (June to Aug. 2013) | $150.00 |
| 8/29/2013 | Imaging of Laptops | $639.00 |
| 9/5/2013 | Storage Costs for Hard Drive (Sept. to Nov. 2013) | $150.00 |
| 11/7/2013 | Collection of Emails and Imaging of Laptops | $4,751.45 |
| 12/2/2013 | Storage Costs for Hard Drive (Dec. 2013, Jan. 2014, and Feb. 2014) | $150.00 |
| 2/19/2014 | Storage Costs for Hard Drive (Mar., Apr., and May 2014) | $150.00 |
| **Total Billed By The Oliver Group** | | **$19,544.45** |

11. Cooley engaged the services of TransPerfect to process collected documents, host the data in an accessible database, and process the production of documents. Because of the long-standing relationship between Cooley and TransPerfect, Cooley is on a preferential pricing plan and receives lower pricing than other customers. In Table 2, I have summarized amounts billed (excluding $16,599.79 in taxes and $897.64 in miscellaneous expenses) and work performed per month by TransPerfect.

**Table 2: Summary of Monthly Costs Paid to TransPerfect**

| Date | Total Costs | Hosting Fee | User Access Fee | Prod. Processing Fee | Data Processing Fee | Labor Costs |
|---|---|---|---|---|---|---|
| Jan. 2013 | $911.15 | | | | $836.86 | |
| Feb. 2013 | $21,761.31 | $846.00 | $617.50 | $437.00 | $16,373.50 | $1,712.50 |
| Mar. 2013 | $41,099.94 | $1,656.00 | $1,995.00 | $999.96 | $32,424.00 | $3,612.50 |
| Apr.2013 | $23,802.72 | $2,754.00 | $1,900.00 | $3,977.36 | $11,318.50 | $1,912.50 |
| May 2013 | $9,266.73 | $2,934.00 | $981.67 | $2,676.14 | $1,494.50 | $425.00 |
| June 2013 | $5,867.57 | $2,988.00 | $1,045.00 | $500.00 | | $856.25 |
| July 2013 | $7,986.69 | $3,042.00 | $601.35 | $1,298.55 | | $2,393.75 |
| Aug. 2013 | $7,343.55 | $3,078.00 | $589.00 | $602.85 | | $2,475.00 |
| Sept. 2013 | $6,194.56 | $3,096.00 | $585.83 | $179.05 | | $1,756.25 |
| Oct. 2013 | $5,296.73 | $3,132.00 | $589.00 | $0.17 | | $1,143.75 |

| Date | Total Costs | Hosting Fee | User Access Fee | Prod. Processing Fee | Data Processing Fee | Labor Costs |
|---|---|---|---|---|---|---|
| Nov. 2013 | $12,173.09 | $3,510.00 | $684.00 | $2,925.00 | $2,755.50 | $712.50 |
| Dec. 2013 | $31,809.54 | $4,446.00 | $684.00 | $4,630.34 | $13,168.41 | $6,275.00 |
| Jan. 2014 | $11,038.25 | $4,932.00 | $665.00 | $3,091.41 | | $1,356.25 |
| Feb. 2014 | $6,402.78 | $4,950.00 | $680.83 | | | $125.00 |
| Mar. 2014 | $6,471.71 | $4,968.00 | $681.15 | | $295.00 | |
| Apr. 2014 | $6,204.96 | $4,968.00 | $681.15 | | | $50.00 |
| **Total** | **$203,631.28** | $51,300.00 | $12,980.48 | $21,317.83 | $78,666.27 | $24,806.25 |

12. In early 2013, Cooley hired contract attorneys through Legalpeople, a legal staffing company, to assist with the review of the substantial amount of data collected. First-year associates Ms. Brien and Mr. Lombard reviewed a sub-set of the documents for quality control purposes, and Ms. Main and Mr. Srivastava supervised the junior attorneys at Cooley and the contract attorneys. Cooley engaged 15 contract attorneys to review documents for responsiveness and privilege, and then later retained a smaller staff of 5 contract attorneys to review documents withheld as privileged, redact privileged information for partially privileged documents, and draft preliminary privilege descriptions. Legalpeople billed $47/hour for each contract attorney and $59/hour for one project manager to monitor the review team located in Chicago and facilitate efficient communication between the contract attorneys and Cooley attorneys. Cooley passed on Legalpeople's charges to Volcano without markup.

13. Before hiring Legalpeople, Cooley's Director of Contract Professionals and Temporary Assignments obtained rates from several companies offering contract attorney services. The cost ranged from $54/hour to $60/hour for contract attorneys and $90-95 for a project manager. Legalpeople offered the lowest prices, and had recently completed another successful project for Cooley on a different matter. From early February, 2013 to approximately the middle of May, 2013, the contract attorneys spent 5,868.2 hours reviewing documents, reflecting a total cost of $282,997. For purposes of comparison, staffing first-year associates at Cooley for the same amount of time, at a rate of $355/hour, would have cost Volcano $2,083,211. By hiring contract attorneys,

Volcano saved approximately $1,800,214 in attorneys' fees. In Table 3, I have summarized the hours worked and amounts billed per month by Legal People.

**Table 3: Summary of Monthly Fees for Contract Attorneys**

| Date | Total Cost | Hours Worked | No. of Doc. Reviewers |
|---|---|---|---|
| Feb. 2013 | $45,079.75 | 942.65 | 15 |
| Mar. 2013 | $159,584.05 | 3,337.55 | 14-15 |
| Apr. 2013 | $48,831.80 | 997 | 5-15 |
| May 2013 | $29,501.40 | 591 | 5 |
| **Total** | **$282,997.00** | **5868.2** | |

**Mediation**

14. The parties participated in mandatory mediation on July 8, 2013. The mediation was conducted by the Honorable Edward A. Infante (ret.) of JAMS in San Francisco. As the case continued into June and July, Cooley's mediation activities included meeting and conferring with Plaintiffs' counsel, researching and selecting a mediator, preparing a mediation brief, and participating in the mediation. Cooley's mediation brief was 29 pages long and included hundreds of pages of exhibits. The mediation was unsuccessful. Volcano's portion of the JAMS fee was $6,275.00.

