1   STANLEY LAW GROUP
2   MATTHEW J. ZEVIN, SBN: 170736
    225 Broadway, Suite 1350
3   San Diego, CA  92101
    Telephone:     (619) 235-5306
4   Facsimile:      (815) 377-8419
    e-mail:  mzevin@aol.com
5

6   Attorneys for Plaintiffs, Former Shareholders of
    CardioSpectra, Inc.
7   [Additional Counsel on Signature Page]

8                    IN THE UNITED STATES DISTRICT COURT

9         NORTHERN DISTRICT OF CALIFORNIA –SAN FRANCISCO DIVISION

10  FORMER SHAREHOLDERS OF                    CASE NO. CV12-01535WHO
    CARDIOSPECTRA, INC.
11                                            **PLAINTIFFS' MEMORANDUM OF POINTS
                     Plaintiffs,              AND AUTHORITIES IN OPPOSITION TO
12                                            DEFENDANT'S MOTION FOR
    v.                                        ATTORNEY'S FEES**
13
    VOLCANO CORPORATION, a Delaware           DATE:        May 28, 2014
14  corporation; and DOES 1-10,               TIME:        2:00 pm
                                              JUDGE:       Honorable William H. Orrick
15                   Defendant.               CTRM:        2

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

2

I.     INTRODUCTION .............................................................................................1

II.    VOLCANO'S MOTION IS MOOT BECAUSE VOLCANO CANNOT
       RECOVER AN ATTORNEY'S FEE AWARD FROM A DEPLETED ESCROW
       FUND OR UNPAID MILESTONES ..................................................................1

III.   VOLCANO IS ESTOPPED FROM ARGUING THAT PLAINTIFFS ARE
       PARTIES TO THE MERGER AGREEMENT IN THEIR PERSONAL
       CAPACITIES.....................................................................................................3

IV.    VOLCANO'S REQUEST FOR ATTORNEY'S FEES LACKS ADEQUATE
       SUPPORT ..........................................................................................................5

       A.    Volcano's Fee Request Is Not Sufficiently Detailed ...............................5

       B.    Due Process Required Volcano to Provide Detailed Time Entries and
             Records...................................................................................................7

       C.    Volcano Did Not Establish Prevailing Market Rates for Similar Cases in
             the Northern District ..............................................................................8

V.     VOLCANO'S REQUEST FOR "COSTS" LACKS ADEQUATE SUPPORT ...............10

       A.    Volcano Did Not Meet Its Burden of Establishing that Its "Costs" Are
             Recoverable and Reasonable .................................................................10

             1.    Delaware Law Does Not Permit Volcano to Recover the "Costs" It
                   Seeks ...........................................................................................10

             2.    Federal Law Does Not Permit Volcano to Recover the "Costs" It
                   Seeks ...........................................................................................12

       B.    Even If Some "Costs" Were Recoverable, Volcano Did Not Provide
             Sufficient Detail to Enable the Court to Determine that the Costs Were
             Reasonable and Necessary in This Case .................................................14

VI.    VOLCANO'S CLAIM FOR POST-JUDGMENT INTEREST IS NOT
       RECOVERABLE...............................................................................................15

VII.   THE COURT SHOULD DEFER ITS RULING ON VOLCANO'S MOTION ...............15

VIII.  CONCLUSION ................................................................................................16

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aceves v. Allstate Ins. Co.*,
  68 F.3d 1160 (9th Cir. 1995) ................................................................................. 13

*Arbitrium (Cayman Islands) Handels AG v. Johnston*,
  705 A.2d 225 (Del. Ch. 1997) *aff'd*, 720 A.2d 542 (Del. 1998) ......................... 6, 7

*Barnett v. Braxton*,
  C.A. 01C-02-183 RRC, 2003 WL 21976411 (Del. Super. Aug. 15, 2003) ........... 14

*BoomerangIt, Inc. v. ID Armor, Inc.*,
  5:12-CV-0920 EJD, 2012 WL 2368466 (N.D. Cal. June 21, 2012) ....................... 7

*Carnes v. Zamani*,
  488 F.3d 1057 (9th Cir. 2007) ................................................................................. 6

*CBT Flint Partners, LLC v. Return Path, Inc.*,
  737 F.3d 1320 (Fed. Cir. 2013) ............................................................................. 13

*Comrie v. Enterasys Networks, Inc.*,
  CIV.A.19254, 2004 WL 936505 (Del. Ch. Apr. 27, 2004) ............................. 10, 12

*Cooke v. Murphy*,
  CV K11C-07-023 WLW, 2013 WL 6916941 (Del. Super. Nov. 26, 2013) ........... 12

*Danenberg v. Fitracks, Inc.*,
  58 A.3d 991 (Del. Ch. 2012) ................................................................................ 6, 7

*De Amaral v. Goldsmith & Hull*,
  12-CV-03580-WHO, 2014 WL 1309954 (N.D. Cal. Apr. 1, 2014) ............... 8, 9, 10

*FGC Holdings Ltd. v. Teltronics, Inc.*,
  CIV.A. 883-N, 2007 WL 241384 (Del. Ch. Jan. 22, 2007) ............................. 11, 12

*Gaffin v. Teledyne, Inc.*,
  CIV. A. 5786, 1993 WL 271443 (Del. Ch. July 13, 1993) .................................... 12

*Goldman v. Gagnard*,
  11-CV-03028 LHK, 2013 WL 4064878 (N.D. Cal. Aug. 6, 2013) ....................... 10

*Graves v. Arpaio*,
  623 F.3d 1043 (9th Cir. 2010) ................................................................................. 7

*Great Am. Indem. Co. v. State to Use of Mills*,
  32 Del. Ch. 562, 88 A.2d 426 (1952) .................................................................... 11

ii

*Gutierrez v. 78th Judicial Dist. Court*,
   1:07-CV-1268, 2009 WL 1507415 (W.D. Mich. May 29, 2009) ............................................ 7

*Kalitta Air L.L.C. v. Cent. Texas Airborne Sys. Inc.*,
   741 F.3d 955 (9th Cir. 2013) ...................................................................................... 13, 15

*Kennedy v. Wells Fargo Bank, N.A.*,
   C 11-0675 MMC, 2012 WL 4343295 (N.D. Cal. Sept. 20, 2012) ........................................ 8

