UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHRISTOPHER E BANAS, et al.,

Plaintiffs,

v.

VOLCANO CORPORATION, et al.,

Defendants.

Case No.  12-cv-01535-WHO

**ORDER GRANTING IN PART AND DENYING IN PART VOLCANO'S MOTION FOR ATTORNEYS' FEES AND COSTS; DENYING PLAINTIFFS' MOTION TO SEAL**

Re: Dkt. Nos. 106, 123

## INTRODUCTION

Having prevailed on its motion for summary judgment, defendant Volcano Corporation is entitled to its reasonable fees and costs pursuant to an attorneys' fees provision in the merger agreement from which the underlying dispute arose.  The amount it seeks—$3,557,034.50 in attorneys' fees and $1,023,995.99 in costs and disbursements, totaling $4,581,030.49—is eye-catching, and the lack of support for such a huge request is surprising.  A significant reduction in Volcano's request is warranted due to block-billing, excessive time claimed for specific tasks, and other deficiencies, as detailed below.  Volcano is awarded $2,586,963.38 in fees and $937,503.17 in costs and disbursements, totaling $3,524,466.55.

## BACKGROUND

Volcano merged with CardioSpectra, Inc. in 2007 in exchange for $25 million in cash to CardioSpectra's shareholders and the promise to make four additional payments from Volcano to CardioSpectra's then-former shareholders if certain milestones were achieved.  Section 13.4 of the merger agreement provided that:

> If any action or proceeding relating to this Agreement or the enforcement of any provision of this Agreement is brought against

United States District Court
Northern District of California

any party hereto, the prevailing party shall be entitled to recover reasonable attorneys' fees, costs and disbursements (in addition to any other relief to which the prevailing party may be entitled).

Merger agreement § 13.4 [Dkt. No. 64-19].

Plaintiffs Christopher Banas and Paul Castella, who are former shareholders of CardioSpectra, sued Volcano, alleging that Volcano breached its contractual obligation to use good faith and reasonable commercial efforts to achieve Milestone 2 and that Volcano failed to pay the shareholders after Milestones 3 and 4 were satisfied. *See* second amended complaint [Dkt. No. 33]. On March 31, 2014, I granted Volcano's motion for summary judgment and denied plaintiffs' motion for summary judgment. Dkt. No. 94.

## LEGAL STANDARD[1]

In determining whether fees are reasonable under Delaware law, courts look to the factors delineated in Rule 1.5(a) of the Delaware Lawyers' Rules of Professional Conduct:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skills requisite to perform the legal services properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

[1] The merger agreement specifies that it shall be governed by Delaware law. Merger agreement § 13.9(a). I therefore look to Delaware law to determine the reasonableness of the fees requested by Volcano. However, I see no meaningful distinction between Delaware law and the law of the Ninth Circuit for purposes of this motion: under both, excessive fees are not reasonable and should not be awarded. Accordingly, Ninth Circuit law is instructive when assessing the reasonableness of the fees requested by Volcano. The parties likewise cite cases from within the Ninth Circuit to support their positions regarding the reasonableness of Volcano's request. *See* pltfs.' obj. [Dkt. No. 123-4]; Volcano resp. to obj. [Dkt. No. 124].

United States District Court
Northern District of California

2

1    (8) whether the fee is fixed or contingent.

2    Delaware Lawyers' Rule of Professional Conduct 1.5(a).

3        "[A] court also should consider whether the number of hours devoted to litigation was

4    excessive, redundant, duplicative or otherwise unnecessary." *Mahani v. Edix Media Grp., Inc.*,

5    935 A.2d 242, 247-48 (Del. 2007) (citation omitted); *see also Hensley v. Eckerhart*, 461 U.S. 424,

6    434 (1983) ("Counsel for the prevailing party should make a good faith effort to exclude from a

7    fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in

8    private practice ethically is obligated to exclude such hours from his fee submission.").

9                              **DISCUSSION**

10       Plaintiffs argue that Volcano's motion should be denied for four reasons: (i) the merger

11   agreement limits Volcano's recovery from plaintiffs to an indemnity escrow fund which has

12   already been depleted; (ii) plaintiffs Banas and Castella cannot be personally liable for attorneys'

13   fees because they were parties to the merger agreement only as shareholder representatives, not in

14   their personal capacities; (iii) Volcano's claimed fees are not reasonable; and (iv)Volcano's

15   claimed costs are not recoverable and not reasonable.  I address each argument below.

16   **I.      VOLCANO'S MOTION IS NOT MOOT**

17       Plaintiffs argue that Volcano's request for fees is moot because the Exclusive Remedy

18   provision in Section 10.9 of the merger agreement governs Volcano's ability to recover from

19   plaintiffs and limits any recovery, including for attorneys' fees, to an escrow fund which has

20   already been depleted.  Section 10.9 provides, in relevant part:

21
22           **10.9  Exclusive Remedy. . . .** [T]he parties hereto acknowledge and
             agree that the indemnification provisions of this Section 10 shall be
22           the sole and exclusive remedy of the Parent Indemnitees with
             respect to any and all claims that a Parent Indemnitee may have
23           against the Company Shareholders . . . .

24

25   Merger Agreement § 10.9 [Dkt. No. 33–1].

26       Plaintiffs misconstrue Section 10.9.  By its own terms, Section 10.9 is limited to situations

27   not present here: claims brought by Parent Indemnitees against the Company Shareholders.  The

28   Parent Indemnitees are Volcano and its affiliates.  *See* Merger Agreement at A-13.  The Company

United States District Court
Northern District of California

3

Shareholders are the former shareholders of CardioSpectra.  *See* Merger Agreement at A-4, A-6.

Accordingly, as properly construed, Section 10.9 provides that in the event that Volcano seeks to

assert claims against the former shareholders of CardioSpectra, it can only do so pursuant to "the

indemnification provisions of this Section 10."[2]

Section 10.9 says nothing about claims CardioSpectra's former shareholders assert against

Volcano, which is what happened here: CardioSpectra's former shareholders filed suit against

Volcano, alleging that Volcano breached the merger agreement.[3]  Volcano did not assert claims

against former CardioSpectra shareholders, much less claims for indemnification.  Section 10.9

therefore has no bearing on the present situation.[4]

Unlike Section 10.9, the attorneys' fees provision in the merger agreement is not limited to

indemnification claims or claims by one side against the other.  The provision provides:

> **13.4  Attorneys' Fees.**  If any action or proceeding relating to this Agreement or the enforcement of any provision of this Agreement is brought against any party hereto, the prevailing party shall be entitled to recover reasonable attorneys' fees, costs and disbursements (in addition to any other relief to which the prevailing party may be entitled).

Merger Agreement § 13.4.

---

[2] Broadly speaking, the "indemnification provisions of this Section 10" relate to actions by Volcano against CardioSpectra's former shareholders for inaccuracies or breaches of any of CardioSpectra's representations or warranties set forth in the merger agreement.  *See* Merger Agreement § 10.2.

[3] Plaintiffs are likely correct that, to account for the disproportionate power of Volcano, the parties limited the type of claim and recovery that Volcano could assert against CardioSpectra's former shareholders without reciprocal limitations on the shareholders.  But the merger agreement does not protect the former shareholders from the consequences of *their own claims against Volcano*. Indeed, as plaintiffs recognize, the merger agreement placed no limits on the claims or recovery which CardioSpectra's former shareholders could assert against Volcano.

[4] Because the plaintiffs' claims against Volcano are not governed by the indemnification provisions of Section 10, the Escrow Fund likewise has no bearing on Volcano's request for attorneys' fees, whether or not that fund has been depleted.  *See* Merger Agreement § 10.2 ("A Parent Indemnitee's rights to indemnification under Section 10 with respect to the Company Shareholders and Terminating Warrantholders *shall be limited to recovery against the Escrow Fund* and the Milestone Merger Consideration, in each case to the extent not yet delivered to the Company Shareholders or Terminating Warrantholders.") (emphasis added).