**Discovery: Depositions**

15. In May 2013, Plaintiffs requested information for deposition scheduling and began serving deposition subpoenas in June 2013, which included a June 14, 2013, Notice of Videotaped Deposition pursuant to Fed. R. Civ. P. 30(b)(6) ("Plaintiffs' 30(b)(6) Notice"), demanding that Volcano designate corporate representatives to testify on 15 areas of inquiry. Volcano served its responses and objections on July 9, 2013, wherein it designated representatives to testify on all but two of the topics. After meeting and conferring, Plaintiffs submitted their Amended Rule 30(b)(6) Notice.

16. Between June and August 2013, Plaintiffs deposed 15 fact witnesses, including Lorraine Huffman, Nathaniel Kemp, Lisa Quaglia, Michel Lussier, Najla Aftahi, Tim Glynn, Nancy

Lelicoff, John Dahldorf, Vincent Burgess, David Sheehan, John Sheridan, Jwala Jawharkar, Shulai Zhao, Scott Huennekens, and Daniel Redline. Mr. Rhodes, Ms. Main, or I defended these witnesses at their depositions. Prior to each deposition, we spent time preparing the witness for his or her deposition. For non-30(b)(6) witnesses, the preparation time generally lasted only a couple of hours. Mr. Rhodes, Ms. Main, or I took the depositions of Dr. Steven Bailey, Silbiano Gonzales, Daniel Sims, Alexander Wood, Dr. Thomas Milner, Joseph Piercy, Dr. Elisa Harvey, Paul Castella, and Christopher Banas in August and September 2013. Messrs. Gonzales, Sims, Wood, and Piercy were all named as plaintiffs in the original complaint, and were employed by other companies controlled by Plaintiff Banas. They were also former CardioSpectra employees who worked at Volcano after the merger. Dr. Bailey was also a named plaintiff on the original complaint and had served on CardioSpectra's Board of Directors. Dr. Milner was a co-founder of CardioSpectra and served as a consultant to Volcano after the merger. Dr. Harvey was a regulatory affairs consultant to CardioSpectra and was retained by Plaintiff Banas to serve Volcano when he was leading the Volcano OCT Division after the merger. All of these depositions were necessary to obtain testimony from potentially hostile witnesses who were motivated to assist Plaintiffs.

17. The depositions required us to travel to Sacramento and San Diego as well as to Colorado, Maryland, Massachusetts, and Texas, thereby incurring costs for airfare, ground transportation, meals, and the shipping of deposition materials. As shown below, two attorneys usually attended the depositions on behalf of Plaintiffs, while only one attorney generally attended on behalf of Volcano.

18. The parties took and defended expert depositions in December 2013. On December 11, 2013, I traveled to Boston, Massachusetts to take the deposition of Dr. Zvi Ladin, Plaintiffs' expert witness. I also defended the depositions of Cindy Domecus and Iain Cockburn, Volcano's expert witnesses. While only I handled the expert depositions on behalf of Volcano, all three of these depositions were attended by two attorneys for Plaintiffs. In Table 4, I have summarized attorney attendance at the depositions described.

**Table 4: Summary of Attorney Attendance at Depositions**

| Date | Deponent | Taken By | Location | Attended from Volcano | Attended from Plaintiffs |
|---|---|---|---|---|---|
| 6/6/2013 | Huffman, Lorraine | Plaintiffs | Sacramento, CA | Mark Lambert | Marc Stanley, Scott Kitner |
| 6/19/2013 | Kemp, Nathaniel | Plaintiffs | Boston, MA | Mark Lambert | Marc Stanley, Scott Kitner |
| 6/21/2013 | Quaglia, Lisa | Plaintiffs | Boston, MA | Mark Lambert | Marc Stanley, Scott Kitner |
| 6/25/2013 | Lussier, Michel | Plaintiffs | San Diego, CA | Mark Lambert | Marc Stanley, Scott Kitner |
| 6/26/2013 | Aftahi, Najla | Plaintiffs | San Diego, CA | Amanda Main | Marc Stanley, Scott Kitner |
| 07/16/2013 & 07/17/2013 | Glynn, Tim | Plaintiffs | San Diego, CA | Mark Lambert | Marc Stanley, Scott Kitner |
| 7/17/2013 | Lelicoff, Nancy | Plaintiffs | San Diego, CA | Mark Lambert | Marc Stanley, Scott Kitner |
| 7/19/2013 | Dahldorf, John | Plaintiffs | San Diego, CA | Amanda Main, Michael Rhodes | March Stanley, Scott Kitner |
| 7/25/2013 | Burgess, Vincent | Plaintiffs | San Diego, CA | Michael Rhodes, Amanda Main | Marc Stanley, Scott Kitner |
| 7/30/2013 | Sheehan, David | Plaintiffs | San Diego, CA | Mark Lambert | Marc Stanley |
| 7/31/2013 | Sheridan, John | Plaintiffs | San Diego, CA | Mark Lambert | Marc Stanley |
| 8/7/2013 | Jawharkar, Jwala | Plaintiffs | Sacramento, CA | Mark Lambert | Scott Kitner |
| 8/9/2013 | Bailey, Steven | Volcano | San Antonio, TX | Mark Lambert | Marc Stanley, Scott Kitner |
| 8/13/2013 | Gonzales, Silbiano | Volcano | Broomfield, CO | Mark Lambert, Amanda Main | Marc Stanley, Scott Kitner |
| 8/14/2013 | Sims, Daniel | Volcano | Broomfield, CO | Amanda Main | Marc Stanley, Scott Kitner |
| 8/16/2013 | Zhao, Shulai | CardioSpectra | San Diego, CA | Amanda Main | Scott Kitner |