*Kona Enterprises, Inc. v. Estate of Bishop ex rel. Peters*,
   243 Fed. App'x. 274 (9th Cir. 2007) .................................................................................. 15

*Masalosalo by Masalosalo v. Stonewall Ins. Co.*,
   718 F.2d 955 (9th Cir. 1983) ............................................................................................. 15

*Miles, Inc. v. Cookson Am., Inc.*,
   CIV. A. 12,310, 1995 WL 214397 (Del. Mar. 24, 1995) .................................................... 11

*Nadarajah v. Holder*,
   569 F.3d 906 (9th Cir. 2009) ............................................................................................... 9

*Parkinson v. Hyundai Motor Am.*,
   796 F. Supp. 2d 1160 (C.D. Cal. 2010) ................................................................................ 7

*Pickern v. Pier 1 Imports (U.S.), Inc.*,
   457 F.3d 963 (9th Cir. 2006) ............................................................................................... 9

*Plantronics, Inc. v. Aliph, Inc.*,
   C 09-01714 WHA LB, 2012 WL 6761576 (N.D. Cal. Oct. 23, 2012) ................................. 13

*Rissetto v. Plumbers & Steamfitters Local 343*,
   94 F.3d 597 (9th Cir. 1996) ................................................................................................. 4

*Robinson v. Delgado*,
   1:02-CV-01538-NJV, 2011 WL 672628 (N.D. Cal. Feb. 17, 2011) ................................. 7, 15

*Santiago v. Equable Ascent Fin.*,
   C 11-3158 CRB, 2013 WL 3498079 (N.D. Cal. July 12, 2013) ........................................ 6, 7

*Sea Coast Foods, Inc. v. Lu-Mar Lobster & Shrimp, Inc.*,
   260 F.3d 1054 (9th Cir. 2001) ........................................................................................... 13

*Stonebrae, L.P. v. Toll Bros., Inc.*,
   C-08-0221-EMC, 2011 WL 1334444 (N.D. Cal. Apr. 7, 2011) ................................. 8, 10, 11

*Tate v. Univ. Med. Ctr. of S. Nevada*,
   606 F.3d 631 (9th Cir. 2010) ............................................................................................... 3

*In re U.S. Tr.*,
   32 F.3d 1370 (9th Cir. 1994) ............................................................................................. 14

iii

*United States v. Alexander*,
    106 F.3d 874 (9th Cir. 1997)..................................................................................... 4

**Statutes, Rules & Regulations**

10 Delaware Code
    § 8906.............................................................................................................. 10, 12

Delaware Superior Civil Rule
    Rule 54(d) ........................................................................................................... 10
    Rule 54(e)............................................................................................................ 11

iv

## I.     **INTRODUCTION**

The Court should summarily deny Volcano's motion for attorney's fees as moot.  While the Agreement entitles the prevailing party to this action to recover its reasonable attorneys' fees, the Agreement is equally clear that if Volcano is the prevailing party, it can only recover such an award either from an escrow fund set up at the time of the merger, or as a set-off against any unpaid Milestone Merger Consideration.  Because the escrow fund is entirely depleted, and because the Court has determined that Volcano is not liable for any unpaid Milestone Merger Consideration, Volcano cannot recover its attorney's fees from either of the two sources to which it agreed to limit itself.  Its request for such an award is therefore moot, and the Court should reject it accordingly.

As well, Volcano is estopped from holding either Christopher Banas or Paul Castella personally liable for payment of attorney's fees. Because this Court granted Volcano's motion to dismiss the claims of these two Shareholders' Representatives when they sued Volcano as individuals – specifically finding that they were not parties to the Agreement and therefore lacked standing to sue Volcano in their personal capacities – the Court cannot order them to personally pay an attorney's fee award to Volcano.

Volcano's motion should also fail because Volcano did not come close to establishing that the nearly $5,000,000 award it seeks is comprised of reasonable and recoverable amounts under well-established law, relying instead on patently inadequate support for the significant sum it seeks.  And, in any event, because the judgment triggering Volcano's motion is now on appeal to the Ninth Circuit, judicial efficiency suggests the Court should defer awarding attorney's fees until the appeal is concluded.

## II.     **VOLCANO'S MOTION IS MOOT BECAUSE VOLCANO CANNOT RECOVER AN ATTORNEY'S FEE AWARD FROM A DEPLETED ESCROW FUND OR UNPAID MILESTONES**

The parties drafted the plain language of the Agreement to account for the disproportionate size and power of Volcano.  While the Agreement provides Plaintiffs with certain special protections to shield them from future liability to Volcano, those protections are not mutual: the parties specifically agreed in Section 10.9 to limit Volcano's ability to recover

1

anything from the former CardioSpectra Shareholders.

Section 10.9 states:

**10.9 Exclusive Remedy**.  From and after the Closing Date and except as expressly provided in Section 13.11, the parties hereto acknowledge and agree that the indemnification provisions of this Section 10 shall be the sole and exclusive remedy of [Volcano] with respect to any and all claims that [it] may have against [any of the CardioSpectra Shareholders] based upon, arising out of, or otherwise in respect of this Agreement (whether such claims arise at law or in equity, in contract or tort, or arising under or based upon any federal, state, local or foreign statute, law, rule regulation or otherwise). . .[1]

Section 10.2(c) states:

[If Volcano] shall suffer any Damages for which [it] is entitled to indemnification under this Section 10, [Volcano] shall be entitled to recover such Damages by, first, obtaining the amount of Escrow Funds equal in value to the aggregate amount of such Damages, and, second, once no Escrow Funds remain in the Escrow Fund, by setting off the amount of such Damages (or the remaining amount of such Damages, after giving effect to any amounts obtained for such Damages from the Escrow Fund) against the Milestone Merger Consideration remaining to be paid in accordance with Section 10.7 . . . **[Volcano's] rights to indemnification under Section 10 with respect to the [CardioSpectra Shareholders] shall be limited to recovery against the Escrow Fund and the Milestone Merger Consideration, in each case to the extent not yet delivered to the [CardioSpectra Shareholders] . . .**

Kitner Decl., Ex. A (Agreement at 61) (emphasis added).