Volcano obtained summary judgment on plaintiffs' claim that Volcano breached the merger agreement—the only claim asserted in the operative complaint.  There is no dispute that this was an action "relating to this Agreement or the enforcement of any provision of this Agreement" and that Volcano is the "prevailing party."  Accordingly, as the "prevailing party," the merger agreement entitles Volcano is entitled to its "reasonable attorneys' fees, costs and disbursements."  Merger Agreement § 13.4.

## II.  VOLCANO IS NOT ESTOPPED FROM SEEKING FEES FROM BANAS AND CASTELLA

Plaintiffs Banas and Castella argue that Volcano is estopped from holding them personally or individually liable for attorneys' fees because Volcano previously argued that Banas and Castella were only parties to the merger agreement in their capacities as shareholder representatives, not as individuals, and could only sue in that capacity.[5]  Pltfs.' opp. at 3-4 [Dkt. No. 114].

Plaintiffs' argument is unavailing. Banas's and Castella's allegations that they were parties to the merger agreement as shareholder representatives established their standing to sue for breach of contract; it had no bearing on Volcano's right to recover attorneys' fees pursuant to Section 13.4 of the merger agreement as the "prevailing party."

The cases cited by plaintiffs, *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600, 605 (9th Cir. 1996) and *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997), are inapposite and do not support their argument.  *Risotto* stands for the unremarkable proposition that judicial estoppel precludes a party from taking a position inconsistent with that party's earlier position.  *Rissetto*, 94 F.3d at 605.  That is not the case here.  Volcano's earlier position that Banas

---

[5] Volcano moved to dismiss the breach of contract claim in the original complaint on the grounds that the 26 individual and corporate plaintiffs were not parties to the contract and therefore lacked standing to sue for breach of contract. *See* Dkt. No. 13.  The Court granted the motion with leave to amend, explaining that "[o]nly Volcano, Corazon Acquisition, Inc., CardioSpectra, and Christopher E. Banas and Paul Castella, in their capacities as Shareholders' Representatives, were parties to the Agreement. Neither Banas nor Castella sue in their capacity as Shareholders' Representatives." Dkt. No. 31 at 3 n. 1.  Plaintiffs filed a second amended complaint in which the only plaintiffs were Banas and Castella, "in their capacities as Shareholders' Representatives of the Former Shareholders of CardioSpectra, Inc." Dkt. No. 33 ¶ 9.

5

United States District Court
Northern District of California

and Castella could only assert breach of contract in the capacities in which they were parties to the merger agreement is consistent with Volcano's current position that, as the prevailing party, it is entitled to attorneys' fees from plaintiffs. *Alexander* explains that "[u]nder the 'law of the case' doctrine, a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." 106 F.3d at 876 (citation omitted). The law of the case doctrine has no application here because the Court has not previously addressed plaintiffs' liability for attorneys' fees.

Banas and Castella initiated this action against Volcano seeking millions of dollars. It would be patently unfair to hold that Volcano waived its contractual right to attorneys' fees because it appropriately required Banas and Castella to plead the basis for their standing to assert breach of contract.[6] *Cf Johnson v. Myers*, 2014 WL 2214045, at *2 (N.D. Cal. May 28, 2014) ("it would be inequitable to limit defendants' attorney's fees recovery to the assets of a single plaintiff when every litigant was invested in the outcome of the action and aspired to win money"). If Banas and Castella have an arrangement with other former CardioSpectra shareholders, or the dismissed defendants, regarding indemnification for attorneys' fees, that is their business. However, there is no question that, as plaintiffs, Banas and Castella are liable for attorneys' fees in the first instance.[7]

## III.  VOLCANO IS ENTITLED TO REASONABLE ATTORNEYS' FEES

Having rejected plaintiffs' two threshold arguments above, there is no question that Volcano is entitled to reasonable fees. But is the $3.5 million in fees Volcano paid to its counsel, Cooley LLP, reasonable?

---

[6] At his deposition, Castella apparently recognized that he and Banas, not other shareholders, would be liable for attorneys' fees if Volcano prevailed in the lawsuit. *See* Dkt. No. 118-4 at 135:16-22 (Q: [W]ould the shareholders pay our attorneys' fees, or would you and Mr. Banas? A: Right now I understand that I and Chris [Banas] would be responsible, Chris and myself.").

[7] Plaintiffs also argue that Section 10.9 of the merger agreement shields individual shareholders from any personal liability "for anything related to the Merger." Dkt. No. 114 at 5. As noted above, Section 10.2 relates to claims for indemnification and provides that Volcano's remedies are limited to the provisions set forth in Section 10. Section 10.9 has no bearing on the unambiguous fee provision in section 13.4.

6

United States District Court
Northern District of California

Plaintiffs contend that I should reduce Volcano's request "by $1,356,613.50 for its excessive charges, vague charges, and then make an additional large cut due to block billing." Dkt. No. 123-3 at 10. Specifically, plaintiffs assert that Volcano failed to establish that its fees are the prevailing rates for similar cases in the Northern District; improperly block-billed its time; provided insufficiently detailed billing records; seeks fees for discrepant time entries; overstaffed and duplicated assignments; seeks excessive fees for travel; billed for administrative, clerical, and paralegal work; billed excessive time for document review; and seeks excessive fees for specific tasks, including the motion to dismiss, motion for summary judgment, and this fees motion; and seeks costs which are not recoverable.[8]

Volcano seeks a staggering amount for a breach of contract case which was resolved at summary judgment. Its documentation of those fees and costs, however, was remarkably deficient. As stated below, I agree with some, but not all, of plaintiffs' criticisms.

**A.  Prevailing market rates**

Volcano seeks fees for 11 different Cooley timekeepers at hourly rates ranging from $355 to $1,095 per hour for partners and associates, $260 to $325 per hour for an e-discovery staff attorney, and $245 to $290 per hour for paralegals. Lambert decl. ¶ 45, Table 5 [Dkt. No. 108]. Plaintiffs contend that Volcano has failed to provide any competent evidence that these rates are within the prevailing market rates for similar cases in the Northern District. Pltfs.' opp. at 8-10 [Dkt. No. 114].

The rates requested by Volcano, while high, are within the prevailing market rates for similar cases in the Northern District. Volcano submitted the declaration of Chuck Chandler, a partner at Valeo, an international consulting firm. According to Chandler, Valeo maintains the Valeo Attorney Hourly Rates and AFA Database which "identifies rates for attorneys and paralegals at large, middle-market and boutique firms, in over 80 Practice Areas and in over 300

---

[8] Plaintiffs request that I defer ruling on Volcano's fees motion until their appeal of the underlying judgment is resolved. That request is DENIED. District courts routinely award attorneys' fees while an appeal of the underlying judgment is pending.

United States District Court
Northern District of California

cities." Chandler Decl. ¶ 4 [Dkt. No. 107]. Chandler states that the database "uses actual rates—i.e., the rate a law firm billed a client—as collected from filings in all court dockets accessible online." *Id.* The database shows that Cooley's claimed rates are within the range, though on the high end, of prevailing market rates for comparable firms in the Northern District. That conclusion is consistent with my own knowledge of prevailing market rates for this type of case. *See Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (it is appropriate for district court to rely on its own familiarity with the legal market when assessing the reasonableness of hourly rates claimed in fees motions).

Along with Cooley's high hourly rates comes an expectation that it will complete tasks efficiently and that its more senior attorneys will limit their involvement to tasks requiring their level of expertise. *See, e.g., Hernandez v. Grullense*, 2014 WL 1724356, at *11 (N.D. Cal. Apr. 30, 2014) ("The trade-off for the higher billing rate that greater experience and specialized knowledge justifies is that more senior attorneys are expected to delegate routine tasks to others with lower billing rates."). Regrettably, Volcano's motion fails to demonstrate whether it did so in this case.