| | | | | | |
|---|---|---|---|---|---|
| 8/22/2013 | Wood, Alexander | Volcano | San Antonio, TX | Amanda Main | Marc Stanley, Scott Kitner |
| 8/23/2013 | Milner, Thomas | Volcano | Austin, TX | Mark Lambert, Amanda Main | Marc Stanley, Scott Kitner |
| 8/27/2013 | Huennekens, Scott | CardioSpectra | San Diego, CA | Michael Rhodes | Marc Stanley, Scott Kitner |
| 8/29/2013 | Redline, Daniel | CardioSpectra | Sacramento, CA | Mark Lambert | Scott Kitner |
| 8/30/2013 | Piercy, Joseph | Volcano | San Antonio, TX | Amanda Main | Marc Stanley |
| 9/9/2013 | Harvey, Elisa | Volcano | Baltimore, MD | Amanda Main | Scott Kitner |
| 9/10/2013 | Castella, Paul | Volcano | San Francisco, CA | Michael Rhodes, Mark Lambert | Marc Stanley |
| 9/12/2013 | Banas, Christopher | Volcano | Broomfield, CO | Michael Rhodes, Amanda Main | Marc Stanley |
| 12/11/2013 | Ladin, Zvi | Volcano | Boston, MA | Mark Lambert | Marc Stanley, Scott Kitner |
| 12/18/2013 | Domecus, Cindy | Plaintiffs | Palo Alto, CA | Mark Lambert (Tijana Brien observed, but did not bill) | Marc Stanley, Scott Kitner |
| 12/20/2013 | Cockburn, Iain | Plaintiffs | Palo Alto, CA | Mark Lambert | Marc Stanley, Scott Kitner |

**<u>Discovery: Disputes</u>**

19. On December 28, 2012, Volcano served its first request for documents on Plaintiffs. Plaintiffs produced documents and, at some point during the summer, we determined that the agreed-upon metadata fields in Plaintiffs' production were inaccurate. For instance, a document's modification date preceded its creation date. The parties met and conferred and Plaintiffs ultimately agreed to produce a layover file with additional metadata that accurately portrayed those dates and other information.

20. On June 28, 2013, Volcano served its second set of interrogatories on Plaintiffs and Plaintiffs served their objections and responses on July 26, 2013. Ms. Main sent a meet and confer letter to Plaintiffs' counsel on August 26, 2013, explaining that Plaintiffs' responses to

Volcano's contention interrogatories were grossly deficient. The parties met and conferred, but Plaintiffs refused to supplement.

21. On August 1, 2013, Plaintiffs served their second request for production of documents. On September 6, 2013, Volcano served its responses and objections, stating that it could not produce employee-related documents protected by the employees' right of privacy. Volcano also produced additional documents in response to Plaintiffs' second request. The parties met and conferred a number of times but never reached a mutually agreeable solution.

22. Volcano provided three extensive privilege logs in August and September 2013, which contained more than 3200 entries.

23. After receiving a privilege log from Plaintiffs, on September 3, 2013 we provided a letter to Plaintiffs' counsel, informing them that their privilege log did not contain adequate descriptions to support their claims of privilege. Counsel subsequently met and conferred, at which time they made a claim that Volcano's privilege log was insufficient. Following additional meet and confer efforts, and to avoid Court intervention, counsel for Volcano agreed to provide an amended privilege log. Volcano provided its amended privilege log on November 18, 2013.

24. On September 20, 2013, the parties submitted joint statements regarding their respective discovery disputes. Volcano asked the Court to compel Plaintiffs to provide responses to its contention interrogatories, and Plaintiffs asked the Court to order Volcano to collect, review, and produce additional documents. *See* Dkt. Nos. 51, 52.

25. On October 2, 2013, the Court held a telephonic conference and, on October 4, 2013, ordered Plaintiffs to serve supplemental responses and state the material facts supporting their contentions. *See* Dkt. No. 55. The Court also issued a tentative ruling on Plaintiffs' request for additional documents. *See* Dkt. No. 56. The parties submitted additional briefing on the issue and, on October 17, 2013, the Court ordered Volcano to collect documents from additional custodians and to produce responsive, non-privileged documents within 45 days. *See* Dkt. No. 59.

26. Pursuant to the Court's October 4 Order, Plaintiffs served their supplemental responses on November 4, 2013. Because Plaintiffs' supplemental responses still contained factually unsupported contentions, Ms. Main sent a meet and confer letter to Plaintiffs' counsel, asking Plaintiffs to confirm that such responses disclosed all material facts supporting their contentions. Although the parties met and conferred and Plaintiffs promised to respond, they failed to do so and did not further supplement their responses.

27. Pursuant to the Court's October 4 Tentative Ruling, which, in part became final 7 days later, Volcano collected and produced certain employee performance reviews and self-appraisals. Some of these documents required redactions. Also, Plaintiffs requested the same type of documents for additional employees, and Volcano produced additional documents in response to that request.

28. Pursuant to the Court's October 17 Order, Volcano collected documents from its electronic archive and from the hard drives of two current employees and followed up with former employees to collect any hard drives used during their employment and in their possession. Volcano complied with this Court's order and produced documents on a rolling basis through early December. Given the short deadline in which to collect, review, and produce documents in accordance with the Court's Order, three first-year associates dedicated a substantial amount of their time to this project between October 17 and early December 2013. Ms. Main, with the assistance of Ms. Binning, reviewed the potentially privileged documents, redacted partially privileged documents, and drafted privilege descriptions. On January 22, 2014, Volcano served a privilege log relating to its supplemental production containing approximately another 500 entries.

29. Over the course of the litigation, Volcano produced approximately 56,000 documents, consisting of nearly 380,000 pages.