"Damages" as used in § 10.2(c) is defined extremely broadly, and includes "any loss, damage, injury, liability, claim, demand, settlement, judgment, award, fine, penalty, Tax, fee (including reasonable attorneys' fees), charge, cost (including costs of investigation) or expense of any nature . . ." Kitner Decl., Ex. A (Agreement at A-7).  It therefore indisputably includes the award that Volcano seeks in its motion.

"Escrow Fund" as used in § 10.2(c) refers to a particular $2,500,000 amount that was held in escrow for a year after the Merger.  *Id.* (Agreement at 14-15 and A-8).  It is undisputed that the Escrow Fund was distributed its entirety in accordance with § 2.9 of the Agreement, and that the

---

[1]  The term "Parent Indemnitee" appears in the Agreement in place of "[Volcano]"; it is defined as "Volcano Corporation."  Kitner Decl., Ex. A (Agreement at 66 and A-13).  Likewise, the terms "Company Shareholder" and "Terminating Warrantholders" appear in the Agreement in place of "[CardioSpectra Shareholders]"; these terms are defined as holders of CardioSpectra stock just prior to the Merger, and thus include Plaintiffs.  *Id*. (Agreement at 4-5, 66, A-6, and A-16).

2

balance of the Escrow Fund is now $0.  *Id.*

"Milestone Merger Consideration" as used in § 10.2(c) is defined in § 2.5 as $38,000,000 – of which $27,000,000 is indisputably "not yet delivered" under § 10.2(c) and, therefore, retained by Volcano as a result of the Court's judgment.  *Id.* (Agreement at 6-7 and A-12).

Moreover, there are only three specific exceptions to these indemnification provisions, and a claim for payment of an attorney's fee award is not among them.[2]  Therefore, Section 10 is Volcano's "sole and exclusive" remedy for its claim for attorney's fees, reflecting the parties' agreement never to hold Plaintiffs responsible for an out-of-pocket payment to Volcano for an award of attorney's fees.

Accordingly, Volcano's motion is moot.  Under the Agreement, Volcano cannot recover payment of an award of attorney's fees from any source other than the Escrow Fund or as a set-off against unpaid Milestone Merger Consideration.  Therefore, this Court's order would not result in payment to Volcano, and there is no "present controversy as to which effective relief can be granted."  *Tate v. Univ. Med. Ctr. of S. Nevada*, 606 F.3d 631, 634 (9th Cir. 2010) (noting a claim is moot if the Court cannot grant effective relief).

### III.   VOLCANO IS ESTOPPED FROM ARGUING THAT PLAINTIFFS ARE PARTIES TO THE MERGER AGREEMENT IN THEIR PERSONAL CAPACITIES

Volcano asks the Court to hold Mr. Banas and Dr. Castella *personally* and *individually* responsible for its attorney's fees and costs.  *See* Dkt. 106-1.  This squarely contradicts Volcano's earlier position, in which it argued:

> It is clear from the face of the Agreement that only Volcano, Corazon Acquisition, Inc., CardioSpectra, and Christopher E. Banas and Paul Castella, ***solely in their capacities as Shareholders' Representatives***, were parties to the Agreement. Mr. Banas does not sue in his capacity as a Shareholders' Representative, the capacity in which he is a party to the Agreement. Rather, he sues as an individual, and makes no allegations of a capacity in which he asserts a right under the

---

[2]   The first exception does not apply.  *Id.* (Agreement at 66 and 74).  It merely states that the rights and remedies of the parties are cumulative and that the parties are entitled to specific performance as well as any other remedy that may be available.  Section 13.11 does not enlarge Volcano's rights under the Agreement or otherwise give it additional remedies, nor does it reference or include the prevailing party provision contained in § 13.4, so the second exception does not apply.  *Id.*  And Volcano did not allege actual fraud or intentional misrepresentation against any CardioSpectra Shareholder, so the third exception also does not apply.  *Id.*

3

Agreement.  FAC at ¶ 9(a).  None of the other named Plaintiffs allege that they are parties to the Agreement either, or that there is any other capacity in which they may enforce the terms of the Agreement.  Notably, Paul Castella does not appear as a Plaintiff at all, either as an individual, or in his capacity of Shareholder Representative. Rather, certain family limited partnerships ("FLPs") are named as Plaintiffs, including one bearing Mr. Castella's name – "Paul Castella, FLP" – and another that ostensibly includes the name of a family member – "Kelly Castella, FLP."  FAC at 9(c)-(d).  *None of the Plaintiffs allege party status under the Agreement, nor do any assert allegations of a capacity in which it may rightfully claim the benefits of the Agreement*.

Dkt. 13 at 13-14 (emphasis added).  *See also id.* at 14 (arguing that Mr. Banas and Dr. Castella lack "privity" and, therefore lack "standing" to sue in their individual capacities) (citing, *e.g., Gunn v. Select Portfolio Servicing, Inc.*, 23 A.3d 865 (Del. Supr. 2011)).

At oral argument on its motion to dismiss, Volcano again emphasized that Mr. Banas and Dr. Castella could not sue Volcano personally or individually because "the parties entitled to breach of contract are the parties to that contract. No more, no less."  Dkt. 32 at 8.

Relying on Volcano's argument, this Court agreed, and stated the following in its Order dismissing the claims of Mr. Banas and Dr. Castella in their individual capacities:

Only Volcano, Corazon Acquisition, Inc., CardioSpectra, and Christopher E. Banas and Paul Castella, in their capacities as Shareholders' Representatives, were parties to the Agreement.  Neither Banas nor Castella sue in their capacity as Shareholders' Representatives.

Dkt. 31, at 3 n.2.

Volcano is therefore bound by its prior argument and the Court's finding and cannot now argue that Mr. Banas and Dr. Castella are personally or individually liable.  *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600, 605 (9th Cir. 1996) (holding that federal principles of judicial estoppel apply in federal court with state law claim, and that successful party cannot take inconsistent position later in same case); *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) (explaining that law of the case doctrine generally precludes a court from reconsidering an issue that it already decided).  As Volcano established, if Mr. Banas and Dr. Castella cannot individually or personally "claim the benefits" of the Agreement, they cannot be made to bear the burdens of the Agreement individually or personally, and the Court should reject Volcano's attempt to hold Mr. Banas or Dr. Castella personally or individually liable.