### B. Block-billing

Plaintiffs contend that "Volcano's time entries are improperly block-billed, and it is therefore impossible to determine the reasonableness of the time spent on each task."[9] Pltfs.' obj. at 2 [Dkt. No. 123-4].[10] Plaintiffs request that I deny Volcano's fee request in its entirety or make "very large across-the board percentage cuts" in the number of hours claimed by due to the block-

---

[9] Block-billing is the practice of including various tasks within one time entry without specifying the time spent on each task within an entry.

[10] Plaintiffs move to seal their objection to Volcano's billing records and exhibit 1 to the objection because they reference Volcano's time records. Dkt. No. 123. Per Civil Local Rule 79.5(d), within 7 days of plaintiffs' motion to seal, Volcano should have filed a declaration with the Court "establishing that the designated information is sealable." Volcano did not do so. The motion is therefore DENIED. Civil L.R. 79-5(d) ("If the designating party does not file its responsive declaration as required by this subsection, the document or proposed filing will be made part of the public record."). The motion would likely have been denied in any event. Volcano already redacted portions of the records that it provided plaintiffs and lodged with the Court. The remaining information does not appear sealable.

billing.

Volcano concedes that its time entries are block-billed.  Volcano's counsel, Cooley, states that "[a]s standard practice, attorneys at Cooley LLP block bill their time without specifying the time spent on each task within an entry, unless otherwise requested by a client.  Volcano made no such request and paid for block-billed time."  Lambert decl. ¶ 2 [Dkt. No. 124-2].  Volcano contends that "[t]he use of block billing, however, is a 'typical practice' in the Northern District of California, and supports a fee request where the entries contain 'sufficient detail' from which a court can conclude that the total number of hours spent on all tasks was reasonable."  Dkt. No. 124 at 1.  In support, Volcano cites, *Garcia v. Resurgent Capital Servs., L.P.*, 2012 WL 3778852, at *8 (N.D. Cal. Aug. 30, 2012), in which the Court found that the block-billed entries are issue were "sufficiently detailed to allow the Court to determine the reasonableness of time expended."

If block billing is still a "typical practice" in this District, which I doubt, it flies in the face of repeated criticism by courts throughout the country, *including in this District*.[11]  It may be that, as *Garcia* stated, "block-billing is not inappropriate *per se*," if the party seeking fees provides enough information to reveal whether the amount of time spent performing tasks was reasonable. Volcano did not do so.

The time entries submitted by Volcano are replete with examples where, because of block-

---

[11] *See, e.g., Apple, Inc. v. Samsung Electronics Co.*, 2012 WL 5451411, at *5 (N.D. Cal. Nov. 7, 2012) ("in light of the evidence that block-billing inflates hours by between 10% and 30%, the court trims 20% from the block-billed hours in Samsung's request"); *Hajro v. U.S. Citizenship & Immigration Servs.*, 900 F. Supp. 2d 1034, 1053 (N.D. Cal. 2012) ("the court exercises its discretion to reduce the hours for these block-billed entries by twenty percent, the amount noted by the Ninth Circuit as the middle range for time increases that occurs through block-billing"); *Yeager v. Bowlin*, 2010 WL 1689225, at *1 (E.D. Cal. Apr. 26, 2010) ("block billing thereby forces the court to take a 'shot in the dark' and guess whether the hours expended were reasonable, which is precisely the opposite of the methodical calculations the lodestar method requires"); *Lil' Joe Wein Music, Inc. v. Jackson*, 2008 WL 2688117, at *13 (S.D. Fla. July 1, 2008) (20% across the board reduction because "[i]t is impossible to ascertain from the block billing entries whether the amount of time spent on any separate task performed was reasonable"); *Aiello v. Town of Brookhaven*, 2005 WL 1397202, at *3 (E.D.N.Y. June 13, 2005) ("because block billing renders it difficult to determine whether, and/or the extent to which, the work done by attorneys is duplicative or unnecessary, courts apply percentage cuts where there is a substantial amount of block billing in a fee request") (citations and internal punctuation omitted)

1    billing, it is impossible to determine whether the time requested for any one task was reasonable.[12]

2    For example, in entry 2259, a Cooley partner block-billed 6.1 hours for:

3         Attention to trial preparation; conference call with M. Rhodes and
         D. Lippoldt re: trial planning, summary judgment hearing and
4         budget; attention to sanctions motion filed by plaintiff and plan
         response to motion with A. Main; attention to preparation for
5         summary judgment hearing and communication with M. Rhodes and
         A. Main re: same; attention to jury instructions and voir dire form
6         and communicate with B. Lobo re: same.

7    Similarly, in entry 2071, an associate block-billed 7.7 hours to:

8         Continue review and analysis of deposition transcript of V. Burgess
9         to identify factual support for opposition to Plaintiffs' motion;
         confer with M. Lambert re: release of documents from privilege log;
10        review and analyze additional documents marked privileged and
         assess whether documents should be produced; begin outlining
11        opposition to Plaintiffs' motion for partial summary judgment; and
         provide instructions to vendor re: production of replacement files

12

13        Without specifying how much spent was spent on each distinct task (most of which were

14   also performed on additional days), there is no way for me to determine whether the time spent on

15   any of these tasks—e.g., trial preparation, summary judgment briefing, opposition to sanctions

16   motion, preparations of jury instructions and verdict form—was reasonable.  Nor can I determine

17   that the total amount of time spent on all the tasks, in combination, was reasonable, given the

18   amount of time at issue and because most of Volcano's tasks were performed on several days by

19   various attorneys.

20        In contrast, in the only block-billed entry discussed in *Garcia*, the plaintiff claimed .4

21   hours (18 to 24 minutes) for the following work: "REVD signed stip to mediate from Brachfeld,

22   revised stip, efiled, courtesy copies to court (mail and email), with CMC stmt (mail); email to

23   ADR Unit/Sheila re Monday phone confer."  *Id.*  Given that only .4 hours was claimed for the

24   various tasks combined, the Court could readily determine that the time spent on any individual

25   task could not have been unreasonable.  Unlike *Garcia*, this case involved thousands of hours

26

27   _____

28   [12] Per the Court's instruction, Volcano's billing records were lodged with the Court and provided
     to plaintiffs, but not filed on the public docket.

United States District Court
Northern District of California

1    claimed by 11 different timekeepers (excluding the thousands of hours billed by 15 contract

2    attorneys to review documents).  Given that many of the time entries describe similar tasks (or the

3    same task continued over several days or weeks), there is simply no way to determine whether the

4    time spent on any given task was reasonable.

5        Even the summary of Volcano's fees per month, which it submitted in support of its

6    motion for attorneys' fees, is block-billed.  *See* Dkt. No. 108 at 22-25 (Table 6).  For example, the

7    summary states that in February 2014, Cooley billed $259,906.50 for the following work:

> Revise and file opposition to Plaintiffs' motion for summary
> judgment.  Legal research for opposition to Plaintiffs' motion and
> reply to Volcano's motion for summary judgment.   Evidence
> development and analysis. Draft, revise, and file reply to Volcano's
> motion for summary judgment.  Trial preparation.

11   Dkt. No. 108 at 25.  There is no way to determine whether the time claimed for any particular task

12   is reasonable because Volcano did not identify the fees or time associated with these tasks

13   individually.  Moreover, each of these tasks was also performed in months other than February

14   2014, along with other tasks, meaning that I cannot determine whether the total time spent on

15   these tasks combined was reasonable.

16       Consistent with Cooley's statement that its "standard practice" is to block-bill and that it

17   did not depart from that practice here, essentially all of Cooley's time entries here are block-billed.

18   To the extent that any of Cooley's entries reveal how much time is claimed for any particular task,

19   that is because those entries only include one task; not because Cooley timekeepers specified the

20   amount of time spent on that task.[13]  As a result, the percentage of actual *time* billed in block-

21   billed entries significantly exceeds the percentage of block-billed *entries*.  Based on my close

22   review of the billing entries, I estimate that at least 85% of Volcano's time was block-billed.