**Discovery: Expert Costs**

30. In accordance with the Scheduling and Pretrial Order, the parties disclosed the names of their experts and the areas of anticipated testimony on July 31, 2013. Plaintiffs

identified Zvi Ladin, Ph.D. to testify "about regulatory approval processes for medical devices, Volcano's attempts to achieve regulatory clearance for OCT and Volcano's failure to meet Milestone 2 f the Agreement and Plan of Merger." Plaintiffs also identified Robert A. Goodin to "testify about Plaintiffs' reasonable and necessary attorney's fees and costs in pursuing this case." Volcano identified Cindy Domecus R.A.C. to testify on "regulatory" matters and Dr. Iain Cockburn to testify about the "economics of deal terms" in the Merger Agreement.

31. Volcano served its experts' reports on September 13, 2013. Based on her 30 years of experience in the regulatory and clinical affairs fields, Ms. Domecus provided expert opinions on the United States Food and Drug Administration procedures and processes that applied to Investigational Device Exemption ("IDE") approval and 510(k) premarket certification clearance for the Volcano OCT system and catheter that were addressed in Volcano's submissions to the FDA. Ms. Domecus' *curriculum vitae* is attached as **EXHIBIT F**. She reviewed the Volcano regulatory submissions and certain other documents and provided opinions intended to assist the trier of fact in understanding the nature and purpose of the FDA regulatory approvals that Volcano sought in connection with its OCT system and catheter and FDA processes and procedure, as well as the regulatory environment at the relevant time. Ms. Domecus also reviewed Dr. Ladin's report and submitted a rebuttal, as well as a supplemental report in light of certain documents that later came to her attention before she was deposed. She was deposed on December 18, 2013. Her other work included her review of her deposition transcript. She billed 97.8 hours to the case at a rate of $425/hour and 10 hours at her testifying rate of $525/hour, for a total amount of $46,815. Cooley paid Ms. Domecus' invoices and received reimbursement from Volcano.

32. Ms. Domecus' fees were fair and reasonable. Her core hourly rate was $225/hour less expensive than Dr. Ladin's, and her rate for depositions was $125/hour less than Dr. Ladin's. Her opinions were limited in scope to topics necessary to informing a lay jury about the FDA processes and procedures for reviewing applications for IDE approval and 510(k) clearance. Unlike Dr. Ladin, she did not undertake to conduct a hindsight post mortem on Volcano's

regulatory efforts. This allowed her work to be efficient and tailored to matters meeting the criteria of Federal Rule of Evidence 702. Ms. Domecus' opinions related to a claim in which Plaintiffs sought $10 million dollars plus interest and attorneys' fees, costs and disbursements under Section 13.4 of the Merger Agreement.

33. Dr. Iain Cockburn provided expert opinions regarding the use of milestone provisions and the economic value to Volcano that was afforded by the "commercially reasonable efforts" ("CRE") standard as defined in the Merger Agreement. Dr. Cockburn is the Richard Shipley Professor in Management at the Boston University School of Management. His *curriculum vitae* is attached as **EXHIBIT G**. Had there been a need for a trial, Dr. Cockburn's opinions would have assisted the trier of fact in understanding the economic value that the CRE provision in the Merger Agreement provided to Volcano, as well as expert opinions about the economic and business purposes of such provisions. The CRE provision was a heavily contested issue in this case and, had there been a predicate for proceeding to trial, Volcano would have presented Dr. Cockburn's testimony in accordance with Federal Rule of Evidence 702. Dr. Cockburn was deposed on December 20, 2013. He billed 89.25 hours at a rate of $700/hour for a total amount of $62,475. Dr. Cockburn was assisted by researchers at Keystone Strategy whose billing rates ranged from $195 to $450/hour and its fees for these timekeepers totaled $189,110.36. Among other actions in support of Dr. Cockburn, these researches conducted an analysis of merger and acquisition agreements in the life sciences sector from the relevant time period to assess the usage of CRE provisions and variations among such provisions. These amounts reflect services provided from August 2013 through February 2014. Cooley paid the invoices for Dr. Cockburn's time and Keystone's support work and received reimbursement from Volcano.

34. Compensation for Dr. Cockburn's time is a reasonable cost. Plaintiffs argued that the milestones were triggered by the sale of products not derived from CardioSpectra's assets. Plaintiffs contentions deviated from the CRE standard, as defined in the Merger Agreement, and to they seemed intent on presenting a case based on matters and arguments that were in conflict

with the CRE standard defined by the parties. Dr. Cockburn provided testimony about the value of provisions that were hotly contested in this action. Accordingly, Volcano invested in an expert that could help explain to a lay jury the economic value it obtained from the CRE clause and milestone provisions so that a jury could better understand the bargain and exchange of value among the parties to the Merger Agreement. These issues pertained to claims for which Plaintiffs sought $27 million in damages, along with interest, attorneys' fees and costs under the Merger Agreement.

**Summary Judgment Briefing**

35. Beginning in the middle of December 2013, we started preparing to draft a summary judgment motion seeking summary judgment on all of Plaintiffs' claims. Ms. Main had primary responsibility for drafting Volcano's summary judgment brief as well as its opposition to Plaintiffs' cross-motion for summary judgment. Ms. Brien and Mr. Lombard, under the supervision of Ms. Main, researched and analyzed case law regarding relevant issues, drafted portions of the summary judgment briefing, and developed evidence in support of Volcano's briefs. I reviewed, analyzed, and revised draft briefs provided by Ms. Main and supervised the overall preparation of the final briefs. Mr. Rhodes reviewed the near-final drafts of briefs and spent time preparing for the hearing on the matter.

36. Volcano and Plaintiffs filed their cross-motions for summary judgment on January 21, 2014. The parties filed their oppositions on February 11, 2014, and their replies on February 25, 2014. Around this time period, Volcano filed a motion to seal confidential documents and also filed numerous declarations in support of confidential documents filed under seal by Plaintiffs. Further, Volcano filed an evidentiary objection to Plaintiffs' reply.