4

Additionally, Section 10.9 states:

> **no [CardioSpectra Shareholder] shall have any liability of any nature** to [Volcano or CardioSpectra] with respect to the breach by [CardioSpectra] of any representation, warranty, covenant or agreement contained in this Agreement or **any other matter relating to the Merger** or the other transactions contemplated by this Agreement (except to the extent that any such [CardioSpectra Shareholder] is party to a Related Agreement . . . and then to the extent of the liabilities arising from such Related Agreement).

Kitner Decl., Ex. A (Agreement at 66) (emphasis added).   This language expressly shields Plaintiffs from "liability of any nature" to Volcano *or* CardioSpectra with respect to "any other matter relating to the Merger or the other transactions contemplated by the Agreement," and evinces a clear intent to protect individual shareholders from any personal obligation to either entity for anything related to the Merger.   Thus, even if Volcano was not estopped from looking to payment from Mr. Banas and Dr. Castella, the Agreement itself prevents Volcano from recovering anything from them.

## IV.    VOLCANO'S REQUEST FOR ATTORNEY'S FEES LACKS ADEQUATE SUPPORT

Volcano asks for an award of attorney's fees that would approve billing rates for its lawyers as high as $1,095 per hour.   But Volcano's lawyers do not provide adequate support for why its rates are reasonable, nor do they furnish any specific detail of the work they performed, nor do they establish why it was appropriate for them to spend all of the time on the work for which they seek reimbursement.   Thus, based on the record, the Court cannot answer the most basic questions in connection with its reasonableness inquiry.   Volcano's failure to provide this support also deprived Plaintiffs of due process to challenge its fee request.   Finally, Volcano relies on the declaration of a previously undisclosed expert, who – even if he had been disclosed – is not qualified to opine on (and, thus, fails to establish) the prevailing market rates charged by attorneys in this judicial District for similar cases.   Accordingly, the Court should reject Volcano's fee request.

### A.    Volcano's Fee Request Is Not Sufficiently Detailed

"In a diversity case, the law of the state in which the district court sits determines whether a party is entitled to attorney fees, and the procedure for requesting an award of attorney fees is

5

1   governed by federal law." *Carnes v. Zamani*, 488 F.3d 1057, 1059 (9th Cir. 2007).  Under either

2   Delaware or federal law, Volcano bears the burden of establishing that the hours expended

3   litigating the case were reasonable, and thus must provide detailed time records documenting the

4   tasks completed and the amount of time spent.  *See, e.g., Arbitrium (Cayman Islands) Handels*

5   *AG v. Johnston*, 705 A.2d 225, 237 (Del. Ch. 1997) *aff'd*, 720 A.2d 542 (Del. 1998); *Santiago v.*

6   *Equable Ascent Fin.*, C 11-3158 CRB, 2013 WL 3498079, at *5 (N.D. Cal. July 12, 2013)

7   ("Courts in the Northern District of California have been unable to determine whether billing

8   entries were reasonable because the entries description only consisted of 'conferences,'

9   'telephone calls,' or 'review of documents' without describing the subject of the call or

10  correspondence.") (citations omitted); Local Rule 54-5(b) (discussed in Volcano's Motion at 6).

11        To avoid this burden, Volcano cites *Danenberg v. Fitracks, Inc.*, 58 A.3d 991 (Del. Ch.

12  2012), which fails to address the procedure for requesting attorney's fees under federal law, *see*

13  *Carnes*, 488 F.3d at 1059, or Local Rule 54-5(b) (which Volcano specifically relies on).  *See*

14  Dkt. 106 at 6 (citing Danenberg ostensibly to support application of Local Rule 54-5(b)).[3]  But

15  Danenberg did not apply Local Rule 54-5(b), and the Delaware Court of Chancery specifically

16  found that the plaintiff did not meet his burden by submitting bills without hourly rates and "the

17  value of particular time entries."  58 A.3d at 994.  Rather, the court held that the plaintiff needed

18  to "provide more detailed statements that would **identify for each entry the date, timekeeper's**

19  **name, hourly rate, services performed, and the amount billed**."  *Id.* at 995 (emphasis added).

20  And requests for advancement needed to include, among other things:

21        A detailed invoice identifying the fees and expenses for which advancement is
        requested.  The invoice shall provide for each time entry the date, timekeeper,
22        billing rate, task description, time incurred, and amount charged.  The invoice shall
        identify with detail for each expense the date of the charge, its nature, and the
23        amount incurred.

24  *Id.* at 1003.

25        Therefore, Volcano – under its authority and Plaintiffs' – should have provided daily time

26  entry sheets with reasonable detail.  Instead, Volcano submitted broad categories of vague entries

_____

[3]  Contrary to Volcano's suggestion, *see* Dkt. 106 at 6, Local Rule 54-5(b) does not identify what
27  is *sufficient* for a fee application; instead, it only states what is minimally *necessary*.  And
28  Volcano, as explained below, did not meet that burden.

6

broken down only by month. For example, Volcano asks for $91,545 in fees for the following work in May 2013:

> Case strategy regarding expert witnesses. Document review and production. Meet and confer with plaintiffs' counsel regarding deposition and mediation scheduling. Witness interviews. Begin deposition preparation.

Dkt. 108 at 23.

This description is inadequate. *See Arbitrium*, 705 A.2d at 237; *Danenberg*, 58 A.3d at 994, 1003; *Santiago*, 2013 WL 3498079, at *5-*6. Volcano provides no basis for the Court to determine what would be reasonable under the circumstances: it does not identify any case-specific task, the hours billed for each task, the timekeepers, or the billing rate. Volcano could (and should) have provided reasonably detailed information.[4] *See, e.g., Robinson v. Delgado*, 1:02-CV-01538-NJV, 2011 WL 672628, at *6 (N.D. Cal. Feb. 17, 2011) (Cooley submitted 150 pages of "billing records" and identified "line-by-line deductions" to time entries for, among other things, "getting up to speed, duplicative tasks, and general research on trial practice and procedure.").[5]

### B. Due Process Required Volcano to Provide Detailed Time Entries and Records

Additionally, an award of fees would not comply with due process because Volcano did not provide sufficient time and billing information. *See Parkinson v. Hyundai Motor Am.*, 796

---

[4] The Court should reject any attempt by Volcano to submit new evidence in its Reply as too late and thus waived. *See Graves v. Arpaio*, 623 F.3d 1043, 1051 n.3 (9th Cir. 2010) (argument waived where moving party did not include it in opening brief); *BoomerangIt, Inc. v. ID Armor, Inc.*, 5:12-CV-0920 EJD, 2012 WL 2368466, at *4, n.1 (N.D. Cal. June 21, 2012) ("In its reply brief, [movant] has submitted new evidence. The court does not consider this evidence because it was first submitted in a reply brief."); *see also Gutierrez v. 78th Judicial Dist. Court*, 1:07-CV-1268, 2009 WL 1507415 (W.D. Mich. May 29, 2009) ("The opposing party should not have to incur the cost and effort of additional filings – a motion for leave to file a sur-reply, and the sur-reply itself – because the movants deliberately, or more likely inadvertently, held back part of their case.").