23       I am reducing Volcano's bill by 20% for block billing.[14]  In *Welch v. Metro. Life Ins. Co.*,

---

[13] Even in those situations, the tasks were also claimed in other block-billed entries, meaning I
cannot determine whether the total time spent on those tasks was reasonable.

[14] As demonstrated in the table below, I am applying the 20% reduction only to fees which I am
not separately reducing for specific tasks, i.e., the motions for summary judgment, attorneys' fees,
and extension of time.  This results in an effective across-the-board reduction of 17.25%.

United States District Court
Northern District of California

United States District Court
Northern District of California

the Ninth Circuit affirmed a district court's authority to reduce block-billed hours by 10% to

30%.[15]  480 F.3d 942, 948 (9th Cir. 2007).  *See Lahiri v. Universal Music & Video Distrib. Corp.*,

606 F.3d 1216, 1222-23 (9th Cir. 2010) (affirming district court's reduction of 80% of attorneys'

and paralegals' hours by 30% to account for block-billing).  I am choosing a reduction in the

middle of that range because Volcano has made it impossible to determine how efficiently it has

staffed this case and completed the various tasks that were integral to its success.

### C.  Other Billing Deficiencies

I am to going to make a further reduction for excessive billing or inefficiency of 5%

because of the matters listed below.  *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th

Cir. 2008) ("the district court can impose a small reduction, no greater than 10 percent—a

"haircut"—based on its exercise of discretion and without a more specific explanation").  While

block-billing has made it difficult to separate and analyze these problems, they are worth

considering separately.

#### 1.  Detail of billing records

Plaintiffs contend that 124 of Cooley's time entries, totaling $231,498.50, are vague and

should be excluded from Volcano's fee award.  Plaintiffs discuss two entries specifically.  Dkt.

No. 123-3 at 3-4.  In entry 1268, an attorney billed 4.1 hours (at $710 per hour) for:

> Attention to deposition preparation; attention to deposition
> scheduling and tactical planning for presenting expert witness
> testimony and opposing expert witness testimony of plaintiffs.

In entry 1486, the same attorney billed 4.8 hours for:

> Attention to discovery issues; attention to draft expert reports.[16]

Plaintiffs contend that "[t]hese and other descriptions do not recite any specific work

---

[15] The Ninth Circuit accepted the California State Bar's Committee on Mandatory Fee Arbitration report that block-billing "may increase time by 10% to 30%."  *Welch*, 480 F.3d at 948.

[16] To the extent entries 1268 and 1486 are vague because they are block-billed, an appropriate reduction has already been made to account for the block-billing, as discussed above.

United States District Court
Northern District of California

performed and therefore cannot provide any basis for judging the reasonableness of the corresponding time." Dkt. No. 133-3.

I agree that these entries and other entries identified by plaintiffs are somewhat vague, rendering it difficult to determine what the timekeeper was actually doing. *Cf Santiago v. Equable Ascent Fin.*, 2013 WL 3498079, at *6 (N.D. Cal. July 12, 2013) ("the work billed for unnamed drafts and telephone calls with unknown parties is too vague to be reviewed"). I disagree, however, that the entries are so vague that the fees should be rejected entirely. Rather, the vagueness of Cooley's entries, in combination with other deficiencies discussed above and throughout this order, demonstrates both the appropriateness of the 20% block-billing reduction and the modest further 5% reduction for other billing deficiencies.

Plaintiffs also contend that Volcano entries are vague because "Volcano's timekeepers repeatedly claim large amounts of hours reviewing documents but do not list the number of documents" and because "Volcano timekeepers also frequently used nearly identical time entries for different days of work, thereby making it impossible to know the true extent of the work done and whether the differing time for each day is reasonable." Dkt. No. 133-3 at 4. I reject both criticisms. Plaintiffs have not cited any authority providing that timekeepers are required to identify how many documents they have reviewed in each entry, or that timekeepers may not use similar phrases to describe similar work performed on different days. Indeed, in a case of this size, where timekeepers will necessarily spend several days on similar tasks, such as reviewing documents, concocting different ways to describe the same task would serve no purpose other than misleading the client or the Court. Absent some identifiable reason to question the amount of time spent on a given task, I cannot conclude that Volcano's failure to specify the number of documents reviewed or to use different ways to describe similar tasks warrant reducing the fee award.

### 2. Excessive fees for routine, administrative, clerical, and paralegal work

Plaintiffs contend that Volcano seeks excessive attorneys' fees for routine tasks, such as updating a list of deponents, and for administrative, clerical, and paralegal work, including preparing binders, exhibits, and courtesy copies of pleadings. Pltfs.' obj. at 7. Plaintiffs have identified 78 time entries, totaling $175,413, which they assert relate to such "improperly

United States District Court
Northern District of California

1  delegated" tasks.  Pltfs.' obj. Ex. 1 at 10-11 [Dkt. No. 123-7].  I have reviewed each of those

2  entries.  Only one entry should be discounted in its entirety: in entry 571, Volcano seeks $1,419 in

3  fees for 2.2 hours (at $645 per hour) which a senior associate spent to "prepare review binders for

4  distribution to contract attorney team."  Preparing binders for distribution is not a reasonable

5  use of a senior associate's time, particularly not at $645 an hour.  $1,419 will be reduced from

6  the award as part of the 5% overall reduction.

7       The remaining time entries describe tasks which are appropriately performed by attorneys,

8  including reviewing regulatory filings, developing and revising document review protocols,

9  reviewing documents for privilege and quality control, responding to questions from contract

10  review attorneys, reviewing the opposing expert's report, and outlining and drafting briefs.

11  However, the entries at issue reflect the same overstaffing and excessive time expenditure noted

12  throughout this opinion, further validating that a modest across-the-board 5% reduction is

13  warranted.

### 3.   Excessive billing for document review

15       Plaintiffs contend that Volcano seeks excessive fees for document review.  Plaintiffs do

16  not take issue with the $282,997 in fees Volcano seeks for 15 contract attorneys who spent 5,682.2

17  hours reviewing documents at $47 and $59 per hour.  Rather, plaintiffs dispute the separate fees

18  Volcano requests for Cooley's attorneys, at much higher rates, to review documents which

19  Volcano did not collect and produce initially.  Plaintiffs have identified 103 time entries, totaling

20  $248,917.50, which, they contend, reflect excessive fees for document review by Cooley

21  attorneys.  *See* Dkt. No. 123-7 at 12-14 (listing entries for "excessive document review").

22       I have reviewed the entries in detail.  Most of the entries reflect document review

23  performed by Cooley's first-year associates or quality control or limited high-level review by

24  more senior attorneys to ensure the integrity of the first-level review.  That is not excessive.

25  While Volcano appropriately elected to use contract attorneys for most of the review, resulting in

26  fees hundreds of thousands of dollars less than if the review had been conducted entirely by

27  Cooley attorneys, it was not inappropriate for Volcano to use first-year Cooley attorneys for

28  additional review and more senior Cooley attorneys to perform quality assurance and limited high-

level review.

However, a handful of the entries identified by plaintiffs reveal excessive time by senior Cooley attorneys performing first-level reviews. Volcano asserts that some of these entries reflect reviews before Volcano retained contract attorneys to perform the review. That may be true, but it was excessive for a senior attorney, at an hourly rate in excess of $600 an hour, to perform the first-level review.

### 4. Plaintiffs' remaining arguments are unpersuasive

#### a. Discrepant time entries

Plaintiffs assert that they have identified 11 "discrepant time entries," totaling $22,431.00, for which Volcano should not be awarded fees. Plaintiffs state that "for example, Ms. Main's July 30, 2013, entry claims that she conferred with Mr. Lambert 're: upcoming depositions and preparation of J. Sheridan,' but Mr. Lambert's time entry contains no such conference." Dkt. No. 123-3 at 5.

As Volcano points out, Mr. Lambert's entry for the same day includes "discussions with client re: strategy and discovery planning." Ms. Main's and Mr. Lambert's entries are accordingly not inconsistent as they both relate to preparing the client for deposition. I find that the ten other time entries at issue, which plaintiffs do not discuss, are likewise not "discrepant."