37. After the parties submitted their briefing, we prepared for the Court's hearing on the matter. Ms. Main and Ms. Brien reviewed the briefing and supporting evidence and law and drafted argument outlines and case summaries.

38. On March 13, 2014, days before the Court's hearing on the parties' summary judgment motions, Plaintiffs filed a motion for sanctions under Federal Rules of Civil Procedure

37(b) and 56(d). Volcano had no choice but to respond and draft an opposition prior to the hearing on the summary judgment motions. Ms. Main reviewed the documentary and testimonial evidence cited in support of Plaintiffs' motion and drafted the opposition. Ms. Brien, under the supervision of Ms. Main, researched and analyzed case law, developed evidence in support of Volcano's opposition, and assisted with drafting, revising, and finalizing the opposition. I reviewed, analyzed, and revised the drafts of the opposition provided by Ms. Main. Volcano filed its opposition on March 17, 2014.

39. On March 19, 2014, the Court heard the parties' arguments on their cross-motions for summary judgment and Plaintiffs' motion for sanctions. Mr. Rhodes argued on behalf of Volcano with respect to the summary judgment motions, and I defended against Plaintiffs' motion for sanctions. Ms. Main and Ms. Brien also attended the hearing for the purposes of providing legal and fact support on these motions. It was important for these associates to be present and to assist in the presentation of the work product they had so diligently prepared, but I did not bill Volcano for their time at the hearing. Three attorneys appeared on behalf of Plaintiffs, including Marc Stanley, Scott Kitner, and Martin Woodward.

40. Following the summary judgment hearing, we scaled down our trial preparation activities to avoid a substantial amount of potentially unnecessary fees and expenses while awaiting the Court's order.

41. On March 31, 2014, the Court granted Volcano's summary judgment motion, in its entirety, and denied Plaintiffs' motions.

**<u>Billing Practices</u>**

42. In the regular course of business, Cooley's timekeepers keep detailed, contemporaneous time records. Timekeepers log their time to the nearest tenth of an hour. On a regular basis, these time records, along with information concerning costs (expenses) incurred during that period, are collected and submitted to Cooley's computerized record keeping system. This record keeping system enables Cooley to track all fees accrued and costs incurred by Cooley

on behalf of its clients and further allows Cooley to generate summaries of the work performed and the fees and costs incurred on a particular matter.

43. I oversaw a core team of four attorneys and one to two paralegals who were well-versed in the factual and legal background of this matter in an effort to streamline the casework and cut costs. When extra help was needed, I brought in (and authorized through Volcano) additional timekeepers on a temporary basis. I personally reviewed the time and expense records for this matter each month (the "Pre-Bills") prior to the generation of the bills to send to Volcano. I paid special attention to time or expenses that appeared to reflect inefficient, potentially duplicative, or otherwise inappropriate work or expenses. When I encountered such entries, I made the determination to write off such fees and expenses. For example, I wrote off the fees accrued by non-core team timekeepers, and as described in paragraph 46, below. In all, during the course of this matter, Cooley wrote off a total of $350,672.50 in attorneys' fees for another 764.7 hours of work performed. Such written off fees and expenses were not billed to the client and are not reflected in the summaries below.

44. I have reviewed, edited and adjusted the monthly pre-bills prior to sending them to Volcano and, to the best of my knowledge, they accurately reflected time spent by Cooley attorneys and costs and disbursements Cooley has incurred on this matter on behalf of Volcano. Based upon my review bills and invoices and, upon my personal knowledge of the tasks undertaken by Cooley timekeepers on this matter, and the work performed by outside vendors and experts, I believe that the bills upon which Volcano's motion is based are accurate and reasonable.

45. I have summarized in Table 5 below the fees billed by core Cooley timekeepers from March 27, 2012 (the date of the original complaint) through March 2014, including the hours billed, the hourly rates (by year from 2012 -2014) and the amounts billed. I have also added a column signifying the timekeeper's title. These are the fees that Volcano seeks to recover from Plaintiff under Section 13.4 of the Merger Agreement.

**Table 5: Time Billed By Cooley LLP from March 2012 Through March 2014**

| Timekeeper | Title | Hours | Rate(s) | Fee Amount |
|---|---|---|---|---|
| Michael G. Rhodes | Partner | 259.3 | $975, $1,035, and $1,095 | $268,501.50 |
| Mark F. Lambert | Partner | 1179 | $670, $710, and $770 | $840,358.00 |
| Ritesh K. Srivastava | Associate | 536 | $550, $645, and $685 | $326,188.50 |
| Amanda A. Main | Associate | 1567.7 | $500, $585 and $685 | $956,246.50 |
| Bethany C. Lobo | Associate | 152.3 | $530 and $620 | $92,644.00 |
| Sarah R. Binning | Associate | 276 | $355 and $445 | $98,430.00 |
| Tijana Brien | Associate | 1,108.9 | $355 and $445 | $425,159.50 |
| Jeffrey D. Lombard | Associate | 716 | $355 and $445 | $265,691.00 |
| Arnold G. Blair | E-Discovery Staff Attorney | 326.5 | $260 and $325 | $101,179.00 |
| Richard A. Nieva | Paralegal | 156.3 | $245, $260, and $275 | $40,533.00 |
| Guillermo Alvarez Jr. | Paralegal | 127.2 | $290 | $36,933.00 |
| **Total** | | **6,405.2** | | **$3,451,864.00** |

46. Over the course of this dispute, in my discretion, I wrote off 764.7 hours of time kept by Cooley timekeepers on this matter, totaling $350,672.50. These write-offs reflect my billing judgment that adjustments should be made to bills where new attorneys are working on certain tasks for the first time (notwithstanding relatively low billing rates), where determinations have been made to adjust strategy, and for time spent by a newly-assigned attorney coming up to speed, or for an attorney who pitches in on the case on a one-off project but does not provide on-going service to the matter.