[5] For example, a Cooley time entry in *Delgado* for February 11, 2008, reflects 1.70 hours worked at a rate of $570 per hour and provides this detailed description:

> Teleconference with E. Dominguez re providing copies of all relevant documents to A. Robinson; review and revise letter to A. Robinson re status of case and documents recently filed; research issues re and draft amended notice of deposition of cdcr and multiple e-mails with E. Dominguez re same; review amended notice of deposition of cdcr and e-mails from E. Dominguez forwarding same to attorney general.

Kitner Decl., Ex. B at 30. In contrast, the descriptions Volcano provides with its motion are so conclusory as to be practically meaningless. Dkt. 108 at 22-25.

7

F. Supp. 2d 1160, 1167 (C.D. Cal. 2010) ("Even if plaintiffs submit their invoices and billing records to the Court in camera, this will not accord Hyundai its due process right to examine the bills and see what was charged and why. Plaintiffs' failure to provide these records is a tacit acknowledgment that their fee request is inflated and cannot withstand scrutiny.").[6]

Importantly, Plaintiffs' counsel asked Volcano's counsel to provide detailed billing information that ostensibly supports Volcano's request for attorney's fees, but Volcano's counsel refused to furnish it.  Kitner Decl. at ¶¶ 4-6.  This deprived Plaintiffs of a fair opportunity to assess Volcano's claim.  Because Plaintiffs had no opportunity to review Volcano's detailed time entries and expense records, including "sufficient detail as to the tasks performed by each timekeeper on a daily basis," *see Stonebrae, L.P. v. Toll Bros., Inc.*, C-08-0221-EMC, 2011 WL 1334444, at *8 (N.D. Cal. Apr. 7, 2011), the Court should reject Volcano's motion on this basis alone.

### C.  Volcano Did Not Establish Prevailing Market Rates for Similar Cases in the Northern District

While Volcano has the burden to establish prevailing market rates for similar cases, its fee request is not supported by any competent evidence of prevailing market rates for similar cases in the Northern District.  *De Amaral v. Goldsmith & Hull*, 12-CV-03580-WHO, 2014 WL 1309954, at *3 (N.D. Cal. Apr. 1, 2014).[7]  Volcano relies exclusively on the declaration of a previously-undisclosed expert who lacks appropriate qualifications, and it therefore fails to carry its burden.

Volcano relies solely on the declaration of Chuck Chandler to establish prevailing market rates.[8]  Volcano had until July 31, 2013, to designate Mr. Chandler as an expert, but it did not do

---

[6]  Based on the record, Plaintiffs cannot even determine if Volcano actually paid its bills in full to Cooley.  But even if Volcano paid Cooley's bills in full, this is not by itself evidence that the rates are reasonable.  *Stonebrae, L.P. v. Toll Bros., Inc.*, C-08-0221-EMC, 2011 WL 1334444, at *6 (N.D. Cal. Apr. 7, 2011).

[7]  Even where state law is the basis for attorney's fees, courts in the Northern District examine reasonableness of such fees and supporting documentation under federal law.  *See, e.g., Kennedy v. Wells Fargo Bank, N.A.*, C 11-0675 MMC, 2012 WL 4343295, at *3 (N.D. Cal. Sept. 20, 2012).

[8]  Volcano cannot rely on the conclusory declaration of Cooley attorney Mark Lambert to establish the reasonableness of its rates.  Mr. Lambert states "I understand that Cooley's regular hourly rates are comparable to the hourly rates charged by other leading firms with offices in California." Dkt. 108 at 29.  But Mr. Lambert cites only to "reports from law firm consultants" – consultants he does not identify – and to Mr. Chandler's declaration. Mr. Lambert thus fails to provide an adequate foundation for any opinion about the reasonableness of Cooley's hourly rates.  *Id.*

8

so. By agreement dated September 4, 2013, the parties stipulated that Volcano, having failed to designate an attorney's fee expert, could only designate a "rebuttal" expert on attorney's fees. Kitner Decl., Ex. F. But Mr. Chandler is not a rebuttal witness, as his testimony is offered solely in support of Volcano's fee request. On this basis alone, the Court should reject Mr. Chandler's testimony.[9]

Even if Volcano had properly designated Mr. Chandler, he is not qualified to opine as to prevailing market rates in the Northern District of California, or as to the prevailing market rates for defending claims for breach of contract, breach of fiduciary duty, and breach of the implied covenant and good faith and fair dealing. This is because he is not even an attorney. Kitner Decl., Ex. at ¶ 7. Thus, he is not admitted to the California bar (or any other bar), and has never practiced law in California (or anywhere else). *Id.* Crucially, he does not consider any particular aspect of this case. Nor does he offer any testimony about the facts and results of the case, including the Agreement, the underlying claims, or whether Cooley was efficient or reasonable in its billing practices. Mr. Chandler fails to draw the required comparison to "similar cases in this jurisdiction" and the rates charged, and therefore does not offer any admissible testimony the Court can properly consider. *De Amaral*, 2014 WL 1309954, at *3.