#### b. Overstaffing at depositions

Plaintiffs contend that Volcano unreasonably seeks fees for two attorneys with high billing rates to attend or prepare witnesses for the same depositions when only one attorney was actually deposing or defending the witness. Specifically, plaintiffs object to the time Mr. Lambert and Ms. Main both spent preparing Volcano's expert witness on December 16, 2013 at a combined rate of $1,295 (entries 1932 and 1935); the time Mr. Lambert and Mr. Rhodes both claim for attending plaintiff Castella's deposition (entries 1478-79); and the time Mr. Rhodes and Ms. Main both claim for attending plaintiff Banas's deposition (entries 1490 and 1496).

Volcano responds that two attorneys billed time for only 5 of the 27 depositions conducted in this action and that, in those five depositions, it was reasonable for both attorneys to bill

United States District Court
Northern District of California

because the non-deposing attorney either assisted in the deposition of key witnesses or attended for the purpose of preparing for another deposition occurring only a day or two later.  Volcano also asserts that in all but one instance the additional attorney worked on other tasks during the deposition.  Volcano resp. re obj. at 7 [Dkt. No. 124].

I disagree with plaintiffs that it is necessarily unreasonable for two attorneys to *prepare* for the same deposition.  In large cases such as this, it is often the case that one person cannot have a complete command of all relevant facts or areas on which a witness may testify.  It may therefore be necessary for several attorneys to prepare for a deposition or prepare a witness.  While it is usually unreasonable for two attorneys to bill to *attend* the same deposition, Volcano only did so in fewer than 20% of the depositions here and I accept its reasons for doing so.

c.   Excessive travel

For the same reasons, Volcano's request for travel time for multiple attorneys to attend depositions, hearings, and the mediation and for attorneys to travel out of state to train contract attorneys is not excessive.  I have explained why the travel to depositions was not excessive.

It was reasonable for Volcano to bill for two attorneys to attend the mediation.  In a case of this type, it may make sense to have two attorneys, even two senior attorneys, attend a mediation, which presents the best opportunity for an early resolution of the matter.  Nor was it unreasonable for Volcano to bill for one attorney to travel to train the 15 contract attorneys in person.  As discussed below, using contract attorneys to review the bulk of documents collected and produced in this action, rather than Cooley attorneys, resulted in fees millions of dollars less than if the review had been conducted entirely by Cooley attorneys.  Sending one attorney to train those contract attorneys, which helped realize significant savings, was reasonable.

**D.  Excessive billing for specific projects**

Plaintiffs assert that Volcano's fee award should be reduced by $204,725.50 to account for excessive time spent on Volcano's motion to dismiss, motion for extension of time, mediation brief, motion for summary judgment, and fees motion.  For the reasons stated below, I agree that Volcano seeks excessive fees for specific tasks, though not to the extent that plaintiffs argue.

16

1    Volcano's requests are most excessive in connection with its motion for summary judgment,

2    motion for extension of time, and motion for attorneys' fees.  I have considerably reduced

3    Volcano fees for those tasks, as discussed below.  The fees Volcano requests for its motion to

4    dismiss and mediation brief are less excessive, and do not warrant any additional reduction beyond

5    the across-the-board reductions.

6                    **1.   Motion for summary judgment**

7            Plaintiffs assert that Volcano seeks excessive fees for its summary judgment briefing.  I

8    agree.  As noted, Volcano's block-billing makes it impossible to determine precisely the fees

9    claimed for specific tasks, including the summary judgment briefing.  I have therefore reviewed

10   Volcano's time entries in detail in order to estimate, as accurately as possible in light of the block-

11   billing, the fees and time Volcano claims in connection with its summary judgment briefing.  I

12   have conservatively identified approximately 150 separate time entries related to Volcano's

13   opening and reply summary judgment briefs.  Based on my review, for its moving summary

14   judgment brief, Volcano's attorneys billed approximately 400 hours from mid-December 2013 to

15   mid-late January 2014, totaling approximately $220,000.[17]  For the reply brief, Volcano's

16   attorneys billed approximately 220 hours from mid-February 2014 to late February 2014, totaling

17   approximately $130,000.[18]

18           Volcano responds that it does not seek excessive fees in connection with its summary

19   judgment briefing and that "given the successful result Volcano obtained against Plaintiffs,

20   Volcano's efforts were plainly reasonable."  Volcano resp. re obj. at 14.

21           I disagree that Volcano's fees are presumptively reasonable solely because it prevailed.

22   *Santiago v. Equable Ascent Fin.*, 2013 WL 3498079 (N.D. Cal. July 12, 2013), which Volcano

23   cites, is inapposite.  The disputed entries at issue there "mostly consist[ed] of tasks lasting less

24   than 2 hours" and the Court emphasized the "relatively small amount of contested time."  *Id.* at

25   *5.  In contrast, 100s of hours of fees are at issue here.  Moreover, *Santiago* relied on *Moreno v.*

26

27   _____

     [17] Time entries 1915 to 2048, excluding entries not related to summary judgment briefing.

28   [18] Time entries 2129 to 2190, excluding entries not related to summary judgment briefing.

United States District Court
Northern District of California

1   *City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008), for the proposition that "the court should

2   defer to the winning lawyer's professional judgment as to how much time he was required to

3   spend on the case; after all, he won, and might not have, had he been more of a slacker."

4   *Santiago*, 2013 WL 3498079, at *5 (citing *Moreno*, 534 F.3d at 1112). But *Moreno* involved

5   attorneys working on contingency fee cases where the "payoff" is uncertain; not lawyers billing

6   their clients by the hour whether they win or lose, as is the case here. *See Moreno*, 534 F.3d at

7   1112 ("It must also be kept in mind that lawyers are not likely to spend unnecessary time *on*

8   *contingency fee cases* in the hope of inflating their fees. The payoff is too uncertain, as to both the

9   result and the amount of the fee.") (emphasis added).

10          There is no question that Volcano's summary judgment briefing was of high quality and

11   successfully resolved this matter. But it is beyond me how Volcano's counsel billed

12   approximately 400 attorney hours ($220,000) for the opening brief and 220 attorney hours

13   ($130,000) for the reply brief. While this was not a routine matter, neither was it exceptionally

14   complex, legally or factually. Only one cause of action, breach of contract, was at issue. Volcano

15   capably, and successfully, addressed it within the presumptive page limits.[19] Of the exhibits

16   attached to the summary judgment brief, all but a handful were created in the course of litigation,

17   e.g., pleadings, discovery correspondence and deposition transcripts.[20]

18          Volcano's block-billing and many vague entries make it challenging to pin-point specific

19   sources of excessive time. Nonetheless, reviewing the time entries in detail reveals inefficiencies.

20   As one example only, Volcano seeks fees for three different attorneys to "research," "review," or

21   "analyze" case law regarding contracts on 19 different occasions in less than one month, from

22   mid-December to mid-January, in connection with the opening summary judgment brief. *See* time

23   entries at 96-101. Contract interpretation was certainly central to this motion, but the legal issues

24   were not so complex that they required research by three different attorneys on 19 different

25

26   ─────────────────────

27   [19] Volcano did not seek additional pages.

28   [20] Time and fees for the actual depositions are not included in the hours discussed here; those were
     billed separately.

occasions.  On the contrary, the legal issues consisted largely of black-letter legal principles.[21]

Based on my review of the summary judgment briefing, Volcano's time entries, and my

knowledge of the underlying issues, a reduction of $150,000 is warranted for the summary

judgment briefing is warranted.  This results in an award of approximately $200,000 for Volcano's

summary judgment brief, which is more than sufficient.