47. In the San Francisco Bay Area, it is my experience and understanding that paralegal and practice support staff time is typically billed to clients. Cooley Practice Support personnel advise and provide technical support for litigation projects, including electronic discovery and trial preparation. Some Practice Support personnel, including Arnold Blair who assisted with this matter, are also licensed attorneys. If Cooley did not employ such personnel and bill their time, the services would need to be provided by outside vendors, likely at equal or greater cost.

48. I have summarized in Table 6 Cooley's fees on a month-by-month basis, including a brief description of the types of work performed during each month. These totals do not include fees that have been written off or those billed by attorneys other than those listed below, and which Volcano does not seek to recover from Plaintiffs.

**Table 6: Cooley's Fees and Work Performed by Month
March 2012 Through March 2013**

| Month | Work Performed | Costs |
|---|---|---|
| Mar. 2012 | Case assessment and strategy. Correspondence with plaintiffs' counsel regarding response timing. | $8,571.50 |
| Apr. 2012 | Case strategy and legal research regarding motion to dismiss. Correspondence with opposing counsel regarding scheduling. Draft motion to dismiss. Witness interviews regarding factual background. | $54,556.50 |
| May 2012 | Case strategy. Revise and file motion to dismiss. | $12,986.00 |
| June 2012 | Meet and confer with CardioSpectra regarding proposed stipulation. Draft and file reply brief to motion to dismiss. | $10,265.00 |
| July 2012 | Case strategy regarding case management and witnesses. Prepare for oral argument on motion to dismiss. Draft answer to complaint. | $19,027.00 |
| Aug. 2012 | Case strategy regarding case management and document collection. Revise answer to complaint. | $24,066.50 |

| Month | Work Performed | Costs |
|---|---|---|
| Sept. 2012 | Case strategy regarding litigation strategy, document collection, and discovery planning. Draft document collection plan. Prepare discovery disclosures. Draft Joint Case Management Statement and meet and confer with CardioSpectra counsel regarding same. Witness interviews. | $44,632.00 |
| Oct. 2012 | Case strategy regarding document collection. Draft and revise initial disclosure and Joint Case Management Statement and meet and confer with plaintiffs' counsel. Document collection. Evidence development and analysis. | $43,301.00 |
| Nov. 2012 | Case strategy regarding discovery. Meet and confer with plaintiffs' counsel regarding discovery and document production. Draft and revise Protective Order and meet and confer with CardioSpectra counsel regarding same. Document collection. Revise Joint Case Management Statement. | $42,188.50 |
| Dec. 2012 | Case strategy regarding discovery. Prepare for Case Management Conference. Draft and revise interrogatories and requests for admission. Document collection. Mediator research and selection; meet and confer with opposing counsel. | $58,889.50 |
| Jan. 2013 | Case strategy regarding potential expert selection. Document collection and analysis. Meet and confer with plaintiffs' counsel regarding scheduling of discovery responses. Document review and production. Draft and revise discovery responses. Evidence development and analysis. Draft and revise document review protocol. | $133,075.50 |
| Feb. 2013 | Case strategy regarding discovery. Draft and revise document review protocol. Document review and production. Meet and confer with plaintiffs' counsel regarding deficiencies in their production. | $135,845.00 |
| Mar. 2013 | Document review and production. Additional document collection. Meet and confer with plaintiffs' counsel regarding Banas hard drive. | $69,218.50 |
| Apr. 2013 | Draft privilege review protocol. Document review and production. Interview potential expert witnesses. | $53,412.50 |
| May 2013 | Case strategy regarding expert witnesses. Document review and production. Meet and confer with plaintiffs' counsel regarding deposition and mediation scheduling. Witness interviews. Begin deposition preparation. | $91,545.00 |

| Month | Work Performed | Costs |
|---|---|---|
| June 2013 | Document review and production. Deposition preparation and attendance. Case strategy regarding depositions. Evidence development and analysis. Meet and confer with CardioSpectra counsel regarding discovery schedule. Draft and revise mediation brief. Meet and confer with plaintiffs' counsel regarding privilege logs. Prepare documents for expert witness. Legal research. Draft contention interrogatories. | $245,149.50 |
| July 2013 | Finalize and submit mediation brief. Document review and production. Deposition preparation and attendance. Meet and confer with plaintiffs' counsel regarding privilege documents. Prepare for and participate in mediation. Case strategy regarding potential deponents. Legal research. Evidence analysis. Meet and confer with plaintiffs' counsel regarding Rule 30(b)(6) topics. | $325,690.00 |
| Aug. 2013 | Deposition preparation and attendance. Evidence development and analysis. Document review and production. Review of privileged documents and creation of privilege log. Case strategy regarding expert witnesses. Legal research. Draft meet and confer letter regarding plaintiffs' deficient interrogatory responses. Draft supplemental interrogatory responses. | $364,392.50 |
| Sept. 2013 | Deposition preparation and attendance. Draft and revise supplemental interrogatory responses. Document review. Review of privileged documents and creation of privilege log. Expert witness reports. Meet and confer with plaintiffs' counsel regarding their deficient interrogatory responses. Draft response to Plaintiffs' second request for production. Evidence development and analysis. Meet and confer with plaintiffs' counsel regarding their second request for production and additional depositions. Draft Joint Statements of Parties' Discovery Dispute. | $277,260.50 |
| Oct. 2013 | Prepare for and attend Case Management Conference. Document review. Review expert reports and rebuttals. Draft and file objection to Court's tentative order regarding discovery issues. Legal research. Meet and confer with plaintiffs' counsel regarding Volcano's privilege log. Review of privileged documents and revision of privilege log. Document collection for supplement production. | $216,589.00 |
| Nov. 2013 | Document review and production. Additional document collection. Evidence development and analysis. Case strategy regarding declaration of technical or commercial failure. Legal research. Draft meet and confer letter regarding plaintiffs' supplemental interrogatory responses. Prepare for expert witness depositions. | $253,537.50 |