As well, the database Mr. Chandler cites does not establish prevailing market rates for similar cases; at most, it reflects "billed" attorney rates, but does not show what was actually collected by any particular firm, paid by any particular client, or authorized by any particular Court. *Compare Nadarajah v. Holder*, 569 F.3d 906, 917 (9th Cir. 2009) (confirming fee award where party submitted court orders from similar cases that listed authorized award). It does not identify the facts of this case, any other case in which the attorneys listed in the database sought fees, or the name (or type) of client. And these distinctions are critical: the same firm in the Northern District of California will, for example, collect different rates from a Fortune 500

---

[9] Mr. Chandler's testimony is also improper because as an undisclosed expert witness, he cannot testify at trial or through a declaration. *Pickern v. Pier 1 Imports (U.S.), Inc*., 457 F.3d 963, 969 (9th Cir. 2006) ("It is not an abuse of discretion to exclude a party's expert testimony when that party failed to disclose the expert report by the scheduling deadline and that party reasonably could have anticipated the necessity of the witness at the time of the deadline."). Accordingly, Plaintiffs object and request that the Court strike Mr. Chandler's testimony and database. L.R. 7-3(a).

company based in New York than it does from an insurance company located in Bakersfield.

Because Mr. Chandler offers no specific analysis of this case or any other and Volcano relies only

on his declaration to support the reasonability of its lawyers' rates, Volcano's claim for attorney's

fees fails for lack of support.  *See De Amaral*, 2014 WL 1309954, at *3, *6-*7; *Stonebrae, L.P.*,

2011 WL 1334444, at *7-*8.

# V.      **VOLCANO'S REQUEST FOR "COSTS" LACKS ADEQUATE SUPPORT**

Volcano concedes that $1,023,995.99 of the award it seeks is attributable only to "costs."

Dkt. 108 at 28 ("Volcano seeks to recover $1,023,995.99 in costs.").  Thus, the only issue is

whether the "costs" Volcano seeks are proper under Delaware or federal law.

### A.      **Volcano Did Not Meet Its Burden of Establishing that Its "Costs" Are Recoverable and Reasonable**

Volcano provided no authority that its "expert costs," "vendor costs," and "standard

cost[s]" are recoverable under the Agreement. Dkt. 106 at 9-10.  Under either Delaware or federal

law, the term "cost" does not include what Volcano requests.[10]

#### 1.      **Delaware Law Does Not Permit Volcano to Recover the "Costs" It Seeks**

As noted, Volcano asks for "expert," "vendor," and "standard" costs.  Under Delaware

Rule 54(d) and 10 Del. C. § 8906, "costs" do not include expert fees related to depositions,

consultation, or case development and research.  *Comrie v. Enterasys Networks, Inc.*,

CIV.A.19254, 2004 WL 936505 (Del. Ch. Apr. 27, 2004) (court examined prevailing party

provision and noted that fees incurred in connection with the experts' time spent (1) consulting

with or advising a party's attorney; (2) preparing for testimony in court; and (3) preparing for and

---

[10]   Volcano assumes that, in a diversity case, federal courts use state law to address the
reasonableness of "costs."  Dkt. 106 at 4-5.  The Ninth Circuit authority Volcano cites does not
support this proposition. *See* Dkt. 106 at 4 (citing *In re Baroff*, 105 F.3d 439, 441 (9th Cir. 1997)
and *Mangold v. California Pub. Utilities Com'n*, 67 F.3d 1470, 1478 (9th Cir. 1995)).  Northern
District authority is contrary to Volcano's assumption. *See Goldman v. Gagnard*, 11-CV-03028
LHK, 2013 WL 4064878 (N.D. Cal. Aug. 6, 2013) (noting that in a diversity case based on award
of attorney's fees under state contract law, the court would consider federal statutes governing
post-judgment interests and costs).  Regardless, under either Delaware or federal law, Volcano
has not met its burden regarding "costs."

1   providing deposition testimony are not recoverable "costs"); *Miles, Inc. v. Cookson Am., Inc.*,

2   CIV. A. 12,310, 1995 WL 214397 (Del. Mar. 24, 1995).  Rather, "costs" only include time spent

3   testifying in court, and associated travel or waiting time.  *Id.*  No such testimony or travel

4   occurred here, and Volcano does not allege anything to the contrary.  Thus, the Court should

5   exclude $289,400.36 in expert fees ($189,110.36 charged by Dr. Cockburn's research team,

6   $62,475 charged by Dr. Cockburn, and $46,815 charged by Ms. Domecus).  Dkt. 108 at 16-17.[11]

7       For "vendor" costs, Volcano asks for contract attorney's fees.  The Delaware Supreme

8   Court, however, has long held that a party may not recover attorney's fees as "costs."  *Great Am.*

9   *Indem. Co. v. State to Use of Mills*, 32 Del. Ch. 562, 567, 88 A.2d 426, 428 (1952) ("It is the

10  general rule that a court may not order the payment of attorneys' fees as a part of the costs to be

11  paid by the losing party unless the payment of such fees is authorized by some provision of a

12  statute or of the bond sued upon.").  Here, the Agreement distinguishes "costs" from "attorney's

13  fees."  Thus, Volcano cannot recover as "costs" the attorney's fees charged by its contract

14  attorneys.  The Court should therefore exclude the $282,997.00 in *fees* that Volcano is trying to

15  recover as "costs."[12]

16      Nor does Delaware law permit Volcano to recover other "standard costs."  *See FGC*

17  *Holdings Ltd. v. Teltronics, Inc.*, CIV.A. 883-N, 2007 WL 241384 (Del. Ch. Jan. 22, 2007).  In

18  *FGC Holdings*, the court explained that "'costs' are not identical to 'expenses'; our courts have

19  defined costs as those 'expenses necessarily incurred in the assertion of [a] right in court,' such as

20  court filing fees, fees associated with service of process or costs covered by statute.  Thus, items

21  _____

22  [11]  Delaware law also precludes "unnecessary" costs.  *See, e.g.*, Del. Super. Ct. R. 54(e).  Here, Dr. Cockburn's testimony had no bearing whatsoever on the case.  Volcano never cited his testimony once in its summary judgment briefing or otherwise, so the $62,475 charged by Dr. Cockburn and $189,110.36 charged by his research team are unnecessary, and therefore not recoverable for this additional reason.

23

24

25  [12]  The Court should not otherwise allow Volcano to recover fees for the contract attorneys because Volcano does not seek to recover them as "fees."  Notwithstanding that, Volcano does not establish the prevailing market rates for these attorneys, the time they spent on this litigation, or the identity or qualifications of the contract attorneys.  Without this information, there is no basis to award contract attorney's fees.  *Stonebrae*, *L.P.* 2011 WL 1334444, at *6 (applicant did not provide timekeeper CVs and thus "failed to meet its burden to present adequate records"; court excluded hours for those timekeepers).