### 2.  Motion for extension of time

Plaintiffs contend that one Cooley attorney "unreasonably billed 5 hours [at $550 per hour]

to research and draft a motion for extension of time."  Pltfs.' obj. at 9 (citing Entry 18).  Volcano

does not respond to this contention.  No motion for extension of time was filed; rather, three days

after the time entry at issue, the parties filed a Stipulated Request for an Order Changing Time Re:

Extension of Deadline for Defendant Volcano Corporation to Answer or Otherwise Respond to

Complaint and Related Briefing Schedule.  Dkt. No. 6.  The Cooley attorney separately billed for

time preparing that stipulation and a supporting declaration.  It is possible that he drafted a motion

---

[21] For example, Volcano's opening brief set forth the relevant law regarding contract interpretation as follows:

> The court decides the meaning of an unambiguous contract as a matter of law. *Fu-Kong Tzung v. State Farm Fire & Cas. Co.*, 873 F.2d 1338, 1340-42 (9th Cir. 1989); *JANA Master Fund Ltd. v. CNET Networks, Inc.*, 954 A.2d 335, 338-39 (Del. Ch. 2008). Where the contract is not reasonably or fairly susceptible to the non-moving party's interpretation, the moving party is entitled to summary judgment. *GRT, Inc. v. Marathon GTF Tech., Ltd.*, 2012 Del. Ch. LEXIS 134, at *4-5, 11 (Del. Ch. June 21, 2012). When determining the contract's meaning, the true test is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant. *Rhone-Poulenc Basic Chem. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992) (citation omitted). This reasonable person is acquainted with all operative usages and know[s] all the circumstances prior to and contemporaneous with the execution of the agreement. *Interim Healthcare v. Spherion Corp.*, 884 A.2d 513, 555 (Del. Super. Ct. 2005); *see also Eagle Indus. v. DeVilbiss Health Care*, 702 A.2d 1228, 1232 n.7 (Del. 1997) (allowing for the consideration of undisputed background facts to place the contractual provision in its historical setting).

Dkt. No. 65 at 12-13.  None of these legal principles is novel or was in dispute.

United States District Court
Northern District of California

for an extension of time while the parties negotiated the stipulation which was filed, but that is an assumption which I cannot make.  Volcano therefore has not met its burden of establishing that the five hours were reasonably incurred.  Volcano's fee request is accordingly reduced by five hours, totaling $2,750.

### 3. Fees motion

Volcano seeks fees for approximately 225 attorney hours for preparing its fees motion, totaling approximately $135,000.  This comprises approximately 115 attorney hours in connection with the opening brief and approximately 110 attorney hours for the reply brief.[22]  Plaintiffs contend that this is excessive.  I agree.

There is no dispute that Volcano is the prevailing party and is entitled to attorneys' fees.  Plaintiffs' arguments that attorneys' fees are not warranted due to estoppel and the indemnification provision, addressed above, were first raised in plaintiffs' opposition brief, and therefore were not addressed in Volcano's opening brief.  The issues addressed in Volcano's opening brief were accordingly not particularly complicated and Volcano appropriately dedicated the bulk of the brief to the reasonableness of the requested fees, rather than legal issues.  *See* Dkt. No. 106.  Consistent with the straight-forward issues presented, the memorandum of points and authorities in the opening brief was only 12 pages.  Volcano nonetheless seeks fees for approximately 115 attorney

---

[22] Cooley attorney Lambert states that Volcano seeks 100.2 hours (totaling $60,014) through April 14, 2014 in connection with the opening fees brief.  Lambert Decl. ¶ 51, Table 9 [Dkt. No. 108].  However, based on my close review of Volcano's time entries, I count approximately 115 attorney hours (totaling approximately $70,000) for which Volcano seeks fees through April 14, 2014 in connection with the opening brief.  Reasons for the discrepancy are evident.  For example, Lambert claims that he billed 10.7 hours and Rhodes billed .5 hours in connection with the opening brief through April 14, 2014.  Lambert Decl. ¶ 51, Table 9.  But I count approximately 16 hours for Lambert and at least 2 hours for Rhodes (including one individual entry for 1.1 hours: entry 2335) in connection with the opening brief through April 14, 2014.  *See* time entries pp. 123-25.  Similarly, in its reply brief, Volcano contends that it seeks $105,170.50 in "attorneys' fees, costs, and disbursements" in connection with the fees motions and related documents (opening and reply briefs combined).  Dkt. No. 117 at 15.  But my close review of the time entries indicates that Volcano seeks approximately $135,000 in fees alone for its preparation of the fees motion.  I am troubled by the  discrepancy between what Volcano represents that it seeks and what its own records reveal.  I assume that this is inadvertent, though I note that Volcano's representations were submitted to the Court before I required Volcano to submit its contemporaneous billing records because I was concerned about the overall size of the fee request.

United States District Court
Northern District of California

United States District Court
Northern District of California

hours in connection with the brief.  That is excessive, even considering preparation of the two

attorney declarations Volcano submitted in support of its opening brief.[23]  Dkt. Nos. 107

(Chandler decl.), 108 (Lambert decl.).  Based on my close review of the opening brief, Volcano's

time entries, and my knowledge of the underlying issues, a deduction of $30,000 for the opening

brief is warranted.

In contrast to Volcano's opening brief, in its reply brief, Volcano was required to respond

to novel legal arguments raised in plaintiffs' opposition.[24]  Volcano capably did so in four and a

half pages.  *See* Dkt. No. 117 at 1-5.  Volcano dedicated the remainder of the reply brief to

advancing several non-complicated arguments, including that the hourly rates it claims are

reasonable and that it provided sufficient detail to support its request, even though it did not

submit daily time entries.[25]  Volcano submitted a six-paragraph declaration in support of the reply

brief.  Dkt. No. 118.  Given the nature of the reply brief and the issues involved, Volcano's request

for fees for 110 attorney hours (approximately $65,000) for preparation of the reply brief is not

reasonable.  Based on my close review of the reply brief, Cooley's time entries, and my

knowledge of the underlying issues, a deduction of $20,000 for the reply brief is warranted.

### 4.  Motion to dismiss and mediation brief

Plaintiffs assert that Volcano seeks excessive fees in connection with the motion to dismiss

and that "Volcano unreasonably prepared a lengthy mediation brief that contained hundreds of

pages of exhibits [and] Volcano has not justified this time."  Pltfs.' obj. at 8-9.  Based on my

detailed review of Volcano's time entries, I agree that Volcano seeks excessive time in connection

---

[23] Much of the 30-page Lambert declaration (the other declaration is only two pages) consists of material which is not helpful in determining the reasonableness of the fees, including block summaries of work performed per month, total fees per attorney, and hours billed by attorney per month.  None of that information provides the information necessary to determine whether the time spent on any particular task was reasonable.

[24] As noted above, plaintiffs argued that (i) Volcano's fee request was mooted by the indemnification provision in the merger agreement and that (ii) Volcano was estopped from seeking fees.  Both arguments were novel (and wrong) and required Volcano to respond.

[25] I subsequently ordered Volcano to provide the Court and plaintiffs contemporaneous time records in order to allow the Court and plaintiffs to effectively assess the reasonableness of Volcano's fees request.  Dkt. No. 120.

with its motion to dismiss and mediation brief.  However, Volcano's requests are not as excessive as those discussed above and may be addressed through the across-the board cuts described above.[26]

### E.  Summary of reductions to Volcano's attorneys' fees request

For the reasons stated above, I make the following deductions to the attorneys' fees requested by Volcano:

| | REQUESTED | REDUCTION | AWARDED |
|---|---|---|---|
| Motion for attorneys' fees | $135,000.00 | $50,000.00 | $85,000.00 |
| Motion for summary judgment | $350,000.00 | $150,000.00 | $200,000.00 |
| Motion for extension of time | $2,750.00 | $2,750.00 | $0.00 |
| Remaining fees | $3,069,284.50 | $767,321.13[27] | $2,301,963.38 |
| **TOTALS** | **$3,557,034.50** | **$970,071.13** | **$2,586,963.38** |

United States District Court
Northern District of California

---

[26] Notably, Volcano's motion to dismiss addressed plaintiffs' three causes of action: breach of fiduciary duty, breach of implied covenant of good faith and fair dealing, and breach of contract, with appropriate citations to dozens of relevant authorities.  *See* Dkt. No. 13.  The motion was granted in its entirety, narrowing the issues and discovery and resulting in fewer expenditures going forward.  While the Court awarded plaintiffs leave to amend all three claims, plaintiffs' amended complaint asserted only a claim for breach of contract.  Dkt. No. 33.  But Volcano's success does not automatically mean that the hours it claims are reasonable or that a modest reduction is not appropriate to address modest inefficiencies.