| Month | Work Performed | Costs |
|---|---|---|
| Dec. 2013 | Document review and production. Expert witness deposition preparation and attendance. Legal research for motion for summary judgment. Begin drafting motion for summary judgment. Privilege review of supplemental production and creation of supplemental privilege log. | $195,953.50 |
| Jan. 2014 | Draft, revise, and file motion for summary judgment. Privilege review of supplemental production and creation of supplemental privilege log. Legal research for motion for summary judgment and opposition to Plaintiffs' motion. Evidence development and analysis. Draft opposition to Plaintiff's motion for summary judgment. Trial preparation. | $256,737.00 |
| Feb. 2014 | Revise and file opposition to Plaintiffs' motion for summary judgment. Legal research for opposition to Plaintiffs' motion and reply to Volcano's motion for summary judgment. Evidence development and analysis. Draft, revise, and file reply to Volcano's motion for summary judgment. Trial preparation. | $259,906.50 |
| Mar. 2014 | Draft evidentiary objections to Plaintiffs' reply to their motion for summary judgment. Case strategy regarding trial preparation and continue trial preparation. Prepare for and attend hearing on motions for summary judgment. Prepare exhibits and deposition designations. Legal research. Draft, revise, and file opposition to Plaintiffs' motion for sanctions. | $254,673.5 |

49. I have summarized below in Tables 7 and 8 the hours billed by timekeeper on a monthly basis.

**Table 7: Cooley's Hours Billed By Month**
**March 2012 to April 2013**

| Name | Mar 12 | Apr 12 | May 12 | Jun 12 | Jul 12 | Aug 12 | Sep 12 | Oct 12 | Nov 12 | Dec 12 | Jan 13 | Feb 13 | Mar 13 | Apr 13 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Amanda A. Main | | | | | | | | | 0.3 | 14.5 | 41.4 | 49.2 | 17.3 | 11.9 |
| Arnold G. Blair | | | | | | 3.9 | 10.3 | 20 | 15.9 | 25.8 | 49.3 | 77.1 | 45.6 | 20.3 |
| Bethany C. Lobo | | | | | | | | | | | | | | |
| Guillermo Alvarez Jr. | | | | | | | | | | | | | | |

| Name | Mar 12 | Apr 12 | May 12 | Jun 12 | Jul 12 | Aug 12 | Sep 12 | Oct 12 | Nov 12 | Dec 12 | Jan 13 | Feb 13 | Mar 13 | Apr 13 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Jeffrey D. Lombard | | | | | | | | | | | 32.3 | 21.2 | 12.5 | 25.8 |
| Mark F. Lambert | 7.7 | 21.7 | 8.8 | 9.5 | 3.6 | 14.5 | 27.5 | 35.3 | 31.1 | 30.7 | 23.2 | 15.5 | 5.5 | 3.6 |
| Michael G. Rhodes | 3.5 | 10.3 | 4 | 4 | 11.4 | 3.3 | 2.6 | 3.4 | 2.5 | 2.9 | 3.7 | 1.2 | 0.4 | 0.5 |
| Richard A. Nieva | | | | | | | 4.2 | 1 | | 10 | 10 | 7 | 11.5 | 5 |
| Ritesh K. Srivastava | | 54.5 | 5.8 | | 10 | 18.4 | 36.3 | 19.8 | 26.6 | 34.7 | 76.5 | 89.7 | 41.3 | 36.9 |
| Sarah R. Binning | | | | | | | | | | | | | | |
| Tijana Brien | | | | | | | | | | | 25.7 | 7.2 | 16.6 | 7.1 |
| **Total Hours** | **3.5** | **64.8** | **9.8** | **4** | **21.4** | **21.7** | **43.1** | **24.2** | **29.1** | **47.6** | **115.9** | **105.1** | **69.8** | **49.5** |

**Table 8: Cooley's Hours Billed By Month Continued**
**May 2013 to March 2014**

| Name | May 13 | Jun 13 | Jul 13 | Aug 13 | Sep 13 | Oct 13 | Nov 13 | Dec 13 | Jan 14 | Feb 14 | Mar 14 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Amanda A. Main | 17.4 | 133.5 | 199.3 | 187.7 | 150.3 | 116 | 107.6 | 117.3 | 145.3 | 158.3 | 100.4 |
| Arnold G. Blair | 21 | 13 | 8.4 | 4 | 0.9 | 10.3 | 0.7 | | | | |
| Bethany C. Lobo | | | | | | | | 19.8 | 35.6 | 38 | 58.9 |
| Guillermo Alvarez Jr. | 3.4 | 23.5 | 19.1 | 50.8 | 17.6 | 5.2 | 5.3 | 0.5 | | | 1.8 |
| Jeffrey D. Lombard | 44.3 | 71.2 | 37.7 | 99.1 | 16.4 | 92 | 108.7 | 26.9 | 24 | 45.5 | 58.4 |
| Mark F. Lambert | 22.6 | 103.6 | 126.9 | 156.6 | 103.4 | 82.6 | 62.8 | 100.9 | 74.7 | 49.5 | 57.2 |
| Michael G. Rhodes | 4.8 | 9.8 | 37.9 | 27.8 | 55.8 | 11.7 | 4.6 | 3.2 | 6.3 | 13 | 30 |

| Name | May 13 | Jun 13 | Jul 13 | Aug 13 | Sep 13 | Oct 13 | Nov 13 | Dec 13 | Jan 14 | Feb 14 | Mar 14 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Richard A. Nieva | 4 | 35 | 22.4 | 7.9 | | 3.5 | 11.6 | 15 | 8.2 | | |
| Ritesh K. Srivastava | 35.1 | 13.3 | 13 | 9 | 9 | 4.9 | | | 1.2 | | |
| Sarah R. Binning | | | | 25.8 | 42.7 | 77.8 | 124.7 | | 5 | | |
| Tijana Brien | 37 | 82.7 | 123.3 | 130.7 | 73.2 | 24.7 | 151 | 79.7 | 123 | 124.3 | 102.7 |
| **Total Hours** | **80.9** | **140.8** | **196.6** | **201.2** | **180.7** | **122.6** | **291.9** | **97.9** | **143.7** | **137.3** | **132.7** |

50. Volcano's in-house counsel, Darrin Lippoldt, contributed substantial time and experience in strategy discussions and fact collection, but Volcano does not seek compensation for his time.