26

27

28

11

such as computerized legal research, transcripts, or photocopying are not recoverable." *Id.* (citations omitted and bracket in original). Accordingly, the Court should exclude Volcano's research costs ($30,306.55), photocopying costs ($56,492.39), and deposition costs ($63,823.13).

In addition, Volcano never established that the deposition transcripts and recordings were introduced into evidence. *Compare Cooke v. Murphy*, CV K11C-07-023 WLW, 2013 WL 6916941, at *5 (Del. Super. Nov. 26, 2013) (noting that the costs of either a deposition recording or transcript – not both – might be recovered if introduced into evidence). In addition, the Court should reject all of Volcano's discovery costs for The Oliver Group ($19,544.45) and TransPerfect ($203,631.28) because Volcano does not provide any authority that they are "costs" under Delaware law.[13] In fact, these supposed "costs" plainly fall outside any Delaware statute, and are not recoverable. *See, e.g., Comrie*, CIV.A.19254, 2004 WL 936505, at *4-*5 (Prevailing party "cannot recover for fees paid to their expert witness or the litigation support firm utilized by him that fall outside the scope of [10 Del. C. § 8906]."). For the same reasons, the Court should reject Volcano's $6,275.00 mediation fee.

The Court should also exclude all of Volcano's Court Fees ($890.05) because it is not clear to what extent Volcano is attempting to recover transcript fees (which are not recoverable here) rather than "call fees" or "filing fees" (even assuming those fees are recoverable). Likewise, under Delaware law, the Court should also reject Volcano's "cost" request for "Federal Express" ($3,716.17), "Messenger Service" ($1,108.91), "Postage" ($21.06), and "Telephone" ($820.76). *Gaffin v. Teledyne, Inc.*, CIV. A. 5786, 1993 WL 271443 (Del. Ch. July 13, 1993) ("Gaffin also seeks reimbursement for approximately $35,000 in photocopying, travel and express mail and courier expenses. Such expenses also are not considered costs and will not be allowed.").

## 2.     Federal Law Does Not Permit Volcano to Recover the "Costs" It Seeks

Under the Northern District Local Rules, Volcano cannot recover its "expert" costs of

---

[13]   Volcano, without any case-specific explanation, states that TransPerfect collected, processed, and hosted documents in a database, which required a "Hosting Fee," "User Access Fee," a "Prod. Processing Fee," a "Data Processing Fee," and "Labor Costs," Dkt. 108 at 8, and that The Oliver Group collected "potentially" responsive documents and did a "forensic analysis." Dkt. 108 at 7-8.

12

$298,400.36.  L.R. 54-3(e) (expressly excluding "fees for expert witnesses").  Even if that Rule did not apply, the most Volcano could recover is $40 for each day that its expert testified.  *See Aceves v. Allstate Ins. Co.*, 68 F.3d 1160, 1167 (9th Cir. 1995) ("A federal court may not exceed [$40 witness fee per day] without explicit statutory or contractual authorization.").  The Local Rules also prohibit Volcano from recovering its travel costs for depositions.  L.R. 54-3(c)(2) ("The expenses of counsel for attending depositions are not allowable.").

Separate from these exclusions, the term "costs" is narrowly limited to six items:

(1)  Fees of the clerk and marshal;

(2)  Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3)  Fees and disbursements for printing and witnesses;

(4)  Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5)  Docket fees under § 1923 of this title;

(6)  Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services . . .

*Kalitta Air L.L.C. v. Cent. Texas Airborne Sys. Inc.*, 741 F.3d 955, 957-59 (9th Cir. 2013) (recognizing Supreme Court authority that held taxable costs are limited to relatively minor, incidental expenses and that such costs are almost always less than a litigant's total expenses in connection with a lawsuit.).  Thus, Volcano's remaining "standard" or "vendor" costs are not recoverable unless they fall within one of the six specific and narrowly read "cost" categories.  In fact, Volcano's "costs" do not.

First, Volcano cannot recover its $6,275.00 mediation fee.  *Sea Coast Foods, Inc. v. Lu-Mar Lobster & Shrimp, Inc.*, 260 F.3d 1054, 1061 (9th Cir. 2001) ("Lu-Mar cites no authority for the proposition that [mediation fees] are recoverable, and we have found none.").  Second, hosting, analyzing, extracting and processing electronic documents (except, perhaps, for TIFF and PDF conversion) are not recoverable "costs."  *See, e.g., Plantronics, Inc. v. Aliph, Inc.*, C 09-01714 WHA LB, 2012 WL 6761576 (N.D. Cal. Oct. 23, 2012); *see also CBT Flint Partners, LLC v. Return Path, Inc.*, 737 F.3d 1320, 1331 (Fed. Cir. 2013) ("[The e-discovery vendors provided invoices that included activities such as] project management, keyword searching, 'statistical

13

previews, 'auditing and logging of files and ensuring compliance with Federal Rules,' and 'extraction of proprietary data,' among others.  The costs of those activities are not the costs of making copies. . . .  Similarly, the costs incurred in acquiring, installing, and configuring a new data-hosting server at the offices of Cisco's counsel were clearly incurred for the convenience of Cisco and its counsel and are not recoverable.").

Third, "costs" do not include general overhead such as courier services, secretarial pay, or postage.  *See In re U.S. Tr.*, 32 F.3d 1370, 1375 (9th Cir. 1994) (general overhead not recoverable as costs).  Thus, the Court should exclude research fees ($30,306.55), FedEx costs ($3,716.17), Messenger Service costs ($1,108.91), Postage ($21.06), and Telephone ($820.76).

## B.   Even If Some "Costs" Were Recoverable, Volcano Did Not Provide Sufficient Detail to Enable the Court to Determine that the Costs Were Reasonable and Necessary in This Case

Volcano failed to provide enough detail to enable the Court to determine that the "costs" were reasonable and necessary.  *See* L.R. 54-1(a) (providing that affidavit and appropriate documentation must support each item claimed on the bill of costs).

For its "expert costs," for example, Volcano provided no documentation from its experts as to what they did, for how long, and at what rate.  To recover $298,400.36 in expert costs, much more documentation is required.  *See Barnett v. Braxton*, C.A. 01C-02-183 RRC, 2003 WL 21976411 (Del. Super. Aug. 15, 2003) (finding that billed services were not recoverable as costs because they were not identified or itemized in any way, "thus precluding any meaningful review by the Court of the amounts claimed").