[27] 20% reduction for block-billing and 5% reduction for excessive billing.

United States District Court
Northern District of California

## IV.   VOLCANO IS ENTITLED TO ITS REASONABLE COSTS AND DISBURSEMENTS

Plaintiffs argue that the costs Volcano seeks, including expert, vendor, contract attorney, and "standard" (i.e., filing and service fees, research, photocopying, transcript) costs, are not recoverable under either Delaware or federal law.  Plaintiffs also argue that even if some of the costs are recoverable, Volcano did not provide sufficient detail to allow me to determine that the costs were reasonable.

The categories of costs which Volcano seeks to recover are recoverable as "costs" or "disbursements" pursuant to the attorneys' fees provision in the merger agreement.  However, Volcano's submission lacks sufficient detail to establish the reasonableness of the costs.  A modest reduction is therefore warranted.

### A.   The merger agreement provides for reasonable costs and disbursements, beyond those allowed under statutory taxable costs

The attorneys' fees provision in the merger agreement provides that:

> If any action or proceeding relating to this Agreement or the enforcement of any provision of this Agreement is brought against any party hereto, the prevailing party shall be entitled to recover reasonable attorneys' fees, costs and disbursements.

Merger agreement § 13.4.  The merger agreement also specifies that it shall be "construed in accordance with, and governed in all respects by, the internal laws of the State of Delaware." Merger Agreement § 13.9(a).  Accordingly, the question is whether, under Delaware law, Volcano's "reasonable attorneys' fees, costs and disbursements" include the costs at issue here.  I conclude that they do.

Plaintiffs cite *Comrie v. Enterasys Networks, Inc.*, 2004 WL 936505, at *4 (Del. Ch. Apr. 27, 2004).  There the court held that "costs" in a contractual fee-shifting provision should be interpreted consistently with how courts have interpreted "costs" under Court of Chancery Rule 54(d), which governs taxable costs.  Delaware courts have interpreted "costs" under Rule 54 as excluding certain items, such as photocopying, transcripts, travel expenses, and computer research, express mail, and process server fees. *Id.* (citing *Gaffin v. Teledyne, Inc.*, 1993 WL 271443, at *2 (Del. Ch. July 13, 1993) (disallowing charges for transcripts, photocopying, travel, express mail,

United States District Court
Northern District of California

and computer research); *Barnett v. Braxton,* 2003 WL 21976411, at *2 (Del. Super. Aug. 15, 2003) (disallowing request to recover fees charged by process servers and couriers)).

But *Cowrie* noted that "Delaware courts have, however, recognized that the scope of 'costs' to be allowed may be expanded by agreement of the parties....to include elements of litigation expenses beyond those allowed by rule." *Comrie*, 2004 WL 936505, at *4. The court concluded that the parties before it had not agreed to expand the scope of "costs" because the provision at issue merely provided that "the prevailing party shall be entitled to recover its costs, including reasonable attorneys' fees." However, the court observed that it would be a different case if, for example, in addition to "costs," the fee-shifting provision included the "legally recognized broader term 'expenses.'" *Id.*

Unlike *Cowrie*, the fee-shifting provision here is not limited to "fees" and "costs"; it includes the broader term "disbursements." The merger agreement does not define "disbursement." The Oxford English Dictionary defines it as "[t]hat which has been disbursed; money paid out; expenditure."[28] I therefore conclude that the parties intended "disbursement" to be synonymous with "expenses." *See, e.g., Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 738 (Del. 2006) ("Under well-settled case law, Delaware courts look to dictionaries for assistance in determining the plain meaning of terms which are not defined in a contract....because dictionaries are the customary reference source that a reasonable person in the position of a party to a contract would use to ascertain the ordinary meaning of words not defined in the contract."). By providing for recovery of reasonable "disbursements," in addition to "fees" and "costs," the parties intended to allow recovery of reasonable expenses for actions relating to the merger agreement, beyond those traditionally allowed for "costs" under Rule 54(d).[29] *Cf*

---

[28] *See* http://www.oed.com/view/Entry/53638?redirectedFrom=disbursement#eid

[29] The remaining cases cited by plaintiffs did not involve fee-shifting provisions analogous to the one here. Those cases are therefore inapposite. *See Miles, Inc. v. Cookson Am., Inc.*, 1995 WL 214397 (Del. Mar. 24, 1995) (analyzing costs under Chancery Court Rule 54(d)); *FGC Holdings Ltd. v. Teltronics, Inc.*, 2007 WL 241384, at *17 (Del. Ch. Jan. 22, 2007) (same); *Gaffin v. Teledyne, Inc.*, 1993 WL 271443, at *2 (Del. Ch. July 13, 1993) (same); *Cooke v. Murphy*, 2013 WL 6916941, at *5 (Del. Super. Nov. 26, 2013) (analyzing costs under Superior Court Civil Rule 54(d)) *aff'd,* 99 A.3d 226 (Del. 2014).

*Comrie*, 2004 WL 936505, at *4 ("Because the Agreement is a heavily negotiated contract between sophisticated persons who were represented by counsel, it is reasonable to assume that the parties and/or their attorneys were aware of the detailed and long-established usage of the word 'costs .'").

There is little question that the costs which plaintiffs challenge—including expert, vendor, contract attorney, and "standard" (i.e., filing and service fees, research, photocopying, transcript) costs—are costs, expenses, or "disbursements" arising from this action.  The question remains whether those expenses were reasonable.

**B.  A modest reduction is warranted because Volcano did not provide adequate documentation to allow me to confirm the reasonableness of the costs.**

Volcano seeks the following costs and disbursements:

| DESCRIPTION | AMOUNT |
|---|---|
| The Oliver Group | $19,544.45 |
| TransPerfect Legal Solutions | $203,631.28 |
| Legalpeople (contract attorneys) | $282,997.00 |
| Travel (airfare, ground transportation, parking) | $34,178.88 |
| Depositions (court reporting, videotape service, witness fees) | $63,823.13 |
| Expert Services | $298,400.36 |
| JAMS Fee (mediation) | $6,275.00 |
| Court Fees (call fees, filing fees, transcript charges) | $890.05 |
| Printing, copying, and scanning services | $56,492.39 |
| Data Hosting Fee | $21,790.00 |
| Research Fees | $30,306.55 |
| Federal Express | $3,716.17 |
| Messenger Service | $1,108.91 |
| Postage | $21.06 |
| Telephone | $820.76 |
| **TOTAL** | **$1,023,995.99** |

Lambert Decl. ¶ 52, Table 10.

### 1. Expert services

Plaintiffs contest the $298,400.36 in "expert services" on the grounds that "Volcano provided no documentation from its experts as to what they did, for how long, and at what rate." Dkt. No. 114 at 14.  Volcano responds that the reasonableness of the expert costs are adequately described in paragraphs 30 to 34 of the Lambert declaration.

The merger agreement only entitles Volcano to *reasonable* costs and disbursements.