51. Based on my review of billing records from the Cooley accounting department, Cooley spent the following time preparing the petition for fees and costs up to April 14, 2014, as summarized below in Table 9.

**Table 9: Cooley Time Spent on Fee Application**
**April 2014**

| Timekeeper | Title | Hours | Rate | Fee Amount |
|---|---|---|---|---|
| Michael G. Rhodes | Partner | 0.5 | $1,095 | $547.50 |
| Mark F. Lambert | Partner | 10.7 | $770 | $8,239.00 |
| Amanda A. Main | Associate | 20.5 | $685 | $14,042.50 |
| Bethany Lobo | Associate | 38.3 | $620 | $23,746.00 |
| Tijana Brien | Associate | 30.2 | $445 | $13,439.00 |
| **Total** | | **100.2** | | **$60,014.00** |

52. Volcano seeks to recover $1,023,995.99 in costs. I have summarized in Table 10 below the costs and expenses incurred by Cooley and billed to Volcano, as well as expenses Volcano paid directly.

**Table 10: Costs**

| Cost Description | Amount |
|---|---|
| The Oliver Group | $19,544.45 |
| TransPerfect Legal Solutions | $203,631.28 |
| Legalpeople (contract attorneys) | $282,997.00 |
| Travel (airfare, ground transportation, parking) | $34,178.88 |
| Depositions (court reporting, videotape service, witness fees) | $ 63,823.13 |
| Expert Services | $298,400.36 |
| JAMS Fee | $6,275.00 |
| Court Fees (call fees, filing fees, transcript charges) | $890.05 |
| Printing, copying, and scanning services | $56,492.39 |
| Data Hosting Fee | $21,790.00 |
| Research Fees | $30,306.55 |
| Federal Express | $3,716.17 |
| Messenger Service | $1,108.91 |
| Postage | $21.06 |
| Telephone | $820.76 |
| **TOTAL COSTS** | **$1,023,995.99** |

**Reasonableness of Cooley's Fees**

53. Recently ranked in the top 50 law firms in the United States by *The American Lawyer*, Cooley is a prominent nationwide law firm that works on complex cases for some of the most successful companies in the world. Cooley has approximately 750 attorneys throughout the U.S. and in China, and its litigation practice comprises more than 325 attorneys. Many of Cooley's litigators are ranked by their peers as among "The Best Lawyers in America," are fellows of the American College of Trial Lawyers, and have held positions appointed by the President of the United States.

54. I understand that Cooley's regular hourly rates are comparable to the hourly rates charged by other leading firms with offices in California. This understanding is confirmed, in part, by reports from law firm consultants and also by my review of the billing rates comparison conducted by Chuck Chandler of Valeo, a database service that compiles law firm billing rates. I have reviewed the rate comparison and Mr. Chandler's declaration, filed concurrently with this petition, and concluded that the rate charged to Volcano was comparable to rates charged for attorneys who have practiced for the same number of years as me, Mr. Rhodes, Ms. Main, Ms. Brien, and Mr. Lombard. Moreover, Volcano, a sophisticated company experienced in the use of outside law firms, has paid Cooley's bills, thereby attesting to the reasonableness of the fees charged and the work performed.

55. In accordance with Civil Local Rule 54-5, the parties' counsel met and conferred on April 10, 2014 to discuss Volcano's Motion for Attorneys' Fees, Costs, and Disbursements. Ms. Main and I attended the meeting for Volcano, and Scott Kitner and Martin Woodward attended for Plaintiffs. I identified each Cooley timekeeper, their number of hours worked, and their billing rates. I informed Plaintiffs' counsel that Volcano would seek approximately $280,000 in fees incurred by the 15 contract attorneys who performed document review and provided the total hours billed by each contract attorney and in total. I also advised that the contract attorneys' time was billed at $47/hour and their project manager's time was billed at $59/hour. Plaintiffs' counsel were

not willing to stipulate that Volcano is entitled to attorneys' fees as the prevailing party in light of the judgment or that Cooley's hourly rates were reasonable.

56. I also informed Plaintiffs' counsel that Volcano would seek approximately $761,000 in costs (in addition to the Legalpeople expenses), including: expert witness fees paid by Cooley and passed along to Volcano as costs; e-discovery services relating to collection, processing, and hosting of electronically-stored information; travel, hotels, and transportation; deposition transcript and video; mediation costs; and other costs incurred by Volcano in this action. I explained that we would set forth additional costs in our motion, but that the identified costs were the substantial majority of the total. I provided Plaintiffs' counsel the amount billed by Volcano's regulatory expert, Cindy Domecus, and provided the same information the following day for Volcano's economics expert, Dr. Iain Cockburn. I also asked if Plaintiffs' counsel would agree that these costs and disbursements were reasonable or recoverable. Counsel stated that they needed more detail to make that determination.

57. I asked counsel if there was any information that Volcano could provide them which would allow Plaintiffs to state what they would be willing to pay under Section 13.4 of the Merger Agreement. Mr. Woodward responded, "No."

I declare under penalty of perjury under the laws of the State of California, that the foregoing is true and correct. Executed this 14th day of April 2014 at Palo Alto, California.

*s/ Mark F. Lambert*
Mark F. Lambert

106003486