Likewise, for "vendor costs," Volcano asks for $223,175.73 ($203,631.28 for TransPerfect and $19,544.45 for The Oliver Group).  Volcano did not provide sufficient detail to allow the Court to determine what TransPerfect or The Oliver Group actually did in this case, or why any of it was necessary or reasonable.  Likewise, Volcano seeks $56,492.39 in "Printing, copying, and scanning services."  Volcano provides no breakdown of what these "services" were, nor does Volcano explain its need to print or copy so many documents when it had access to these documents in electronic form.  The same is true for the $63,823.13 in costs for "Depositions (court reporting, videotape service, witnesses fees).  At least some of these costs include items of

14

1  convenience – such as using LiveNote (real time transcripts) at depositions or expedited

2  transcripts – and should be excluded.  Kitner Decl. at ¶ 9.  *Kalitta Air L.L.C. Sys. Inc.*, 741 F.3d at

3  958 (excluding depositions costs because "synchronizing deposition videotapes with their

4  transcripts, while convenient, was not an act of copying or exemplification and was not truly

5  *necessary* for trial.").  But since Volcano did not segregate any of its costs, it is impossible for the

6  Court to know to what extent Volcano's expenses were reasonably necessary.

7      The Court should not excuse this complete absence of documentation.[14]  Indeed, the Court

8  would set a very bad precedent by allowing Volcano to collect a million dollars in "costs" despite

9  failing to submit a single itemized bill or any appropriate supporting documentation.  Instead, the

10  Court should reject Volcano's request for "costs" in its entirety.

11  **VI.  VOLCANO'S CLAIM FOR POST-JUDGMENT INTEREST IS NOT
        RECOVERABLE**

12

13      Volcano asks for post-judgment interest as of the date of the Court's March 31, 2014

14  judgment.  But Volcano cannot recover any post-judgment interest unless and until the Court

15  awards Volcano money damages or injunctive relief.  *Kona Enterprises, Inc. v. Estate of Bishop*

16  *ex rel. Peters*, 243 Fed. App'x. 274, 277 (9th Cir. 2007) (noting that post-judgment interest on

17  attorney's fees only begins to run after district court awards fees).  In the event the Court awards

18  anything to Volcano, no interest should be added from before the Court enters such an order.

19  **VII.  THE COURT SHOULD DEFER ITS RULING ON VOLCANO'S MOTION**

20      While the Ninth Circuit has stated the district court should avoid rulings that will result in

21  piecemeal appeals, *Masalosalo by Masalosalo v. Stonewall Ins. Co.*, 718 F.2d 955, 957 (9th Cir.

22  1983), it is more efficient in this case for the Court to wait until Plaintiffs' appeal of its judgment

23

24  [14]  In *Delgado*, Cooley, among other things, identified case-specific items such as (1) research
    costs (including the timekeeper that incurred them, the database used, and the charge amount);
25  (2) travel costs (mileage amounts, taxi, airfare, hotel costs [even including items like laundry
    costs] – all broken down per person and date and reason for the travel); and (3) deposition and
26  printing costs (including invoice numbers and whether the documents were in color).  *E.g.*, Kitner
    Decl., Ex. B at 120 ($1411.73 for Westlaw by certain user on particular day); at 99 ($1414.90 for
27  Mandarin Oriental Hotel for certain timekeeper for particular trip); at 125 ($2229.30 for Knox
    Photocopy Service); at 134 ($1176.00 for color printing).  In contrast, Volcano provides no such
28  support for any of the costs it claims to have incurred.

15

1   is resolved before ruling on any request for attorney's fees.  *See* Dkt. 99 (notice of appeal) and

2   Kitner Decl., Ex. G (Ninth Circuit docketing statement).  If the Ninth Circuit agrees with

3   Plaintiffs' interpretation of the Agreement, Plaintiffs will be the prevailing party and will be

4   entitled to an award of attorney's fees, thus requiring the Court to vacate any attorneys' fee award

5   to Volcano, and to consider another, separate motion for attorneys' fees from Plaintiffs.  And if

6   the Ninth Circuit finds a fact issue based on the record and remands the case to this Court for trial,

7   there will no longer be a prevailing party until after trial, which will also require the Court to

8   vacate any award of attorneys' fees to Volcano. In the interests of judicial efficiency, the Court

9   should therefore wait until Plaintiffs' appeal concludes before taking up Volcano's motion for

10  attorney's fees.

11  **VIII.   <u>CONCLUSION</u>**

12          Because the Agreement limits Volcano to recovery of any attorney's fee award from either

13  a depleted escrow fund or as a set-off against unpaid Milestone Merger Consideration, the Court

14  should summarily deny Volcano's Motion as moot.  As well, since the Court cannot award

15  attorney's fees against Mr. Banas and Dr. Castella in their individual or personal capacities, the

16  Court should reject Volcano's request to hold them personally or individually liable.  And

17  because Volcano entirely failed to support its request for attorney's fees and costs with adequate

18  detail, the Court should deny it in any event.  Or, in the interests of efficiency, the Court should

19  defer ruling on Volcano's motion until after Plaintiffs' appeal is resolved.

20  DATED: May 5, 2014                    STANLEY LAW GROUP
                                          MATTHEW J. ZEVIN
21

22

23                                          */s/ Matthew J. Zevin*
                                          MATTHEW J. ZEVIN
24

25                                        225 Broadway, Suite 1350
                                          San Diego, CA  92101
26                                        Telephone:     (619) 235-5306
                                          Facsimile:     (815) 377-8419
27                                        e-mail:        mzevin@aol.com

28
                                                                                          16

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STANLEY LAW GROUP
MARC R. STANLEY, Texas SBN: 19046500
(*admitted pro hac vice*)
MARTIN WOODWARD, Texas SBN: 00797693
(*admitted pro hac vice*)
SCOTT A. KITNER, Texas SBN: 24065563
(*admitted pro hac vice*)
3100 Monticello Avenue, Suite 770
Dallas, TX  75205
Telephone:     (214) 443-4300
Facsimile:     (214) 443-0358
e-mail: marcstanley@mac.com
            mwoodward@stanleyiola.com

Attorneys for Plaintiffs, Former Shareholders of
CardioSpectra, Inc.