United States District Court
Northern District of California

Volcano has the burden of establishing that the $298,400.36 it seeks for "expert services" are reasonable.  While the Lambert declaration describes the topics on which Volcano's two experts provided reports and how many total hours and fees they claim ($46,815 for a "regulatory" expert, $62,475 for an "economic value" expert, and $189,110.36 for unnamed researchers to assist the "economic value" expert)[30], it does not explain in any real detail how the experts divided their time between various tasks: there are no time entries or invoices from the experts, for example. Dkt. No. 108 ¶¶ 31, 33.  I have no reason to doubt the experts' qualifications or the reasonableness of their hourly-rates, but I have no way to determine whether the time claimed by the experts is reasonable.  The $189,110.36 claimed for the unnamed researchers, "whose billing rates ranged from $195 to $450/hour," is especially problematic.  Dkt. No. 108 ¶ 33.  Volcano states that "[a]mong other actions in support of [Volcano's "economic value" expert], these researchers conducted an analysis of merger and acquisition agreements in the life sciences sector from the relevant time period to assess the usage of CRE provisions and variations among such provisions." Dkt. No. 108 ¶ 33.  Given the amount of money sought for these researchers alone— $189,110.36—that description is wholly insufficient.  A 15% reduction of the expert fees is warranted, totaling $44,760.054.  *See, e.g., Barnett v. Braxton*, 2003 WL 21976411, at *3 (Del. Super. Aug. 15, 2003) (costs not recoverable where "they are not identified or itemized in any way, thus precluding any meaningful review by the Court"); *Spalluto v. Trump Int'l Hotel & Tower*, 2008 WL 4525372, at *17 (S.D.N.Y. Oct. 2, 2008) (reducing expert fees by 15% where lack of detail prevented court from assessing reasonableness of experts' hours); *Laube v. Allen*, 506 F. Supp. 2d 969, 990 (M.D. Ala. 2007) ("plaintiffs' descriptions of certain other expenses related to the experts are too vague to be compensable").

### 2.  Vendor costs

Plaintiffs contend that Volcano did not provide sufficient details to allow the Court to

---

[30] The declaration states that Ms. Domecus billed 97.8 hours at $425 per hour and 10 hours at her testifying rate of $525 per hour, for a total of $46,815.  Dkt. No. 108 ¶ 31.  Dr. Cockburn billed 89.25 hours at $700 per hour for a total of $62,475.  Dkt. No. 108 ¶ 33.  Dr. Cockburn was assisted by researchers who, at $195 to $450 per hour, who billed an additional $189,110.36.  *Id.*

determine what work TransPerfect ($203,631.28) or The Oliver Group ($19,544.45) performed in this case or whether it was reasonable. But unlike with "expert services," Volcano has detailed the electronic information data services performed by TransPerfect and The Oliver Group and provided tables breaking those costs into discrete tasks. *See* Lambert decl. ¶¶ 10-11, Tables 1 and 2. Given the volume of electronic data involved in this case, those costs are reasonable.

### 3. Printing, copying, and scanning services

Plaintiffs contend that Volcano "provides no breakdown" of the requested $56,492.39 in "printing, copying, and scanning services" and does not "explain its need to print or copy so many documents when it had access to these documents in electronic form." Volcano does not respond to this contention in its reply and, as plaintiffs note, it did not specify what these costs were or provide invoices with its moving papers. Given the lack of detail, I can only conclude that $56,492.39 for "printing, copying, and scanning services" is excessive. I deduct 50% ($28,246.20) of these costs.

### 4. Depositions

Volcano seeks $63,823.13 for "depositions (court reporting, videotape service, witness fees)." Plaintiffs assert that these costs are not detailed and, in addition, they include "items of convenience – such as using LiveNote (real time transcripts) at depositions or expedited transcripts – and should be excluded." Dkt. No. 114 at 14-15.

The parties conducted 27 depositions. Volcano's reasonable expenses in connection with those depositions certainly included reporting, videography, and witness fees. I cannot conclude that LiveNote or expedited transcripts were not reasonable costs. But since Volcano did not bother to provide any details or invoices detailing these expenses, a 10% reduction, totaling $6382.31, is warranted.

### 5. Legalpeople (contract attorneys)

Plaintiffs assert that Volcano cannot recover the $282,997 it seeks for contract attorneys because Volcano characterizes that expense as "costs," but a party may not recover attorney's fees as "costs." I reject this argument. Whether characterized as "fees," costs," or "disbursements," the document review performed by the contract attorneys was necessary to this action and, given

United States District Court
Northern District of California

1    the low hourly-rates charged by the contract attorneys ($47 to $59 per hour), the amount is

2    reasonable.

3                **6.   Other costs**

4            Plaintiffs contend that Volcano's costs for travel ($34,178.88), court fees ($890.05),

5    Federal Express ($3,716.17), messenger service ($1,108.91), postage ($21.06), telephone

6    ($820.76), mediation fee ($6,275.00), and research fees ($30,306.55) should be excluded because

7    these costs are not recoverable or are insufficiently detailed.  All of these services are recoverable

8    as "costs" or "disbursements" pursuant to the merger agreement.  But since Volcano has not

9    provided any documentation, I cannot determine whether the specific amounts sought are

10   reasonable.  Accordingly, aside from the mediation fee, a 10% reduction is warranted, totaling

11   $7,104.24.

12           **C.  Summary of reductions to costs and disbursements requested by Volcano**

13           For the reasons stated above, I make the following deductions to the costs and

14   disbursements requested by Volcano:

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

| DESCRIPTION | REQUESTED | REDUCTION | AWARDED |
|---|---|---|---|
| The Oliver Group | $19,544.45 | $0.00 | $19,544.45 |
| TransPerfect Legal Solutions | $203,631.28 | $0.00 | $203,631.28 |
| Legalpeople (contract attorneys) | $282,997.00 | $0.00 | $282,997.00 |
| Travel  (airfare, ground transportation, parking) | $34,178.88 | $3,417.89 | $30,760.99 |
| Depositions (court reporting, videotape service, witness fees) | $63,823.13 | $6,382.31 | $57,440.82 |
| Expert Services | $298,400.36 | $44,760.05 | $253,640.31 |
| JAMS Fee (mediation) | $6,275.00 | $0.00 | $6,275.00 |
| Court Fees (call fees, filing fees, transcript charges) | $890.05 | $89.01 | $801.04 |
| Printing, copying, and scanning services | $56,492.39 | $28,246.20 | $28,246.19 |
| Data Hosting Fee | $21,790.00 | $0.00 | $21,790.00 |
| Research Fees | $30,306.55 | $3,030.66 | $27,275.89 |
| Federal Express | $3,716.17 | $371.62 | $3,344.55 |
| Messenger Service | $1,108.91 | $110.89 | $998.02 |
| Postage | $21.06 | $2.11 | $18.95 |
| Telephone | $820.76 | $82.08 | $738.68 |
| **TOTALS** | **$1,023,995.99** | **$86,492.82** | **$937,503.17** |

<div style="text-align:left;font-style:italic;">United States District Court<br>Northern District of California</div>

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

Volcano's motion for attorneys' fees and costs is GRANTED IN PART and DENIED IN PART.  Dkt. No. 106.  Volcano is awarded $2,586,963.38 in fees and $937,503.17 in costs and disbursements, totaling $3,524,466.55.[31]

Plaintiffs' motion to seal is DENIED.  Dkt. No. 123.

**IT IS SO ORDERED**.

Dated: December 12, 2014



WILLIAM H. ORRICK
United States District Judge

---

[31] In its moving papers, Volcano requested post-judgment interest on its fees and costs as of the date of the summary judgment order.  In opposition, plaintiffs contended that interest should only be added from the date of an order awarding attorneys' fees.  Volcano appears to concede this point: its reply states only that it requests "post-judgment interest accruing *as of the date of the Court's order*."  Dkt. No. 117 at 15 (emphasis added).  Plaintiffs are correct.  To the extent interest is warranted, it did not accrue before this order was entered.  *See, e.g., Kona Enterprises, Inc. v. Estate of Bishop ex rel. Peters*, 243 F. App'x 274, 277 (9th Cir. 2007); *Eaves v. Cnty. of Cape May*, 239 F.3d 527 (3d Cir. 2001) (post-judgment interest began to accrue after court fixed amount of award).  Since there is no disagreement that interest is warranted, it shall accrue at the federal rate set forth in 28 U.S.C. § 1961, as calculated by the parties.